# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

STEVEN W. KRAFCHICK,
SBI# 00178856
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977
Petitioner,

Civil Action No.  07-284-GMS

IN THE UNITED STATES DISTRICT COURT
DISTRICT DELAWARE

Vs.



THOMAS L. CARROLL (Warden),
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977
Respondent.

## THIS IS A NON-CAPITAL CASE

---

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF A 28 § 2254 WRIT OF HABEAS CORPUS

Petitioner Steven W. Krafchick, through self representation (pro-se), avers as follows:

## I.    PARTIES

Petitioner Steven W. Krafchick, herein, is confined at the Delaware Correctional Center in Smyrna, Delaware. On February 13, 2002, the New Castle County Superior Court entered a judgment of guilty upon the Petitioner by means of a plea and imposed a verdict and sentence of second degree murder and possession of a deadly weapon during the commission of a felony and sentence the Petitioner to a period of 40 years.

Respondent Thomas L. Carroll, herein, is the (Warden) of the Delaware Correctional Center in Smyrna, Delaware and has actual custody of the Petitioner in this case.

## TABLE OF CONTENTS

Page#

Table of Citations.................................................................................... ii-iii

Jurisdiction, Venue, Procedural History....................................................... 2-5

Factual History........................................................................................ 6-9

Petitioner's Contentions............................................................................ 10

Argument I............................................................................................. 11-14

Argument II............................................................................................ 15-17

Argument III........................................................................................... 18-22

Argument IV........................................................................................... 23-26

Argument V............................................................................................ 27-32

Argument VI........................................................................................... 33-38

Relief Requested...................................................................................... 39-40

## TABLE OF CITATIONS

| Supporting Case Law | Page# |
|---|---|
| Acosta v. Turner, 666 F. 2d at 956 (   ?   )…………………………………………………. | 32 |
| Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998)……………. | 36 |
| Apprendi v. New Jersey, 120 S. Ct. 2348 (2000)…………………………………..........25,34,36,38 | |
| Blakely v. Washington, 124 S. Ct. 2531 (2004)……………………………………………… | 38 |
| Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)……………………………………… | 38 |
| Burns v. United States, 501 U.S. 137-38 (   ?   )…………………………………………….. | 35 |
| Cf. United States v. Shortt, 919 F.2d 1325, 1325 (8th Cir. 1990)…………………………… | 29 |
| Chatom v. White, 858 F.2d 1479 (11th Cir. 1988)…………………………………………… | 17 |
| Evitts v. Lucey, 469 U.S.287 (1985)………………………………………………………… | 21 |
| Jones v. United States, 119 S. Ct. 1215 (1999)……………………………………………… | 24, 35 |
| Kimmelman v. Morrison, 477 U.S. 365,374 (1986)…………………………………………. | 11 |
| Kyles v. Whitley, 514 U.S. 419 (1995)……………………………………………………... | 37 |
| Mcmann v. Richardson, 397 U.S. 759, 771 (1970)…………………………………………… | 11 |
| McMillan v. Pennsylvania, 477 U.S. 79 (1986)……………………………………………... | 36 |
| O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)………………………………………. | 5 |
| Salazar v. Johnson, 96 F.3d 789 (5th Cir. 1996)……………………………………………... | 13 |
| Satterwhite v. Texas, 486 U.S. 249, 256 (1988)……………………………………………. | 38 |
| Strickland v. Washington, 466 U.S. 688 (1984)…………………………………………….. | 11, 20 |
| U.S. v. Harris, 70 F.3d 1001 (8th Cir. 1995)…………………………………………………. | 26 |
| United States v. Philip Rossillo, 853 F.2d 1002 (2nd cir. 1988)…………………………….. | 32 |
| United States v. Reginald Cole, 813 F.2d 43 (3rd Cir. 1987)……………………………….. | 32 |
| White v. Maryland, 377 U.S. 59 (1963)………………………………………………………. | 13 |

<u>Statutes, Rules, Textbook, and Other Authorities</u>                                    Page#

28 § 1331................................................................................  2

28 § 2254................................................................................  2, 39

28 U.S.C. § 2241 (d)....................................................................  2

Del. C. 11 § 1447.......................................................................  24

Del. C. 11 § 3906.......................................................................  24

Del. C. 11 § 635........................................................................  24

Del. C. 11 § 636........................................................................  24

Delaware Accountability Commissions Benchbook.........................................  37

Delaware Criminal Rule 7...............................................................  24

Fed. R. Civ. P. 26-37..................................................................  39

Federal Criminal Rule 7................................................................  24

Fifth Amendment of the United States Constitution (due process clause)..................  32, 35

Fourteenth Amendment of the United States Constitution.................16,22,24,25,26,30,32, 35

Habeas Corpus Rule 5...................................................................  39

J. Archbald, Pleading and Evidence in Criminal Cases 44 (15th ed. 1862)...............  25

Rules of Professional Conduct, Rule 1.1, 1.4 (a) (b)...................................  16

Sixth Amendment of the United States Constitution...............11, 16, 18, 20,21,22,24,25,26,35

II.    JURISDICTION

The United States District Court has jurisdiction over this petition for a writ of habeas corpus pursuant to 28 § 2254 and 1331. Petitioner is in custody pursuant to judgment of a Delaware State Court, and seeks relief on the grounds that the length of imprisonment and the sentence imposed are in violation of the Petitioner's rights under the United States Constitution.

III.    VENUE

Venue is proper in the United States District Court for the District of Delaware because Petitioner's conviction was obtained in New Castle County Superior Court in Wilmington, Delaware. See 28 U.S.C. § 2241 (d).


IV.    PROCEDURAL HISTORY

On February 26, 2001 the District Attorneys Office filed and returned an indictment I.D. #0101010946 charging the Petitioner with nine counts starting with one count of first degree murder in violation of Title 11 § 636 of the Delaware Code, one count of possession of a deadly weapon during the commission of a felony in violation of Title 11 § 1447 of the Delaware Code, one count of possession of a deadly weapon by person prohibited in violation of Title 11 § 1448 of the Delaware Code, one count of non compliance with bond conditions in violation of Title 11 § 2113 (c) of the Delaware Code, one count of unlawful imprisonment second degree in violation of Title 11 § 781 of the Delaware Code, one count of assault third degree in violation of Title 11 § 611 of the Delaware Code, one count of terroristic threatening in violation of Title 11 § 621 of the Delaware Code, one count of offensive touching in violation of Title 11 § 601 of the Delaware Code, one count of criminal contempt in violation of Title 11 § 1271 of the Delaware Code. See: State of Delaware v. Steven Krafchick, Case No. 0101010946.

- 2 -

The record reflects that on February 26, 2001 the State Prosecuting Office of New Castle County Delaware declared case # 0101010946 as a non-capital case in and before the Delaware Superior Court.

The petitioner was thereafter represented by the Office of the Delaware Public Defenders with Edward C. Pankowski, Jr. as his appointed counsel in this case. Beginning in mid to late December 2001 Mr. Pankowski was further assisted by Ms. Kathryn Lunger also from the Office of the Delaware Public Defenders of New Castle County.

Petitioner's trial was to commence on February 5, 2002 and was scheduled for an unconfirmed period of three to four weeks after the jury was seated. Prior to the actual start of trial the State Prosecuting Office elected to nolle prosequi seven charges of the indictment leaving the most severe charges of first degree murder and possession of a deadly weapon during the commission of a felony.

After the commencement of trial the State presented their theory of the case before the Superior Court and the assemble jury, during the five days of actual testimony that was held in that court the State insisted that this crime was committed in a deliberate and willful way and that the petitioner was in fact responsible for the demise of his wife in this crime.

The Defense in this case mounted its own arguments and chain of the events that had taken place in this particular crime and had psychiatric specialist willing to testify that the petitioner was in fact responsible for the demise of his wife in this crime, however, because of circumstances that surrounded this case and the mitigation evidence that was forever present, there was ample evidence that this case was one of extreme emotional distress and deserved a lesser degree of culpability on the part of the petitioner due to mental health problems.

- 3 -

However, before Defense counsel in this case proceeded with its strategy, a plea offer was made by the State Prosecutors Office to a lesser included charge of murder in the second degree and possession of a deadly weapon during the commission of a felony.

On February 13, 2002 before trial was to start again, petitioner was approached by his appointed counsel with a non-negotiable plea deal. This agreement left no room for any type of negotiations.

The fact that counsel only express to the petitioner to excepted this plea, because he would make a request for a pre-sentence investigation report to compile the mitigation evidence and would elicit helpful statements from the petitioner's family, friends and psychiatric specialist to lessen the degree of culpability of the petitioner's time of actual incarceration, and that he would also put in for a motion for commutation of the petitioner's sentence after petitioner served a relatively short period of his mandatory time.

On February 13, 2002 after only 45min to consult with counsel and under strong advice from counsel did the petitioner enter a plea of guilty to the afore mention two charges of the indictment being murder in the second degree and possession of a deadly weapon during the commission of a felony.

The Superior Court denied defense counsel's request for a pre-sentence investigation report and went to immediate sentencing procedures, thus sentencing this petitioner to a total period of 40 years level five incarceration under the premise that the petitioner had engaged in similar unfounded behavior in the past that warranted a higher degree of culpability.

Petitioner caused a notice of appeal to be sent to the Delaware Supreme Court informing the Court that the petitioner wished to appeal from the order of the Delaware Superior Court.

The appeal was accepted by the Delaware Supreme Court with instructions sent to defense counsel (Edward C. Pankowski) to recognize his continuing obligation to represent the petitioner on appeal.

After an exchange of briefs from both parties in this case, this case was remanded back to the Delaware Superior Court in order for that court to explain its reason and justification for imposing a sentence which was clearly outside of the recommended sentencing guidelines for the charges in this case.

After receiving a response from the lower court the Delaware Supreme Court ruled that it would affirm the sentence and conviction of the petitioner from the reason given from the Delaware Superior Court in this case.

Petitioner then mounted the first of two post-conviction motions for relief that would challenge the validity and the acceptance of the plea agreement, in addition to, ineffective assistance of counsel, prosecutions misconduct, the closed mind of the trial judge, and a disproportionate and extreme harsh sentence that needed to be tested by not only State law but that of the Constitution and the laws of the land in accordance with the United States Constitution.

All efforts by this petitioner in both of his post-conviction motions and subsequent appeals that followed brought no substantial review or relief to this petitioner.

Therefore, in accordance with O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999) the petitioner in this case gave the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."

- 5 -

V.    FACTUAL HISTORY

The record shows that on the morning of January 15, 2001 Steven and Dawn Krafchick arrived together around 9:30 a.m. arguing at their mutual place of employment, the Manor Family Restaurant formally located at 800 N. DuPont Parkway, New Castle County.

The record also indicates that no one present in the restaurant knew the content or the extent of the couple's argument; however, the argument the couple was having was very loud and very disruptive to the patrons dinning.

The argument stemmed from the previous night when Steven Krafchick actually found his wife Dawn Krafchick of 17 years of marriage, in a motel room of one Chuck Thompson that resided at the Hollywood Motel. This was the same motel that both Steven and Dawn Krafchick mutually shared and were eventually evicted from for non-payment of rent during the time period of January 2000 through January 2001.

After this encounter at the motel and the motel manager intervening on the behalf of the petitioner, Dawn told her husband that there was nothing wrong going on in the motel room.

Dawn had stated that the only reason for her being there was to get high on crack cocaine and nothing else was going on. Both the victim and the accused of this crime had a long and ongoing bout with crack cocaine; this was one of the areas in their lives which both individuals had problems and were compulsively addicted to this drug of crack cocaine.

Dawn Krafchick stated to her husband that she wanted to get high, so the petitioner wanting to appease her did drive together to Wilmington to obtain drugs together and return to their new mutual place of residence which was at the Lincoln House Apartments located on DuPont Parkway a short drive to their place of employment.

- 1

After obtaining drugs, they proceeded to get high, after a very short period of time the initial drugs in which they had obtain were gone, and both in a state of euphoria Dawn asked Steven to once more go to Wilmington to obtain more drugs in order to maintain this state of euphoria in which both were experiencing.

Upon returning and proceeding to get high, Dawn asked Steve if he would like to engage in intercourse. In the middle of this sexual encounter, Dawn stated that she did have something to tell him and that she would hope that the petitioner would not get upset.

Dawn abruptly stated that her and Chuck were having sexual intercourse and that she was very sorry for it ever happening. The petitioner stunned and taken back by this confession stopped the sexual intercourse in which they were engaged to dismount to try and figure out what she had just said.

The petitioner asked Dawn how long this was going on, and she stated that as early as November of 2000. The petitioner maintaining his composer, then asked if there was any chance of reconciliation of their marriage of 17 years. Dawn stated that there was hope for reconciliation of their marriage and that it was over with this guy Chuck.

While talking about their relationship, the telephone rang. The petitioner answered the phone and to his surprise it was Chuck Thompson on the other end of the phone asking to speak with Dawn. After a heated exchange of indecencies on the phone, Dawn asked the petitioner for the phone in which he complied with. Dawn then proceeded to tell Chuck that both her and her husband were going to reconcile their marriage and that it was over between them and not to call back. Both Steve and Dawn stayed up until 4:00 a.m. to discuss what they could do together to fix their relationship and marriage.

Dawn suggested that because both of them had tried voluntary drug rehabilitation in the past which failed, that maybe they needed to enter into the State's detox center which was located next to State Police barracks Troop #6 on Kirkwood Highway route #2.

The petitioner agreed with her and they made a plan of action to be carried out the next morning. Their plan was to go to their mutual place of employment and ask for some personal time off so that they could secretly enter into the detox center and start their sobriety and then return to work.

Both Dawn and Steve believed that detox center would give them the best chance to start a new life one without drugs being involved, and that it would connect them with other agencies that would be able to help them on their quest.

On the morning of January 15, 2001 after waking up, both Dawn and Steve shared a shower and proceeded to carry out their mutual plan, however, before leaving their place of residency Dawn stated that there was something she had to do. Dawn then proceeded to pick up the phone and place a call to Chuck Thompson and repeating what she had said the evening before "Its over between us, do you understand its over."

The petitioner taking back by this, asked Dawn why she felt compelled to call Chuck Thompson at this time; Dawn stated that it was her way to show she was serious about getting the much needed help for their problems and marriage.

While taking the 1 ½ mile drive to work, Dawn stated that she was having reservations about going into detox and was in fact having second thoughts about it. An argument pursued and as the patrons gave testimony of the events in the restaurant as stated at trial transcripts, (they) Dawn and Steve entered the restaurant arguing about something.

As this argument got heated and an exchange of hurtful words were both given and received from both parties, Dawn seemed to start ignoring Steve and seem to start waiting on tables. The petitioner felt hurt and angered during this brief period of time. The petitioner seemed to stop thinking rationally and fell into a state of deafness to reason, in this state of deafness from the reality around him having no conscience thought and in what seemed a surreal state of confusion struck out at his wife with a knife that was located somewhere in the restaurants kitchen and stabbed his wife causing substantial injuries.

In this surreal state of confusion and still having no thought of the actual events and actions that were unfolding around him, the petitioner somehow cut his own wrist; this action also demonstrates that he was still not aware of the events or actions in which he was committing and had no regards for his own life as well.

Both Dawn and Steven Krafchick were immediately taking by ambulance to the Christiana Hospital where they both received emergence medical treatment for their injuries, however, in transit to the hospital Dawn Krafchick had succumbed to injuries and expired on the way there. Steven Krafchick was immediately taken to surgery to repair life threatening injuries in which he had sustained during the altercation at the restaurant.

After awakening the following morning in the hospital and coming out from the many medications that the petitioner was under, the petitioner became made aware of the horrible and tragic events that unfolded the day before. Distraught the petitioner found out from a State Police Detective that he was responsible for the demise of his wife Dawn. Petitioner was arraigned in the hospital and committed to the Gander Hill prison in Wilmington. Upon arrival the petitioner was admitted into the psychiatric unit, to be evaluated and to determine if he would be a threat to himself or others in the prison.

- 9 -

VI.    PETITIONER'S CONTENTIONS

1)    Petitioner's plea of guilty was not given voluntarily in that if not for defense counsels failure to protect and to provide adequate and effective assistance to the petitioner, the petitioner would not have elected to accept the plea and would have insisted to proceed with the trial that the petitioner was currently engaged in.

2)    Petitioner's counsel failed to provide adequate representation when counsel did not make a request for any of the pre-trial competency hearing, evidential hearing to test the State's evidence in this case, or a suppressing hearing to possibly eliminate evidence that may have been questionable before trial commenced.

3)    Counsels inability to research and develop mitigating evidence that would have supported an affirmative defense of (Extreme Emotional Distress) or other wise known as (E E D).

4)    The State prosecution acted in an inappropriate manner when they used non-proven crimes and became advocates, zealously insisting that the petitioner receive a curtain type of punishment and sentence for the crime in which he was on trial for.

5)    The Trial judge in this case had closed his mind in that he was not willing or in agreement to review any mitigation before imposing the petitioner's sentence, which included not ordering an pre-sentence investigation report or an independent competency hearing once the court became aware of the petitioner's questionable mental state and ongoing medication usage.

6)    Trial court abused its discretion by its use of unproven crimes which also failed to put the petitioner on notice of what he was to defend himself against and failed to provide him with a jury trial of his peers to find guilt on those charges for the purpose of imposing a sentence.

## ARGUMENT

**Petitioner's plea of guilty was not given voluntary in that if not for defense counsel's failure to protect and provide adequate and effective assistance to the petitioner, the petitioner if properly assisted would not have elected to accept the plea agreement and would have insisted to proceed in the trial in which the petitioner was currently engaged in.**

Petitioner's counsel had an obligation under the Sixth Amendment of the United States Constitution to provide adequate and reasonably effective assistance to the petitioner during crucial and critical stages of the proceedings, not at the time of trial, but also in the area of pre-trial investigations, motions, etc.

The right to have effective assistance of counsel is a fundamental right of a criminal defendant; it assures the fairness, and legitimacy of our adversary process. See: Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). Furthermore, the United States Supreme court has recognized that the right to counsel is the right to effective assistance of counsel. See: Mcmann v. Richardson, 397 U.S. 759, 771 (1970).

The United States Supreme Court mandated the standards for the review of effective assistance of counsel in the case of Strickland v. Washington, 466 U.S. 688 (1984). In the Strickland case the Court placed two prongs that were to be used in the assessment or evaluation of any claim of ineffective assistance of counsel claim. The first prong is whether the representation received (fell below an objective standard of reasonableness). The second prong is whether a reasonable probability exist that (but for counsel's unprofessional errors) the results would have substantially different.

In this case counsel's actions or inactions violated the standards set out in the case of Strickland. On February 13, 2002 the petitioner was approached in the middle of defense presentation of a plausible defense by his appointed counsel to consider a possible plea offer made from the State of Delaware to a lesser included offense of murder in the 2nd degree.

The petitioner contends that he was provided inadequate representation when his appointed counsel approached the petitioner in a state of confusion due to the medications in which the petitioner was on at the time of the plea offer.

This questions the motives of counsel and shows that counsel was not acting as (counsel) by not providing adequate legal representation to his appointed client. The petitioner's counsel (Mr. Edward C. Pankowski) had first hand knowledge that the petitioner was under the influence of (psychotropic medications) that have the strong possibilities of impairing one's ability to comprehend or understand with any degree of certainty. These medications were prescribed by a psychiatrist at the Gander Hill jail facility in Wilmington due to the petitioner's ongoing bout with major depression and associated mental infirmities.

In the middle of the plea colloquy counsel informed the trial court of such by informing the court that:

3. "He (*petitioner*) is under medication. At this point we would
4. ask that the court order continue that medication.
5. There was some concern that we had as
6. co-counsel that Mr. Krafchick might commit another
7. suicide attempt in the near future. We urge that
8. the suicide watch at the jail continue based on the Court's
9. sentence".

. See: (Plea Colloquy Hearing transcripts of 2/13/2002, Page #21 at lines 3 trough 9).

Counsel had an obligation to bring this to the courts attention before the trial commenced and not at the time of the plea colloquy as a perfunctory gesture on his part.

- 12 -

It becomes evident that counsel's first hand knowledge of the petitioner's state of mind under the afore mentioned medication was self-serving, not only would it hide the deficiencies of counsel's performance, but it would provide a means for counsel to end his legal obligation to defend his client by means of a predetermined plea agreement.

What this situation also shows is that the petitioner could not have had the mental ability to waive important constitutional rights to counsel, trial by jury, or any other right that may have been waived by the petitioner due to the forever ongoing medication usage.

The medications that are in question are (Sinequan) or better known as (Doxepin Hydrochloride) and (Vistaril) or known as (Hydroxyzine Hydrochloride) which are most commonly used to sedate a person suffering from major depression and anxiety disorders.

The petitioner was in fact denied effective assistance of counsel at a critical stage of the proceedings, which would require an automatic reversal. White v. Maryland, 377 U.S. 59 (1963). The issue of the petitioner's competency was never fully exposed in its entirety, precluding any finding from the trial court that the petitioner was competent to stand trial or to assist his appointed counsel.

Counsel's non-functioning actions during this stage precluded the petitioner from receiving effective assistance when the petitioner was most vulnerable to persuasion on a plea agreement that left virtually no room for any type of negotiations. This situation was highlighted in the case of Salazar v. Johnson, 96 F.3d 789 (5th Cir. 1996). The court stated "a lawyer is functionally absent when they provide no meaningful assistance to the defendant, thereby effectively leaving him without a lawyer".

The (cause) was shown by counsel's inactions to provide meaningful representation and to provide adequate representation to a defendant that was mentally impaired to stand trial in the first place, counsel should have protected the rights of the accused and requested an independent competency hearing before proceeding with any court proceedings.

The (prejudice) that was caused by this was, the petitioner had a constitutional right to have effective assistance of counsel during this stage of the proceedings, because of counsel's inaction's it is highly suspicious at best that, the acceptance of the plea was willfully, intelligently, and voluntarily made by a petitioner who was in fact heavily medicated on mind altering drugs which hold the properties of making a person do things that they would not have done if not for the medication that they were currently on.

Therefore, the petitioner believes that he has successfully demonstrated the reasons for why this Court should intervene, and order counsel or the lower court to respond to the petitioner's contentions of why the petitioner's constitutional right to a fair trial was in fact violated by the course of inaction's of counsel to provide adequate representation to the petitioner provided by the Sixth Amendment of the United States Constitution.

## ARGUMENT

Petitioner's counsel failed to provide adequate representation when counsel
did not make a request for any of the pre-trial competency hearing, evidential
hearing to test the state's evidence in this case, or a suppressing hearing to possibly
eliminate evidence that may have been questionable before trial commenced.

Petitioner's defense counsel was performing in a perfunctory manner when counsel

informed the trial court that the petitioner was heavily medicated during the plea colloquy

hearing, and failed to request any type of competency hearing before allowing the petitioner to

waive his constitutional rights and enter a plea of guilty to murder 2nd degree and a related

weapon charge.

Petitioner's counsel went further when he failed to test the evidence of the State's case,

he failed his client and failed to protect the right of requesting an evidential hearing or a

suppression hearing to possible eliminate any possible evidence that was tainted or illegally

obtained.

Counsel for the petitioner failed to act in accordance with the standards set out in

Strickland v. Washington, he failed to provide meaningful representation to the petitioner. Thus,

the petitioner was clearly prejudice and deprived of the fundamental right to effective assistance

of counsel, via counsel's ineffectiveness to whom was obligated to afforded reasonable

assistance.

Petitioner further asserts that, if he would have had all his mental faculties working, he

would have been able to assist his counsel in his defense and would have been able to

constructively inform counsel to the objections or evidence that the petitioner would of liked to

present to the trial court. All this is diminished since counsel failed to request any type of

competency hearing to have a determination on the petitioner's state of mind prior to and during

the actual trial

- 15 -

Counsel for the petitioner needed to request a competency hearing to determine, what if any, adverse affects the aforementioned medications had on the petitioner's state of mind and his ability to assist his counsel in his defense.

Under these psychotropic drugs, the petitioner was more incline to accept the responses that he was receiving from his appointed attorney, however, under professional norms of counsel elaborate functions are the (Rules of Professional Conduct). Under these rules it governs the responsibility of counsel and the requirements to meet those (requirements of professional norms).

Rule 1.1 states: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation". In addition Rule 1.4 states: (a) "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable request for information". (b) "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

All this is cause, by counsel failure to keep his client reasonably informed he violated his petitioner's right to a fair trial as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution.

Had counsel requested an evidential hearing along with a competency hearing the outcome of the proceedings would have bee significantly different.

The (cause) that was established in this case is one of significances, not only did counsel fail to preserve the rights of his client; he allowed his client to give-up and waive his rights to a fair trial under the circumstances.

The (prejudice) that happened was the petitioner was denied his constitutional right to a fair proceeding under extraordinary circumstances of being heavily medicated under drugs.

The petitioner contents the trust of his argument is in the area of ineffective assistance of counsel, and thus questions the validity of the acceptance of his plea offer to whether it was knowingly and voluntary made. See: Chatom v. White, 858 F.2d 1479 (11th Cir. 1988).

An attorney's role in providing professional norms in this area of representation is critical and fulfilling that role requires the attorney to act with diligence.

Counsel actions denied the constitutional guarantees that a person accused of a crime shall receive a fair and accurate trial and proceedings with the basic fundamental right to have competent and effective assistance of counsel at every critical stage of the proceedings.

Anything less than the reasonable application of professional norms, are denying the accused his or her basic constitutional rights that are afforded to all people accused of a crime.

Counsel had an ongoing obligation to protect his client who was (in questionable mental state) during not only the petitioner's trial but during his plea colloquy hearing in which he allowed his client to give-up and waive his right to receive a sentence more in accordance with what the crime that had taken place called for.

Therefore, the petitioner would respectfully request this Court to review this argument in de novo in order to test counsel's effectiveness under those circumstances that have been described.

## ARGUMENT

**Counsel's inability to research and develop mitigating evidence
that would have supported an affirmative defense of
(Extreme Emotional Distress) or other wise known as E.E.D.**

Petitioner was on trial for first degree murder and related weapon charge, in order to explain to the trier of fact why this tragic event unfolded in the manner it did, defense counsel needed to present a viable defense for what seemingly seemed to be a willful act on the part of his client, thus providing a defense to the accused under the Sixth Amendment of the United States Constitution for the crime charged.

Here is where counsel with all his knowledge and legal work experience should have shined; defense counsel (Mr. Pankowski) had introduced the affirmative defense of (extreme emotional distress) as a viable mitigating element to lessen the culpability of the petitioner to what seemingly was viewed by the State as a willful, deliberate and intentional act of violence upon the victim with no explanation. The introduction of a defense requires a lawyer to investigate, research the many probabilities and facets of the defense, to develop and present a plausible defense in a way to the trier of fact as not to confuse or confound them.

This approach takes a sufficient amount of time and legal expertise, giving that defense counsel may be called to go out in the field or to have his or her investigator go to where the crime was committed, to talk with potential eyewitnesses of the actual crime itself, to research areas of unknown elements in the accused life including past criminal activities, potential mental infirmities, and other possible mitigators to lessen the culpability of his or her client, and to bring an explanation of the working forces that may in all fairness lessen the sentence which may be imposed without such an explanation.

- 18 -

In order to persuade a jury or trail judge that the crime was committed in a way that the blameworthiness of his or her client should be reduced, calls on a lawyer to use tact and professionalism to bring about this kind of result, with without, would leave his or her client defenseless to the crime charged in straight violation of the constitution.

Here counsel presented to the jury and the judge presiding that the affirmative defense of (*extreme emotional distress*) was in play at the time of this criminal act, however counsel never gave any explanation for the existence of such a defense. Thus leaving his client defenseless to the charge of murder in the first degree and a related weapon charge.

The State's theory was that; the victim of this crime was demonstrating her independence to get out of a controlling relationship and failing marriage to her husband and that she was saying on this particular day to her husband that: "I'm not going along with your plans anymore; I want my own apartment; I want my own life; I can see who I want; I can talk to who I want; and you can't tell me what to do anymore. And this is a man who thought he was losing it all, his control. And he lost control. And he killed her. And for that he deserves the maximum penalty under the law".

See: (*Sentencing Transcripts (page(s) 26-27)*.

Here defense counsel never objects or gives any explanation for the existence of why the court should give any weight to the mitigating factors of extreme emotional distress, and without this explanation, it would in effect not be persuasive enough to carry the weight in such a crime.

The fact that a State witness (namely the petitioner and victim's daughter) gave detailed accounts of the victim having an extramarital relationship with (Chuck Thompson) and why this was never explored or presented as a reasonable explanation for the existence of extreme emotional distress to the petitioner's defense goes beyond comprehension.

- 19 -

The fact that the petitioner had found his wife of 24 years in a compromising position and having sexual relationships with this man and the fact that it was hid from him, could have if presented correctly, lessen the culpability of the accused and in turn would have giving a reasonable existences for the accused to have committed the crime in the way he did.

The petitioner understands that this kind of a defense does not justify or relieve the petitioner from all responsibility or blameworthiness for having committing the crime, however it does bring a balance between the actual events that unfolded and the severity of the punishment that should in all fairness be attached.

In this case the analysis that this court should use in deciding this issue is one that has been established for a substantial period of time and that has been used in other cases. It is here in the case of *Strickland v. Washington*, 466 U.S. 668 (1984); where the petitioner's counsel failed to meet the professional standard required for effective assistance of counsel under the Sixth Amendment. The question that is present is whether there is a reasonable probability that counsel's failure to investigate, and to locate and produce witnesses, affected the outcome of the proceedings.

The petitioner should not have to show by preponderance of evidence that the result in his case would have different but for counsel's errors. "A reasonable probability is a probability sufficient to undermine confidence in the outcome". *Strickland v. Washington*, 466 U.S. 668 (1984)

Here defense counsel (Mr. Pankowski) only presents to the court a rendition of what had already been presented during the trail, and still did not give any reasonable explanation to the existences of mitigating factors.

- 20 -

It is also here where defense counsel failed to develop a viable defense, counsel only explains to the court the following in any effort of mitigation; "There were many, many factors involved in Mr. Krafchick's and his activities of January 15th. We submit to you there are several mitigating factors which would dictate the Court not giving a maximum sentence at least on the weapon's charge. He was under the influence. There was physical and mental impairment. And we submit that was extreme emotional distress as a mitigator".

Here counsel never gives a logical reason for the mere existence of such a defense. Thereby, leaving the petitioner defenseless to the charges that State has pursued and effectively won without opposition.

The petitioner was entitled to effective assistance of counsel at his trial, sentencing, and at his appeal right. *Strickland v. Washington*, 104 S. Ct. 2052 (1984) and *Evitts v. Lucey*, 469 U.S. 387 (1985). However, when the petitioner shows that defense counsel 'failed to exercise the customary skills and diligence that a reasonable competent, professional attorney would have exhibited under similar circumstances' the presumption of counsel acting within the range of competency must be scrutinize.

Counsel was in fact leaving his client defenseless to the charges of a intentional murder and in fact stated in his opening arguments those very words, that in order to find his client guilty of first degree murder they (the jury) would have to find that the petitioner had acted with premeditation in order to find his client guilty and to convict his client on the charge of first degree murder, although corrected by the court after objection by the prosecution, this may be viewed as a harmless error, however, the petitioner still believes these prejudice his defense.

- 21 -

The (cause) that amounted to the denial of a defense was, because of counsel's failure to develop any viable defense, counsel for the accused left his client vulnerable to any sentence the State wish to ask for go unchallenged, thereby providing no defense, in straight violation of the Sixth Amendment and a Fourteenth Amendment right that infringed upon the petitioner's basic due process right's to a fair trial and sentence proceeding.

The (prejudice) that resulted is, the petitioner was without any explanation for the existence of extreme emotional distress and was virtually unable to provide any mitigation to the severity of the crime and was unduly exposed to the maximum sentence allowed by law and that of the court which went unchallenged, thus allowing the petitioner to be sentence to an exacerbated amount of time of incarceration and was well beyond what this particular crime called for under the circumstance that should have been presented to the court.

Therefore, the petitioner would respectfully request this Court to review this argument in de novo in order to test counsel's effectiveness under those circumstances that have been described.

## ARGUMENT

The State prosecution acted in a inappropriate manner when they
used non-proven crimes and became advocates, zealously insisting
that the petitioner receive a curtain type of punishment and sentence
for the crime in which he was on trial for.

The State prosecutor acted inappropriate when they used a non-proven crime to induce or

to ensure a certain type of punishment that the law does not allow and is constitutionally vague.

During the sentencing colloquy hearing held in the Delaware Superior Court the State prosecutor

made an accusation and speculated to an unproven crime to induce a higher degree of

punishment. During this presentation the State's prosecutor stated,

11.      "Your Honor, it's the State's position, and I
12.      want to highlight to the Court, 'cause it's something
13.      that, although I know Your Honor is aware of, perhaps
14.      others sitting in the courtroom are not, the three weeks
15.      before this offense on December 20th, he kept Dawn
16.      locked in a motel room for four and a half hours, during
17.      which time he threatened to kill her. And, in fact,
18.      said to her, I am going to kill you; I don't care if I
19.      go to jail.
20.           This is the mindset of somebody who saw his
21.      life slip away because Dawn was becoming independent.
22.      She was saying to him, no I'm not going along with your
23.      plans anymore; I want my own apartment; I want my own
1.       life; I can see who I want; I can talk to who I want;
2.       and you can't tell me what to do anymore.
3.            And this is a man who couldn't take that. This
4.       is a man who thought he was losing it all, his control.
5.       And he lost control. And killed her. And for that
6.       he deserves the maximum penalty under the law.



See: (Sentencing Transcripts pg 26-27).

The State used this unproven accusation to booster their claim that the victim was telling

the truth and that the petitioner does not have the right to have these allegations proven before

they could possibly be used as a sentence enhancer  in their theory of the crime.

The petitioner in this case had an absolute right to be informed of every accusation against him under the Sixth Amendment of the United States Constitution. The State in its charging indictment of the petitioner never indicated or suggested that this case was in accordance with the Delaware's statute of domestic violence, thereby precluding that the petitioner was made aware of what he needed to defend himself against.

The State had a Constitutional requirement to inform the petitioner of every element of the crime so that the petitioner could mount a proper defense against such accusations. It is well documented that an indictment under both Federal and State laws (Rule 7) are required to state a particular charge and states that: "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charge."

The State used an "unreasonable application standard" in this case when the first and only time that the State insinuated that this case dealt with domestic violence is at the time of sentencing, the State had insisted that the unproven incident at the Hollywood Motel on December 20, 2000 and was the State's proof that this was not an (isolated incident) and that the petitioner should receive the maximum penalty because of that.

The petitioner relies on past case law to support his contention that; it is well established 'under the due process clause and Sixth Amendment notice and jury trial guarantees, that if any fact (other then a prior conviction) that increases the maximum penalty for a crime is an element and it must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' See: Jones v. U.S., 119 S. Ct. 1215 (1999).

The petitioner was initially charged with violating Del. C. 11 § 636 and Del. C. 11 § 1447, the first charge was reduced to a violation of Del. C. 11 § 635 and petitioner was never charged with violating Del. C. 11 § 3906 the Domestic Violence statute of the State of Delaware.

- 24 -

"As a general rule, criminal proceedings were submitted to a jury after being initiated by an indictment containing 'all the facts and circumstances which constituted the offense...stated with such certainty and precision...that the defendant...may be enabled to determine the species of the offense they constitute, in order that he may prepare his defense accordingly...and there may be no doubt as to the judgment which should be given, if the defendant be convicted." Quoted from: J. Archbald, Pleading and Evidence in Criminal Cases 44 (15th ed. 1862)

Thus, if the petitioner faces punishment beyond that provided by statue when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and stigma attaches to the offense are heightened; it necessarily follows that the petitioner should not-at the moment the State is put to proof of those circumstances-be deprived of protections that have been, until that point, unquestionably attached.

When the prosecution was allowed to bring another element to the sentencing proceedings it violated the rights of the petitioner under both the due process clause and that of the Sixth Amendment by not informing the petitioner of everything he would have to defend himself against.

Therefore, it is the petitioner's position that the State is not allowed to bring (any fact) into the sentencing proceeding and justify it as attached or as a sentencing factor only, if so the State would inevitably be able to bring (any additional fact) that it deemed important with out the proof that the constitution and the laws provide that must be adhered to.

The United States Supreme Court noted in Apprendi v. New Jersey, 120 S. Ct 2348 (2000) that: "The Constitution requires that (any fact) that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt." Thus, a criminal defendant is entitled to a jury determination that he is guilty of every element of the crime for which he is charged, beyond reasonable doubt. U.S.C.A. Const. Amends. 6, 14.

The petitioner asserts that the sentencing court was not permitted to consider the State's argument and relies on the case of <u>U.S. v. Harris</u>, 70 F.3d 1001 (8th cir. 1995) citing that: "unquestionable, the district court may consider conduct from uncharged or dismissed counts for certain purposes under the guidelines. However, a sentencing court may not consider conduct from a count that was <u>dismissed pursuant to a plea agreement</u> as a basis for departing upward from the Sentencing Guidelines under provisions permitted departure if the court finds aggravating or mitigating circumstances adequately taking into consideration by the Sentencing Commission. See: <u>Sentencing Transcripts (Pg 2) lines 18 through 19</u>.

The (cause) was shown when the State prosecutor was allowed to advocate zealously for an enhanced penalty on unproven crimes (i.e. "this offense on December 20th, he kept Dawn locked up in a motel room for four and a half hours, during which time he threaten to kill her" as well as the State prosecutor stating that: "And for that he deserves the maximum penalty under the law." See: Sentencing Transcripts pg 26 - lines 15 through 17) and (pg 27 – lines 5 through 6) up until that point, were not proven to have had factually taken place and was at best only - speculative on the State's part without the required proof that was need to use those unproven crimes as a element or a sentencing factor of the underlining offense.

The (prejudice) that was cause by this action was, the State failed to inform the petitioner of the actual charges he was to defend himself against, and it allowed the State unbridled powers to boaster it's contentions that the petitioner acted in some type of conformity to an alleged crime that had failed to be proven to increase the penalty of the petitioner to the maximum allowable time without the require prove required by the law and that of the United States Constitutional provisions under the due process clause and the Sixth Amendment right to a jury determination of guilt.

Therefore, the petitioner would respectfully request that this Court review this argument in de novo in order to test the Constitutionality of the element that was used to enhance the sentence and penalty attached for which the petitioner is currently be held on.

ARGUMENT

**The Trial judge in this case had closed his mind in that he
was not willing or in agreement to review any mitigation before
imposing the petitioner's sentence, which did not, included ordering
a presentence investigation report or an independent competency
hearing once the court became aware of the petitioner's
questionable mental state and ongoing medication usage.**

The petitioner contentions are that; the trial judge in this particular case had closed his mind in that, he stopped review or receiving any mitigating circumstances that would have reduced the petitioner's culpability in the crime in which he was charged.

Trial Judge Charles H. Toliver IV., stated at the plea colloquy hearing after a request was made by defense counsel to have the court order a presentence investigation report to review, (statements made by certain civilian witnesses, an opportunity to submit those to a presentence officer to compile those in a report to present to the sentencing judge at a later date. Whether that's a week or six weeks or what, we would ask the opportunity to present those documents to enable the court to sentence this case according to a recommendation made by a presentence officer.) See: (Sentencing Transcripts pg. 10 lines 8 through 14).

Judge Toliver responded to this request in a type of manner that seemingly denied the defendant to present any mitigation to the facts of the crime or to be able to give a reasonable explanation as to why the defendant or his expert witnesses thought the crime may have taking place the way it did. The mitigation was not going to be offered as justification, because there is no justification that could ever explain this crime, it was to be offered as an explanation of what was or was not happening to the defendant's mind that particular day and the events that followed.

- 27 -

The judge in this case stated that: "I'm not sure what else a presentence investigation would add that I don't already know. I know how the crime was committed. I obviously know who committed it. I know a fair amount about the social history of the parties, which again, is well document through the defense experts. And I've had 12 years of experience. I'm not sure at this point a presentence investigation would benefit or assist me in that process."

See: (Sentencing Transcripts pg. 14 lines 4 through 12).

What becomes obvious to the petitioner is the sentencing judge never inquired into the reason(s) or motive(s) for why this crime took place in the first place, therefore precluding any finding from the judge of any mitigating factor or factors that may have warranted a less blameworthiness of sentence on the accused.

As stated earlier in argument three of this brief, Extreme Emotional Distress is an affirmative defense to the charge of murder and is not viewed from the person who is asserting it; therefore it must be viewed with an (open mind). There must be a reasonable explanation for the existence of extreme emotional distress in order to make an assessment as to the likely hood of this affirmative defense to succeed.

It is not the person who must be reasonable at the time, because a reasonable man would not intentionally kill another person; it is the (frenzy of mind) based upon a reasonable explanation which is basic to the jury's or judge's determination of the defense asserted.

The trial judge excluded or dismissed any comments made by defense counsel as to the provocation of the victim and her actions and sexual involvement with Mr. Thompson as a reasonable explanation for the existence of extreme emotional distress. This explanation although not an excuse or any type of justification for the crime, at least would have explained the enormous stress that the petitioner was under at the time of the crime.

- 28 -

There was adequate information before the trial court that the victim had told to petitioner just hours before that (she) had been having sexual relationships with Mr. Thompson and the finding of the victim in a motel room of Mr. Thompson hours before the confession of infidelity.

There seems to be no other greater provocation than to find out that someone is having an affair with your spouse. *Cf. United States v. Shortt*, 919 F. 2d 1325, 1328 (8th Cir. 1990).

The provocation of the victim should have been taken into consideration by the sentencing court, then and only then, after careful consideration and weighing the effects that the provocation had on the accused mind at the time of the commission of the crime, should the sentencing court rendered its decision and that decision should have warranted a reduction of the petitioner's sentence and not that of an enhancement.

Given the well documented history of the petitioner's mental infirmities, the judge in this case did not keep his mind open to review all the relevant evidence before it before handing down an extremely harsh sentence. Counsel for the petitioner makes it well known to the court that Dr. Much's report suggests that: "Mr. Krafchick's current system will not abate in the near future. Personality disorders as well as addictions are enduring by nature. All individual's can overcome depression, anxiety. Given Mr. Krafchick's personality style and limited resources, it is unlikely that he will ever be free fully of psychological problems. Therefore, continued psychiatric treatment, including medication, will be required in the near future to address some of his symptoms."

Which brings the second contention of this argument into question, the petitioner was heavily medicated on (psychotropic drugs) that affected the petitioner's perception of what he was doing during the trial or sentencing phase.

Here the trial court had a Fourteenth Amendment obligation under procedural due process rights to order a competency hearing upon finding out that the accused mental abilities were in question and that the petitioner was medicated under psychotropic medications that could have potentially affected the petitioner's willingness to enter into an agreement with the State.

The analysis of whether trial court violated petitioner's procedural due process rights by failing to sue sponte hold competency hearing before accepting guilty plea focuses on what trial court did in light of what it knew at the time of the trial or plea hearing. *U.S.C.A. Const. Amend. 14*.

When the State trial court failed to sue sponte hold competency hearing before accepting petitioner's guilty plea it violated petitioner's procedural due process rights, as there was sufficient evidence before the court to create bono fide doubt as to the petitioner's competency to plead guilty; two psychiatric evaluations stated that the petitioner suffering from extreme emotional distress relating to his illegal conduct at the time of the homicide. In addition to this the court in its own admission recognizes that the petitioner was suffering from mental infirmities when it stated on the record; "And I hope you are able to deal with your demons and illness which I think will conflict you for a considerable period of time."
See: (Sentencing Transcripts pg. 32 lines 12 through 15).

The two psychiatric evaluations provided sufficient evidence that there was a bona fide doubt as to the petitioner's competency to stand trial. Accordingly, the trial court was obligated to hold a competency hearing once it became aware of the ongoing medication usage by the petitioner in this case.

- 30 -

The two medications that are in question are: (Sinequan) or know by its generic name as Doxepin hydrochloride and (Vistaril) or known by its generic name as Hydroxyzine. Sinequan is a tricyclic antidepressant and has the side effects of drowsiness, dizziness, tremors, anxiety, confusion, weakness, headache, disorientation and many other debilitating effects that should have been taken into account before the trial judge disregarded or paid little to no attention at all of the above side effects.

Vistaril is a sedative/hypnotics and has the side effects of blurred vision, headache, dizziness, depression, impaired coordination, memory loss, and hangover effect or clouded thinking that may occur. The warnings on (Vistaril) also suggest that by taken a medication for the treatment of depression such as (Sinequan) can increase the side effects of Vistaril. All of this should have been taken into account by the sentencing judge and there should have been a court order competency hearing done before the petitioner was allowed to enter into a plea, with not having a record of the petitioner's state of mind and the possible side effects that the medications posed, the court could not say if the petitioner was indeed competent to enter a plea agreement or to waive counsel. See: (PDRhealth report of (Sinequan) & Dr. Schueler's Corner Drug Store report of Doxepin Hydrochloride; also see RxList report of (Vistaril) & Dr Schueler's Corner Drug Store report of Hydroxyzine Hydrochloride).

In addition to the above mentioned information please see the Correctional Medical Services, Inc report of the prescriptions from February 5, 2001 through February 18, 2002 as proof that the petitioner was in fact under those medications and just recently the same medical company as come under scrutiny in providing unprofessional medical services to the inmate population such as (i.e. overdosing patients and not keeping accurate medication records) through out the State of Delaware's prison system.

- 31 -

In the case of <u>United States v. Reginald Cole</u>, 813 F. 2d 43 93rd Cir. 1987), the court of appeal held that: "Where district court was informed of defendant's recent drug use, it failure to pursue issue of defendant's state of mind through further questioning precluded finding that defendant voluntarily and knowingly entered plea of guilty." See also; <u>United States v. Philip Rossillo</u>, 853 F.2d 1002 (2nd cir. 1988), in conjunction with <u>Fed. Rules Cr. Proc. 11, 18 U.S.C.A.</u>

The (cause) was shown when the trial judge failed to request a competency hearing as required by court rules and that of the constitutional requirements protecting a person charge with any crime under procedural due process under the 5th & 14th Amendments. This action by this judge would have made it impossible for him to make a reasonable determination of the intensity and the effects of the prescribe medications upon the petitioner's state of mind precluding the finding that the plea was truly voluntarily and knowingly entered into.

The (prejudice) that was cause by this was, it failed to make a record of the petitioner's willingness to enter into an agreement aside from the medication and the effects this medication had on the petitioner's volition, precluding the finding that the plea was truly his choice and not that of the defense counsel(s) persuasion upon a petitioner that was indeed easier to manipulate under the influence of mind altering drugs such as the one's the petitioner was under at the time of this plea.

Therefore, the petitioner would ask this court to reverse the judgment of the Delaware Supreme Court and remand this case so that a determination of whether an adequate and meaningful (nunc pro tunc) inquiry can be made into the question of whether (Krafchick) was, at the time of the plea hearing, competent or incompetent to plead guilty. See: <u>Acosta v. Turner</u>, 666 F.2d at 956. If a meaningful inquiry cannot be held, then the petitioner would ask this Court to grant this writ.

## ARGUMENT

Trial court abused its discretion by its use of unproven crimes which
also failed to put the petitioner on notice of what he was to defend himself
against and failed to provide him with a jury trial of his peers to find
guilt on those charges for the purpose of imposing a sentence.

The trial court abused its discretion when it used unproven assertions that brought a
higher degree of punishment upon the petitioner, with out putting the petitioner on notice of what
he needed to defend himself against. The petitioner argues that his sentence should be vacated
because the Superior Court erred as a matter of law by failing to exercise independent judgment
in its consideration of evidence pertinent to sentencing.

Due Process Clause guarantees every defendant a right to be sentenced upon information
which is not false or materially incorrect. Here, the Superior Court judge did not afford
(Krafchick) ample opportunity to submit arguments pertinent to sentencing and gave no thorough
consideration to consider any arguments from the petitioner or petitioner's counsel pertinent to
sentencing.

The State prosecutor introduced materially false assertions of unproven crimes in which,
they were at the time of sentencing, unwilling to prosecute. These assertions were of a highly
prejudicial nature, in that, the State makes an assertion that the petitioner had threaten to kill the
victim shortly before the actual crime had taken place. The State further maintains that the
petitioner had unequivocally said to the victim, quote "I am going to kill you; I don't care if I go
to jail." See: (Sentencing Transcripts pg. 26, lines 18 through 19).

- 33 -

A defendant on trial or during sentencing still maintains a constitutional right to be afforded an opportunity to mitigate his/her culpability when being held responsible for an illegal act in which punishment applies. Here, the trial court considered unreliable and unproven assumptions that it used to impose a higher degree of punishment, with out giving the petitioner ample time to mount or to present evidence that if introduce, would have amounted to a possible reduction or reduced amount of incarceration time upon the petitioner in this case.

Here, Krafchick contents that the wrongfulness of his wife revelation of her infidelity and sexual acts with a person not being her spouses was part of the "provocation" that had an impact on the petitioner's mind set, and should have been considered by the sentencing judge as an ample and substantial reason for a downward departure in the petitioner's sentence. In fact there was evidence that the state had in its possession, of the victim's and petitioner's daughter (Renee), had given to the State Police Detective that her mother was in fact having a promiscuous relationship with Mr. Chuck Thompson of the Hollywood motel.

This fact along should have warranted a reduction in the petitioner's sentencing factors, however, the sentencing court did not find all the facts relevant to sentencing, and that the jury would have had consider to determine guilty, therefore the trial judge found additional facts that were outside the presents of the jury to impose an enhanced sentence upon the petitioner, in so doing violating the rights of the accused.

The State has the burden of proving every element of a crime that will untimely affix to the punishment that should be attached in any crime, as in the case of <u>Apprendi v. New Jersey</u>, 120 S.Ct. 2348 (2000) the United States Supreme Court made a precise argument that: " an indictment for an offense, in order to bring the defendant within that higher degree of punishment, must expressly charge it to have been committed under those circumstances with certainty and precision."

The question that is presented is a narrow one and seemed to answered by the United States Supreme Court decision in *Apprendi*, -- and should be answered here – that is whether Krafchick's sentence is permissible, given that the sentence exceeds the 10 year maximum on the murder 2nd degree charge and that the second charge exceeds the 5 year maximum for the charge of possession of a deadly weapon during the commission of a felony. Neither charge was ever introduced as attached to the domestic violence statute of Delaware, nor did the Superior Court or the State ever inform the petitioner or his appointed counsel that the petitioner would have to defend himself against a domestic violence charge, if that would have been the case the petitioner would have mounted a proper defense against such allegations.

The holding of the United States Supreme Court in <u>Jones v. United States</u>, 526 U.S. 277, which deals with this exact argument however in the Federal Law standard, the Fifth Amendment's Due Process Clause and the Sixth Amendment's notice and jury trial guarantees require that (any fact) other than prior conviction that increases the maximum penalty for a crime must be charge in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

The Fourteenth Amendment right to Due Process and the Sixth Amendment right to trial by jury, taken together, entitle a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charge beyond a reasonable doubt. Id. <u>Jones v. U.S.</u>

In Burns v. United States, 501 U.S. 137-38, the Supreme Court held that, "a district court must give the government and the defendant "reasonable notice that it is contemplating an upward departure on a ground not identified as a ground for upward departure either in the presentencing report or in a hearing submission by the government," this is to give ample time to both the government and the defendant alike as not to snowball either side in an unfair practice or prejudicial outcome.

The petitioner in this case was never afforded a (PSI) report to be complied or was he ever given ample time to refute the allegations before the judge that he used in his sentencing calculations. This denied the petitioner to be punished according to his criminalities and not that of a highly motivated judge who was just sitting over the petitioner's trial which was a one sided as far as the evidence was concern. The judge in this case never heard the defense's mitigation of the existence of (E.E.D.) and the circumstances that surrounded this case.

Therefore, closing the mind of the trial judge, as he only considering the evidence from the State alone as the fact of facts. The trial judge further brings question to the fact that he said and quoted that "I'm not so sure at this point a presentence investigation would benefit or assist me in that process." See: (Sentencing Transcripts pg 14 –lines 10 through 11.)

In *Apprendi* The Court at 2350 (c) held; *McMillan v. Pennsylvania*, 477 U.S.79, was the first case in which the Court used "sentencing factor" to refer to a fact that was not found by the jury but could affect the sentence imposed by the judge. The court stated; In finding that the scheme at issue there did not run afoul of *Winship's* strictures, this Court did not budge from the position that (1) constitutional limits exist to State's authority to define away facts necessary to constitute a criminal offense, 477 U.S., at 85-88, 106 S. Ct. 2411, and (2) a state scheme that keeps from the jury facts exposing defendants to greater or additional punishments may raise serious constitutional concerns, id., at 88 106 S. ct. 2411. Almendarez-Torres V. United States, 523 U.S. 224, 118 S. Ct. 1219, - in which the Court upheld a federal law allowing a judge to impose an enhanced sentence based on prior convictions not alleged in the indictment-represents at best an exceptional departure from historic practice.

The Delaware Superior Court imposed a sentence outside what is presumed to be appropriate for the typical criminal case. Here, the Superior Court imposed a sentence that was remanded back from the Delaware Supreme Court because it could not from the record extrapolate the reasons set forth by the lower court to have imposed a sentence outside of the guidelines in affect by Delaware's Accountability Commission.

The Delaware's Accountability Commission's Benchbook at the time of the petitioner's sentence held that 2nd degree murder was to carry a 10 year presumptive sentence and a statutory sentence of 20 years, the weapon charge carried a 2-5 year presumptive sentence and a statutory sentence of 20 years. Both of these charges could be enhanced by the court if they stated on the sentencing record or the sentencing worksheet the aggravating factors that mandated a higher degree of punishment.

This did not take place in the petitioner's case; only after the Delaware Supreme Court remanded the case back to the Superior Court did that court give its reason's for imposing a sentence outside what is considered normal for the typical criminal case. Thus, by not informing him to every element or accusation that he would have to defend himself against it violated the petitioner's constitutional rights of procedural due process.

By the State's prosecutor's knowingly use of false evidence it establishes the likelihood that the false evidence was considered by the court as its reasoning for imposing an enhanced penalty on the petitioner. As such, this claim should encompass the _Brecht_ standard of harm, and no additional proof of prejudice in necessary. See: Kyles v. Whitley, 514 U.S. 419 (1995).

As a result of Delaware's allowance of this type of contradiction of clearly established federal law as determined by the Untied States Supreme Court, the petitioner would respectfully ask this Court to review the facts and applicable laws in *de novo* before rendering its final decree.

The (cause) that was brought by the action of the court was one of insurmountable prejudice, the petitioner nor his appointed counsel could have reasonability brought a defense to the reasons that the court used only after it was given a chance in time to explain its reasons for imposing an enhanced sentence on the petitioner. This decision is contrary to the United States holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), or in the decision in the most recent case of Blakely v. Washington, 124 S. Ct 2531 (2004) where it states: "other than a prior felony (any) fact that increases the maximum penalty must be submitted to a jury and proved beyond a reasonable doubt."

The (prejudice) that was brought by this action was it created a doubt on the fairness of the sentencing proceeding that it could never be deemed as harmless error, and would not be considered or subject to the harmless error analysis. Thus, the petitioner's trial and sentencing proceedings were infected with a constitutional error that would require an automatic reversal. By not allowing the petitioner to respond to the mere allegations of the State it produced a prejudicial atmosphere that could not be overcome by the petitioner or his appointed counsel. See: Satterwhite v. Texas, 486 U.S. 249, 256 (1988). See also: Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993).

Therefore, the petitioner would respectfully request that this court review this issue in *de novo* and grant the appropriate relief to the petitioner or any other relief that this petitioner may be entitled to upon the completion of this and all the related issues pertaining to this case.

## **RELIEF REQUESTED**

Wherefore, Petitioner Steven W. Krafchick prays that this Court:

1.  Permit petitioner to amend this petition to include any additional claims or allegations not presently known to him or his appointed counsel that are identified or uncovered in the course of review, discovery, investigation, and litigation of this habeas corpus petition.

2.  Require Respondents to file an answer to this petition in the form prescribed by Rule 5 of the rules governing § 2254 case in the United States District Court, identifying all state proceedings conducted in petitioner's case, including any proceedings that have not been recorded or transcribed, and specifically admitted or denying factual allegations set fourth in this petition.

3.  Require Respondents to bring fourth and file with this Court accurate and complete copies of all documents and proceedings related to the petitioner's conviction and sentence, including the records and transcripts in State v. Krafchick, New Castle County Superior Court Cause No. 0101010946; State v. Krafchick, Supreme Court No. 135, 2002; State v. Krafchick, Superior Court Cr. A. No. Pn01-1-2351R1 & In01-01-2352R1; State v. Krafchick, 124, 2005; State v. Krafchick, Cr. A. No. Pn01-1-2351R2 & In01-01-2352R2; State v. Krafchick, Supreme Court No. 555, 2006.

4.  Permit petitioner to utilize the procedures for discovery in Habeas corpus Rule 5, and Fed. R. Civ. P. 26-37, to the extent necessary to fully develop and identify the facts supporting this petition, and defenses thereto raised by Respondent's answer.

5. Conduct an evidentiary hearing to resolve any factual disputes rose in relation to the claims in this petition, by respondent's answer, to this petition, or by petitioner's response to any affirmative defense raised in Respondent's answer.

6. Allow petitioner sufficient time to brief the issues of law rose by the Respondent's answer to this petition.

7. Issue a writ of habeas corpus to direct Respondent's to release the petitioner from custody, unless he is given a new trial or new state proceedings are conducted to cure all constitutional defects in the state proceedings that resulted in the petitioner's present convictions and sentence.

8. Grant such other and further relief as may be appropriate.

DATED this 25 day of August, 2007

Respectfully submitted,

Steven W. Krafchick (Pro-se)
SBI# 00178856
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

CERTIFICATE OF SERVICE

I, Steven W, Krafchick, state that I have served a true and correct copy(ies) of the

attached (28 § 2254 Petition for Habeas Corpus Relief, Petitioner's Points & Authorities

& Supporting Documents upon the following:


To:    Office of the Clerk
       United States District Court
       844 N. King Street, Lockbox 18
       Wilmington, Delaware 19801-3570



BY PLACING SAME IN THE UNITED STATES MAIL at the Delaware Correctional

Center located at 1181 Paddock Road, Smyrna, Delaware. 19977.



On this 25th day of August 2007


_____
STEVEN W. KRAFCHICK,
SBI#00178856
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware. 19977
Petitioner