## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEVEN W. KRAFCHICK, | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 07-284-GMS |
| | § | |
| | § | |
| ELIZABETH BURRIS, Acting Warden, | § | |
| and JOSEPH R. BIDEN, III, Attorney | § | |
| General of the State of Delaware, | § | |
| Respondents. | § | |

FILED

FEB - 6 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

βD scanned

## PETITIONER'S REPLY BRIEF

Petitioner, Steven W. Krafchick, brings forth his reply brief to the States answering brief pursuant to Federal Civil Procedures and Rules governing the filing of a 28 § 2254 petition and Rule 5 (e) governing civil actions rules in accordance with Habeas Corpus proceedings.

The Petitioner filed with this court an "Application for Habeas Corpus Review" on May 21, 2007 pursuant to 28 § 2254 and subsequently filed the petitioner's "Memorandum of Point and Authorities" in Support of a 28 § 2254 Writ of Habeas Corpus and Supporting documents on August 25, 2007.

The Defendants through representation of the State of Delaware's District Attorneys Office requested two "extensions of time" to file their answering brief to the petitioner's contentions.

Therefore, this is the petitioner's reply to the respondents answer in the above civil action pursuant to a filing of a 28 § 2254 petition.

## TABLE OF CONTENTS

**Contents**                                                               **Page #**

Case in Summary & Requirements for filing a petition in Federal Court ................    i

Exhaustion, Standard of Review, & Petitioner's Contentions..............................    ii

Petitioner's response to Defendant's answer on Ground One.............................    1-4

Petitioner's response to Defendant's answer on Ground Two..............................    5-7

Petitioner's response to Defendant's answer on Ground Three.............................    8-10

Petitioner's response to Defendant's answer on Ground Four & Six......................    11-15

Petitioner's response to Defendant's answer on Ground Five..............................    16-19

Conclusion...............................................................................................    20

## 28 § 2254 Statutes, Rules, & Case Law, etc.

28 § 2254 (d) (1)                                                            1

Abdurrahaman v. Henderson, 897 F.2d 71, 73 (2nd Cir. 1990)             6

Affidavit of Defense counsel                                                5

Apprendi v. New Jersey,

Attachment of Counselor's suspension                                        7

Blakely v. Washington, 124 S. Ct. 2531 (2004)                              17

Brecht Standard                                                            15

Brown v. Allen, 344 U.S. 443, 73 S. Ct. 397, 97 L. Ed 469 (1953)          ii

D.I. 18 Supporting Documents                                               3

Delaware Supreme Court Directive No. 76 [1]                               13, 17

Drope v. Missouri, 420 U.S. 162 (1975)                                     3

Duncan v. Henry, 115 S. Ct. 887, 888 (1995)                               6

Fifth Amendment                                                           3, 11, 14

Fourteenth Amendment                                                      3, 11, 12, 14

Giglo v. United States, 92 S. Ct. 763 (1972)                             15

Hill v. Lochart, 475 U.S 52, 54 (1985)                                    1

Jackson v. Shanks, 143 F.3d 1313, 1318-19 (10th Cir. 1998)          10

---

[1] Siple v. State

Johnson v. Gibson, 169 F.3d 1239, 1249 (10th Cir. 1999)          9

Jones v. United States, 199 S. Ct 1215 (1999)          12

Krafchick v. State, Del Supr., No 124, 2005          1, 6, 8

Kyles v. Whitley, 115 S. Ct 1555 (1995)          15

Lee v. Kemna, 122 S. Ct. 877 (2002)          9

Martini v. State, 2007 WL 4463586 (Del. Supr)          17, 18

Napue v. Illinois, 79 S. Ct. 1173 (1959)          15

Neely v. Quatsoe, E.D. Wis. 1970, 317 F. Supp. 40.          11

Pate v. Robinson, supra, 383 U.S. 385, 86 S.Ct.842          2

Picard v. Conner, 92 S. Ct. 509, 512 (1971)          9

Response to Order of Remand          13, 15

Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994)          6

Schneider v. Delo, 85 F.3d 335, 339 (8th Cir. 1996)          6

Silverstein v. Henderson, 796 F.2d 369          2

Sixth Amendment          3, 6, 10, 12, 14

Smith v. Digmon, 98 S. Ct 597 (1978)          12

Strickland v. Washington, 466 U.S. 688 (1984)          1, 6

United States v. Agers, 92 S. Ct. 2392 (1976)          15

Wiggins v. Smith, 539 U.S. 510 (2003)          1

## CASE IN SUMMARY

In the answering brief filed by the Defendants through the District Attorney Office of the State of Delaware, it is their assertion that the following is their position on this case. 1) The State asserts that, the petitioner failed in his first ground to establish that the State courts applied a standard of review that is contrary to clearly established Federal law; 2) The State asserts that, the petitioner failed in his second ground to present it in either his direct appeal or his post-conviction motion for collateral review; The State asserts that, the petitioner failed to raise his third claim to the Delaware Supreme Court on appeal from his post-conviction motion; 3) The State asserts that, the petitioner failed to present his fourth and sixth claim as a claim of prosecutorial misconduct; 4) The State asserts that, the petitioner failed to comply with relevant state procedural requirements, therefore barring federal review, however the defendants further maintain that the petitioner failed to raise this claim in his first post-conviction motion.

## REQUIREMENTS FOR FILING A PETITION IN FEDERAL COURT

Four conditions exist before the filing of a Federal Habeas Corpus petition can be reviewed which are:

a) The petitioner must be in custody;

b) The petitioner must have exhausted all state procedures before petitioning to a federal court;

c) The petitioner must follow all state rules and procedures correctly before petitioning to a federal court;

d) The petitioner must file the petition in federal court within a specific period[1].

---

[1] (1 year after conviction becomes final; however, that time stays tolled if a properly filed motion within the state courts seeks collateral review).

i

## EXHAUSTION

Exhaustion is satisfied if the following requirements are completed:

a) The petitioner must have given the highest court of the state an opportunity to hear the petitioners federal claims; and

b) The petitioner presented those claims to the highest court of the state fairly. (Fair presentation requirement).

## STANDARD OF REVIEW (CAUSE AND PREJUDICE)

It is well-established law through the United States Supreme Court and that of the Federal District Courts; when a claim of constitutional magnitude is in place and violates a substantial right and is before the district court, the petitioner is not barred from federal review or relief. "It has been the rule that federal habeas petitioner who claims he is detained pursuant to a final judgment of a state in violation of the United States Constitution is entitled to have the federal habeas court make its own independent determination of his federal claim, without being bound by the determination on the merits of that claim reached in the state proceedings. See: Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed.469 (1953).

## PETITIONER'S CONTENTIONS

The petitioner contends that the defendants have mistakenly misrepresented the claims in which the petitioner has made. In addition, the petitioner maintains that he has successfully presented all of his claims and will demonstrate that he has presented all of his claims in both the Superior and Supreme Courts of the State of Delaware.

Thereby, fulfilling the requirements that are set out in the rules pertaining to Federal Civil Procedures and Rules of the federal courts that govern civil actions and the filing of a federal habeas corpus petition pursuant to 28 § 2254.

**1.    Defendants Answer to Petitioner's Ground One**

The Defendants in their answering brief relies on 28 § 2254 (d) (1) as their support to demonstrate that the Delaware Supreme Court applied the right case and right legal rules in deciding *Krafchick v. State*, Del Supr., No 124, 2005.

The Defendants further rely on the United States Supreme Court case of *Strickland v. Washington*, 466 U.S. 688 (1984) and its progeny, *Wiggins v. Smith*, 539 U.S. 510 (2003).

Under the Strickland standard, a petitioner who is asserting ineffective assistance of counsel must overcome the two-prong standard set out in Srtrickland. Under this standard a petitioner must demonstrate that: 1) counsels performance at trial or appeal fell below "an objective standard of reasonableness"; and 2) petitioner must show that, 'if not for counsels unprofessional errors, there is a reasonable probability that the petitioner would not have plead guilty and would have insisted on proceeding with trial'. See: Hill v. Lockhart, 475 U.S. 52, 54 (1985).

The petitioner insist that he has fully exhausted this claim in the State courts, however, the petitioner believes that the way the Delaware Superior Court address the petitioner's arguments in his first post-conviction motion, that the Court failed to reach all of the merits of that claim.

The petitioner asserts that if not for counsel's performance that fell below an objective standard of reasonableness the petitioner would have insisted on proceeding with trial and would have had a fair trial. The Constitutional errors that occurred by counsel's actions during his representation of the petitioner are as follows: 1)counsel allowed petitioner to be put on trial without requesting a competency hearing to determine if the petitioner could reasonably assist in his own defense;

- 1 -

2) counsel failed to protect the rights of the petitioner and allowed the petitioner to waive constitutional rights that applied at the time of trial and sentencing; 3) after informing the trial court that the petitioner was in fact under medication and in a questionable mental state; counsel did allow the sentencing court to abuse its authority and proceed to sentence the petitioner without the benefit of a competency hearing as mandated by United States Supreme Court precedent to due process and the right to a fair trial under *Pate v. Robinson*, supra, 383 U.S. at 385, 86 S.Ct. at 842.

This has always been the petitioner's position in the area of ineffective assistance of counsel claim. The petitioner is not a highly trained lawyer nor has he tried to present himself as a cunning manipulative person during his presentation to this or any court that he has found himself to be in.

However, the petitioner cannot predict how a particular court will address his claims, thus trying to get this claim and his other claims in the court so that the court will understand the issues have always been the problem for the petitioner.

The Defendant's would have this court believe that the petitioner was competent at the time of trial and subsequent plea colloquy; by insisting that the psychiatrist reports that were reviewed by the trial court supported the courts determination that the petitioner could effectively and reasonability understand the proceedings and that he could reasonably assist in his defense, however, the defendant's offer no other proof to this Court for that claim

This is contrary to the United States Supreme Court holding in *Pate v. Robinson*, supra., in the case of *Silverstein v. Henderson*, 796 F.2d at 369., the Second Circuit Court of Appeals held that; 'a trial court must order a hearing when there is "reasonable ground" for believing that the petitioner/defendant may be incompetent to stand trial.

- 2 -

In addition, the court when on to say that: "Recognizing that there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed." See: *Drope v. Missouri*, 420 U.S. 162 (1975).

There were undisputed facts before the Delaware Superior Court in this case. The trial court had before it the reports of three psychiatrists who evaluated *Krafchick*; the sole reasons for those evaluations were to determine *Krafchick*'s state of mind during the commission of the crime and not that of competency to stand trial, to waive counsel or to plea guilty before the court.

The doctors' disagreement gave the trial court reasonable grounds for doubting that *Krafchick* was competent to stand trial. In these circumstances, the trial court's failure to order a hearing, *sua sponte* if necessary, violates the petitioner's right to a fair trial. See: *Pate v. Robinson*, supra, 383 U.S. at 385, 86 S.Ct. at 842.

This is where the petitioner's rights were violated by counsel's actions, which in turn, establishes ineffective assistance of counsel and violates the petitioner's Fifth, Sixth, and Fourteenth Rights to the United States Constitution under *Strickland v. Washington*, 466 U.S. 688 (1984).

The Petitioner asserts that upon review of the record in whole and reviewing this claim in *de novo* this court will plainly see that the record undeniably supports the petitioner's contentions. The Petitioner further maintains that this court will find additional support of petitioner's claim in: (D.I. 18 "**Supporting Documents**" pg. 21 to 24 at pg.21 lines 3-9), and (pg. 1 of Dr. Much's report under "**Reason for Referral**" and Pg. 3 of that same report under "**Behavior Observations**"), in addition to (Dr. Tavani's report on pg. 1, stating: "The purpose of this evaluation was to determine Mr. Krafchick's mental status at the time of the incident") and pg. 7 of that report under **Mental Status Examination**).

- 3 -

The petitioner believes that he has successfully demonstrated through his efforts that the State has not applied the correct standard of review, or insists that the state court incorrectly applied them in a contrary way that is contrary to federal law or that of the United States Constitution.

The petitioner has presented precise and actual instants of counsel deficiencies, where counsel performance fell below an objective standard of reasonableness. In addition, the petitioner believes that he has also, successfully demonstrated that if not for counsels unprofessional errors, there is a reasonable probability that the petitioner would not have plead guilty and would have insisted on proceeding with trial.

Actual prejudice applies when counsel engages a petitioner who is in a questionable state of mind (by mind-altering drugs) to waive or to give up any constitutional rights that are afforded to the accused at that time. The petitioner in this case had a constitutional right to effective assistance of counsel during all stages of petitioner's legal issues. By the petitioner receiving inadequate representation brings a reasonable doubt about the entire conviction and sentencing procedures, and brings the last question of how much, if any, assistance could the petitioner provide in his own defense.

The petitioner prays that this Court will review this claim in *de novo* and issue an order requesting an evidentiary hearing to decide the merits of this claim if the facts before this court remain in dispute.

- 4 -

## 2.    Defendants Answer to Petitioner's Ground Two

The Defendants in their answering brief insist that, the petitioner has failed to follow the state procedures in allowing the state courts one full opportunity to address the claims, therefore, barring federal review.

The petitioner asserts that he has met the requirements of presenting this claim to the state courts, thereby, fulfilling his obligations pursuant to the filing of his federal habeas corpus application.

In support of the petitioner's contention, the petitioner filed one of two post-conviction motions within the Delaware Superior Court. The petitioner's first motion for post-conviction relief filed on May 7, 2004 and recorded as docket entry # 58 on that court's docket sheet.

However, due to the recent discovery by the petitioner, the Delaware Superior Court records filed with this Court are incomplete.

The petitioner submits that if this Court reviews the entire Superior Court record it would find that the petitioner in this case did in fact raise this claim in that court.

In the petitioner's memorandum of law in support of his filed post-conviction motion known as Rule # 61, the petitioner made this argument in his **Third Argument** in his memorandum of law.

In the **Affidavit of Defense Counsel** in response to Rule # 61 Motion for Post-conviction Relief on page 2 (See: DI # 65).

Defense Counsel (Mr. Edward C. Pankowski Jr., stated that: This Affidavit will respond to the three ground listed in the motion for Post-Conviction Relief, mainly grounds, 1) The guilty plea was entered under duress; 2) Ineffective assistance of defense counsel; and 3) Ineffective assistance during pretrial and sentencing proceedings.

It becomes evident that defense counsel understood the petitioner's argument in addition the petitioner maintains that the State Attorney General's Office understood the contention of the petitioner's argument as well however deliberately choose to ignore it.

The petitioner did raise this argument in both the Delaware Superior Court in the petitioner's first post-conviction motion and raised it in the Delaware Supreme Court in a combined argument of ineffective assistance of counsel claim in petitioner's **GROUND 1**. See: Krafchick v. State, (No. 124, 2005 Del. Supr., Ct.).

Therefore, the petitioner did present his Constitutional Claim of ineffective assistance of counsel to the State courts. The base of the petitioner's claim is from Strickland v. Washington, which brings the federal question of a Sixth Amendment violation to the effectiveness of counsel into question.

The petitioner asserts that he "reasonably informed" the state courts about the pending federal claim. Once the petitioner presented his claim to the state courts, it brought to the states attention that a violation of a federal right occurred. See: Duncan v Henry, 115 S. Ct 887, 888 (1995); see also Schneider v. Delo, 85 F.3d 335, 339 (8th cir. 1996).

In addition, this Court should recognize the petitioner's citation to Strickland v. Washington in a brief to both the Delaware Superior Court and the Delaware Supreme Court was sufficient to alert the courts that the petitioner was raising a federal claim regarding ineffective assistance of counsel since Strickland v. Washington is the leading U.S. Supreme Court case on that issue. See: Scarpa v. DuBois, 38 F.3d 1, 6 (1st Cir. 1994); and Abdurrahman v. Henderson, 897 F.2d 71, 73 (2nd Cir. 1990).

The petitioner submits that he could have if (properly trained and had legal and trial law experience) been able to present his claim in a more clear-cut manner. However, the petitioner as mention in his first answer to ground one is not a trained lawyer or tries to pretend to be.

The petitioner asserts that he has with due diligence brought this claim and all claims to the attention of the states courts therefore, exhausting all state remedies with no decisive resolution available to the petitioner.

In addition to the above, the petitioner would like to bring some new information to this court when it considers the petitioner's claim of ineffective assistance of counsel.

On December 5, 2007, the Delaware Supreme Court suspended Mr. Edward C. Pankowski for 3 months for ethical misconduct in two separate cases. The petitioner in his first ground in his post-conviction motion raise a identical claim in his first ground, in which counsel (Pankowski) did in fact provide ineffective assistance of counsel by violating the Rules of Professional Conduct; the rules in which the petitioner insisted that counsel violated were the same rules in which he was found guilty of violating now. See: (**Attachment**).

The violations complained about were the same identical rules that were in the Supreme Court, which went unheard back in May of 2004. On page # 12 of the petitioner's memorandum of law in support of post-conviction pursuant to Rule 61, the petitioner complains of counsel Pankowski violating **Rules 1.1** in which Pankowski failed to provide competent representation, and **Rule 1.4 (a)** and **(b)** in which Pankowski failed to communicate with the petitioner.

Although, not proof beyond a reasonable doubt that Pankowski violated Krafchick's right to effective assistance of counsel, it's quite interesting that this petitioner stated the same identical rules years earlier that counsel has been found guilty of violating now. A question now presents itself; did counsel provide competent representation in all his cases, or was he just caught doing something that he has been doing all along?

The petitioner prays for this, Courts review in de novo on this argument and that it will provide any and all other additional relief that the petitioner may be entitled by this Court.

- 7 -

## 3.    Defendants Answer to Petitioner's Ground Three

The defendants in their answering brief insist that, the petitioner failed to present this claim to the Delaware Supreme Court, the State is simple incorrect on this issue. The petitioner did raise this issue to the Delaware Supreme Court in his appeal from the Delaware Superior Courts judgment, in the petitioner's (Opening Brief) *Ground 1* on page 17 of that document. See: Krafchick v. State, (No. 124, 2005 Del. Supr., Ct.).

The petitioner raised his claim in a incorporated manner to stay within the page requirements of the Delaware Supreme Court Rules.

The State misses the mark completely, the State Attorney's Office focus on what it deemed to be the relevant arguments in the petitioner's first post conviction motion, therefore, setting the agenda for what the State was willing to answer and not of the actual arguments.

The State deliberately precluded the petitioner from arguing the merits of his arguments, time after time the petitioner tried to raise the arguments before the Superior Court, the State never responded to all of the petitioner's allegations dealing with ineffective assistance of counsel claims.

The petitioner consequently, on this claim is not procedurally barred, in fact the petitioner "reasonable informed" both the Delaware Superior Court and in his appeal to the Delaware Supreme Court of the impending constitutional violations in the petition's case.

The petitioner alerted the State courts of the claims that dealt with a federal nature through the substance of the claim itself. The petitioner claim the following when he presented his claim, the petitioner insisted that his right to effective assistance of counsel and that of due process in his State proceedings.

- 8 -

Federal Courts generally consider remedies exhausted when the [petitioner] has "fairly presented" claims one time to the State courts. See: Picard v. Connor, 92 S. Ct.509, 512 (1971).

Therefore, the State court does not need to consider the petitioner's claim in order to be reasonably informed that the claim relies on federal law.

In addition, the State fails to have an "independent and adequate" state ground for denying the petitioner's claim. The State rule is not "independent" from the constitutional right that applied to the petitioner, the State insist that the petitioner is not entitled to relief but does not support it's contentions independent from the federal rights.

The petitioner had a fundamental right to have an affirmative defense and to present it to the jury or the trial judge in the case; however, the State maintains that before the defense could present it to the jury the petitioner elected to enter a plea. The ideal that this petitioner wanted to enter a plea voluntarily with knowledge, and intelligence is preposterous and absurd. The petitioner maintains that he was not reasonably assist in any part of his defense, precluding the act of knowledge.

If a State convicts and sentences a petitioner with a plain error, the State must address the constitutionality of the petitioner's claims before applying a state procedural rule.

Since the State in this case did not, the petitioner maintains that the State rule is not "independent or adequate" to stop the review of this claim and therefore should not prohibit this Courts review of this claim. See: Johnson v. Gibson, 169 F.3d 1239, 1249 (10th Cir. 1999); also Lee v. Kemna, 122 S. Ct 877 (2002); in addition to:

Jackson v. Shanks, 143 F.3d 1313, 1318-19 (10th Cir. 1998) holding: (state procedural default rule that claims not raised on direct appeal are procedurally barred cannot be applied to ineffective assistance of counsel claims, because doing so would "deprive petitioner of any meaningful review of the ineffective assistance of counsel claim".

To reiterate the "cause" of this action was contributed to the denial of a defense, because counsel's failure to develop any viable defense to present to the jury or the trial judge. Counsels providing no defense at all, left his client open to any sentence that the State wishes to ask for. In straight violation of the Sixth Amendment; "to have compulsory process of obtaining witnesses on behalf of the accused and infringing upon the petitioner's basic right of due process of the Fourteenth Amendment to a fair trial and sentencing.

The "prejudice" that resulted was, it left the petitioner defenseless and exposed him to the most severe punishment that virtually went unchallenged, thus allowing the petitioner to be sentence to an exacerbated amount of time incarceration that was well beyond the normal sentencing range in crimes with indistinguishable similar facts that surrounded this case.

The petitioner prays for this, Courts review in de novo on this argument and that it will provide any and all other additional relief that the petitioner may be entitled by this Court.

## 3.    Defendants Answer to Petitioner's Ground Four and Six

The Defendants in their answering brief insist that, the petitioner failed to present his claim as a claim of prosecutorial misconduct. The petitioner asserts that he did present this argument in his first post-conviction relief motion (petitioner's memorandum of law in support ground three). In addition, if any confusion was still present after the State deliberately ignored the cruxes of the petitioner's arguments the petitioner restated the ground for the court and the exact point he was trying to make in his (Amendment To Respondent's Answering Brief).

When the State argued for an exceptional sentence that exceeded the recommended guidelines set out in Delaware's Sentencing Bench Book, they became judge, jury, and executioner all at the same time. This is where the prosecutorial misconduct took place.

Reliance at the time of sentencing on material misstatements regarding a defendant's prior record may constitute a denial of due process, and such error is remediable on habeas corpus by remand to state court for resentencing. See: Neely v. Quatsoe, E.D. Wis. 1970, 317 F. Supp. 40.

The State relied on unproven crimes to enhance the petitioner's sentence; this violated the petitioner's Fifth and Fourteenth Amendment rights to due process, when the State used alleged charges to ask for an enhancement they failed to give notice to the Court and the defendant.

The State gave misleading material evidence when they advocated for a hasher sentence by the uses of unproven elements of an unsupported incident between the petitioner and the victim of this particular crime. The way the State presented this evidence and then validated it with its authority made it virtually impossible for the petitioner to defend himself.

- 11 -

The prosecution-invoked presumption to buttress the evidence that the murder took place in some type of horrendous way, and did not allow the petitioner a chance to prove otherwise.

Just as it is plain that the exhaustion diction can operate effectively, only if prisoner presents his claim as a federal claim in a posture that the State may have an opportunity to address it. It is just as important, if the State elects to ignore or to use a procedural bar to prohibit the Court from reaching the merits, the petitioner has exhausted his claim and can proceed into the federal courts for review of his claims. See: Smith v. Digmon, 98 S. Ct 597 (1978).

The prosecutor became an advocate for enhanced sentence, and then went on to knowingly present false evidence to strengthen their case, which then became a straight due process violation of *Apprendi* and the Fourteenth and Sixth Amendments rights that attached up in till that point. This petitioner will try to set fourth the violation that took place in this case.

United State Supreme Court noted in *Apprendi*, Their answer to the question of (whether a constitutional violation had taken place due to enhance sentence) was answered by their opinion in Jones v United States, 199 S. Ct 1215 (1999). [T]heir holding in that case was: "[W]e noted that "under due process clause of the Fifth Amendment and notice and jury trial guarantees of the Sixth Amendment, any fact (other then prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proved beyond a reasonable doubt".

This establishment of law has been the very basis for the petitioner's claim. On February 13, 2002 Superior Court Judge Charles H. Toliver, IV sentence the petitioner to a total period of 20 years level V incarceration for the charge of murder 2nd degree, and 20 years for possession of a deadly weapon during the commission of a felony. However, Judge Toliver used the false evidence from the State to enhance the petitioner's sentence. The standard sentences respectfully are 10 years level V incarceration for the murder charge and respectfully 2-5 years on the possession of a deadly weapon charge.

The Judge in this case used unproven charges and alleged crimes that the State introduces to enhance the petitioner's sentence on the belief that the petitioner engaged in similar criminal conduct with the victim in the past.

After the Delaware Supreme Court initially reviewed this case, only after receiving notice from the petitioner that he did wish to appeal from the Superior Courts Sentence. Delaware Supreme Court note: [T]hey could not determine from the record as to why the petitioner sentence was outside of the standard sentencing range. Therefore, remanding the case back to the Superior Court so that, that court could "set forth with particularity the reasons for the deviation" from the standard range guidelines in order to allow appellant review by the Delaware Supreme Court pursuant to Delaware Supreme Court Administrative No. 76., and Siple v. State.

Judge Toliver clearly departed from the guidelines but failed to state any reasons at the time of sentencing for his departure. As supported by his response to the Delaware Supreme Court "The sentence recommended by SENTAC was clearly exceeded by this Court".

See: (# 57 Response to Order of Remand pages 6-10).

- 13 -

The State prosecutor argued zealously for the imposition of the maximum sentence principally based upon: 1) petitioner's drug use, 2) the prior abuse of the victim, and 3) petitioner's attempt to control the victim's efforts at gaining independence. There is absolutely no documentation of any kind that these so-called facts are true. This was the bases for the Courts reasoning for sentencing the petitioner to an enhanced penalty.

Such documentation if such exist should not of been absent from the States case in chief, It is inconceivable that the petitioner was sentence so harshly for a first time offense with no past or prior criminal conduct. Please do not mistake the petitioner's position, the petitioner does take responsibility for this crime and will always have to live with the fact that he and he alone is responsible for the death of his wife.

The State allowing to uses unproven, unsupported, speculated jesters to support it reasons for an enhanced sentence violated the very basic right of fair proceedings and denied this petitioner due process and notice, and further denied him his day in Court.

It is at this point that the violation of the petitioner's Fifth Amendment rights to due process to a fair trial and notice and jury trial guarantees under the Sixth Amendment Constitutions took place.

The uses of these unproven, unsupported, speculated crimes were the sole and only basic for the State asking for the increase or enhancement to the maximum penalty, and does not reflect or give any justification to the enhancement the petitioner did receive.

Because of the deliberate presentation of false evidence and was used, it naturally violates the petitioner's due process rights to a fair trial. *Fourteenth Amend*.

The failure to correct false evidence also encompasses the same concerns. *Giglo v. United States*, 92 S. Ct 763 (1972).

To obtain relief, petitioner must establish the evidence was material, and there is a reasonable likihood that the false testimony could have affected the outcome. *United States v. Agers*, 96 S. CT 2392 ¶1976); *Napue v. Illinois*, 79 S. Ct 1173 (1959).

Generally, the showing is complete by establishing a likihood that the false evidence is considered. Upon review of the sentencing transcripts between pages 26-27 and lines 11 on page 26 through line 6 on page 27, and the reviewing of the (Response to Order of Remand) third paragraph. Judge Toliver states: "And I think in the area of domestic violence we have to make it clear, one person does not own another person, one person cannot tell another person to come or go or stay once they reach the age of majority anyway". Reflects the identical language that the State used in it summation before asking the Court for the increased sentence.

As such, proof of the claim encompasses a *Brecht* standard of harm, and no additional proof of prejudice is necessary. Kyles v. Whitley, 115 S. Ct.1555 (1995).

Therefore, establishing a due process violation for the uses of false evidence by showing the trial was fundamentally unfair, warrants this Courts review upon this claim.

Petitioner respectfully prays that this Court will review this and all previous claims in this reply brief in de novo and grant all relief that is available to the petitioner.

- 15 -

## 4.    Defendants Answer to Petitioner's Ground Five

The Defendants in their answering brief insist that, the petitioner failed to present this claim to the Superior Court. In order for the petitioner to have exhausted his state remedies, the petitioner had to "reasonably inform" the State Court about the pending federal claim.

That meant the petitioner must notify the State court that he was raising a federal claim, before the petitioner could file or raise it in a federal habeas corpus proceeding.

The United States Supreme Court has had that; the petitioner must explicitly say that he has raised a federal claim or alleged violation of the U.S. Constitution.

Here the petitioner raised the claim of a violation of due process under the Fourteenth Amendment to support the contention that the trail judge had a "closed mind" thereby, notifying the State courts of the pending federal claim.

Although this argument was, encompass by two other supporting grounds, each argument was independent from one another.

The Judge in this case failed to keep his mind open, in doing so failed review all the pertinent information before imposing an extremely harsh sentence given all the dynamics in this case.

In reviewing the Superior Court record that forwarded to the District Court, the petitioner is in astonishment that pertinent parts of the record are missing. It is impossible for this Court to have an objective review of these claims when the record is void of the supporting parts. The petitioner would never surmise that the State would be so cunning as to inadvertently misplace particular parts of the entire record.

- 16 -

One such document is the Deputy Attorney's General response to the petitioner's first post-conviction motion. Ms. Marsha J. White filed the States response in the Superior Court, in her response she acknowledges the petitioner's complaint and responded to the petitioner's contentions.

The petitioner cited Blakey v. Washington, 124 S. Ct. 2531 (2004) as his additional support to his *Apprendi* claim. Just as in Apprendi & Blakey, the judges in both of those cases found additional facts that would not have supported the enhancements on those defendants. Just as here, the judge exceeded his authority and sentences the petitioner outside of the standard range for these particular charges, which would have carried 10 years on the murder 2nd charge, and 2-5 years on the possession of a deadly weapon charge.

In a recently decided case in the Delaware Supreme Court (Martini v. State, 2007 WL 4463586 (Del. Supr.) attached. That Court announced on page 4-5, "Although the SENTAC sentencing guidelines are "voluntary" and "non-binding" this Court's Administrative No. 76 requires that judges "set forth with particularity the reasons for the deviation" from the guidelines, in order to allow appellate review by this Court".[1]

As mentioned earlier in ground four, the sentencing judge used the weight of the State's reasoning and recited the exact language during sentencing the petitioner, thereby demonstrating that he had closed his mind to any mitigating factors.

This action by the trial court, denied the petitioner to present any opposite or opposing arguments that would have supported or would have lessen the severity of the sentence that was imposed, since neither counsel nor the defendant had a change to address the additional elements used by the sentencing judge.

---

[1] Delaware Supreme Court

Here Judge Toliver relied and incorporated materially false and unreliable evidence to inflict a hasher then normal punishment of the petitioner. It is also here, that defense counsel for the petitioner requested the trial court to have a (PSI) done in order that the defense could comply all relevant documentation before the court. Such documentation as: 1) History and characteristics of the petitioner; a) prior criminal record; b) financial condition; and c) any and all circumstances affecting the petitioner behavior that would be helpful at sentencing. 2) The probation officer categorization of the petitioner and the offence under the Guidelines, the types of sentence and sentencing range for these categories, and an explanation of any factors that may warrant departure. 3) The impact of the crime on the victim.[2] 4) The nature and extent of prison and non-prison programs available if appropriate. 5) Any report and recommendation resulting from a court-ordered study of the petitioner. 6) Any other information that may be required by the court.

In the direct appeal stage of the petitioner's plight to have his sentence corrected for what is a due process violation, defense counsel noted for the Delaware Supreme Court that: "*The sentencing order is void of any aggravated factors which will lead the Court to sentence above the truth and sentence guidelines in this particular case*".

It seems to be clear, that the sentencing court failed to list any aggravating factors in which the petitioner would have been able to defend himself.

The Delaware Supreme Court stated in Martini, [3] "We have previously held that a judge "must have an open mind fro receiving all information related to the question of mitigation," and that a judge exhibits a "closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offence or the character of the defendant."

---

[2] This consideration is dramatically reduced since the victim died in this case.

[3] Martini v. State, 2007 WL 4463586 (Del. Supr.)

As such, the judge violated the petitioner's due process rights and notice guarantees when he used external information that was not part of the charged crime. This action also placed on the petitioner an unfair condition that the court had in this matter. When the Delaware Supreme Court allowed the Superior Court time to articulate its reasons as part of the official record, and prohibited the defense to mount a proper response to the illegal allegations.

Wherefore, the petitioner has presented his claims and arguments, which warrant this Courts review, as, stated earlier in this reply brief, the petitioner has always tried his best to present his contentions. The petitioner prays that this Court will appoint counsel if appropriate, order an evidential hearing because of the consistent disagreement of the arguments. In addition, grant any additional relief that the petitioner may be entitled.

## CONCLUSION

Petitioner Steven W. Krafchick, has presented all relevant facts and supporting documentation to this Court for review of this case under Federal Habeas Corpus 28 § 2254 proceedings.

The petitioner in not trained in law and does not pretend that he can effectively mount a proper argument in this court or any other court he may find himself in. The petitioner with strong convictions has comprehended that a serious violation has taken place in his case.

The petitioner only hopes and prays with a changed mind and heart that, this Court will give the petitioner arguments a through review, although, the arguments may have been able to been presented more artistically, the petitioner has done the best he can with himself as a client.

Dated this ⸺3⸺ day of the month of February , 2008

Respectfully submitted,

Steven W. Krafchick (Pro-se)
1181 Paddock Road
Delaware Correctional Center
Smyrna, DE 19977

**3-MONTH SUSPENSION**
**No. 575, 2007**
**Amended Order dated December 5, 2007**

**Edward C. Pankowski, Jr. has been suspended by the Delaware Supreme Court for ethical misconduct effective January 1, 2008.** (An amended Order was issued December 5, 2007.) The suspension will last three (3) months. It is anticipated that Pankowski will be reinstated in April 2008; however, a Reinstatement Order must be issued by the Court before Pankowski can resume practice.

Additional conditions of the disciplinary sanction severely curtail the nature and scope of Pankowski's practice. Pankowski's practice must be limited to: (1) residential real estate closings for a flat fee and (2) criminal defense in connection with a court-supervised conflicts program. (After five (5) years, Pankowski is permitted to file a petition requesting that the scope of his practice be expanded.) Pankowski is also permanently barred from acting as a notarial officer.

Pankowski's ethical misconduct involved the handling of two separate client matters – one in Family Court and one in Superior Court.

In the Family Court client matter, Pankowski failed to communicate with his client or respond to her communications with him. He also signed his client's name to a pleading, falsely notarized the signature, and filed the pleading with the Court. Pankowski failed to abide by his client's objectives (Rule 1.2(a)), failed to communicate with his client (Rule 1.4(a)), knowingly made a false statement of material fact or law to a tribunal (Rule 3.3(a)(1)), and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation (Rule 8.4(c)).

In the Superior Court matter, Pankowski was privately retained to file a motion for reduction of sentence on behalf of a convicted, incarcerated client. Pankowski failed to provide competent representation (Rule 1.1), failed to act with reasonable diligence (Rule 1.3), charged an unreasonable fee (Rule 1.5(a)), failed to properly handle a fee paid in advance (Rule 1.5(f)), and failed to safeguard client funds (Rule 1.15(a)).

Aggravating factors included Pankowski's prior disciplinary record (a 2002 private admonition for falsely notarizing signatures on two documents submitted to Court of Chancery), that his clients were vulnerable victims, and that Pankowski had substantial experience in the practice of law. Pankowski's substantial record of public and community service throughout the course of his legal career was considered a mitigating factor.

Westlaw.

Slip Copy
Slip Copy, 2007 WL 4463586 (Del.Supr.)
(Cite as: Slip Copy)

Page 1

**Martini v. State**

Del.Supr.,2007.

Only the Westlaw citation is currently available.
NOTICE: THIS OPINION HAS NOT BEEN RE-
LEASED FOR PUBLICATION IN THE PER-
MANENT LAW REPORTS. UNTIL RELEASED,
IT IS SUBJECT TO REVISION OR WITHDRAW-
AL.NOTE: THIS OPINION WILL NOT BE PUB-
LISHED IN A PRINTED VOLUME. THE DIS-
POSITION WILL APPEAR IN A REPORTER TA-
BLE.

Supreme Court of Delaware.
Dale A. **MARTINI,** Defendant Below, Appellant,
v.
**STATE** of Delaware, Plaintiff Below, Appellee.
**No. 643, 2006.**

Submitted: **Dec. 5, 2007.**
Decided: **Dec. 21, 2007.**

Court Below: Superior Court of the **State** of
Delaware in and for New Castle County, Cr. No.
VN0302062005.

Before STEELE, Chief Justice, HOLLAND and
JACOBS, Justices.

## *ORDER*

MYRON T. STEELE, Chief Justice.
**\*1** This 21st day of **December2007,** it appears to
the Court that:

(1) Dale **Martini,** defendant-appellant, appeals a
Superior Court judge's order finding him in viola-
tion of probation, revoking his Level III probation
sentence, and sentencing him to six years at Level
V supervision. **Martini** argues that the judge im-
properly ordered **Martini** removed from his viola-
tion of probation hearing and limited his right to be
heard, to present evidence, and to question wit-
nesses at his the hearing. **Martini** also contends
that the judge's sentence of six years at Level V su-
pervision deviated from the sentencing guidelines
without articulating with particularity the reasons
for deviating from the guidelines. Because the

judge failed to warn **Martini** adequately before re-
moving him from the VOP hearing and because the
judge deviated from the sentencing guidelines
without any explanation, we **REVERSE** and **RE-
MAND.**

(2) In November 2006, the **State** charged **Martini**
with violating three of the terms of his Level III
probation imposed after a fourth degree rape con-
viction. At his **December** 2006 VOP hearing, the
probation officer explained that **Martini** had been
arrested on new charges, failed to attend three
scheduled office visits with his probation officer
and three sex offender group meetings, and was not
home for one telephone curfew check. The new
charges against **Martini,** *i.e.* criminal impersona-
tion and second-degree forgery, rested on the fact
that **Martini** used the name Kedar Anshari Ptah-El
on a defendant history form and identified himself
by that name to a police officer.

(3) At the VOP hearing, a public defender came to
represent **Martini,** but he refused representation.
**Martini** asked to address the judge himself and
said "I do not accept any representation from the
Public Defender's Office and no one claims power
of attorney over the living soul."The judge attemp-
ted to determine **Martini's** position on the VOP
charges. Rather than stating his position, a stirred
**Martini** objected to being identified as Dale A.
Martini and to his name being spelled in all capital
letters. When the judge asked **Martini** to clarify his
position, **Martini** declared that he was "not the per-
son you're referring to."The judge informed **Mar-
tini** that his identity had already been established
and that the purpose of the hearing was to "sentence
[**Martini**] on violating [his] probation."**Martini**
then began arguing with the judge and proclaimed
that his name was "Kedar Anshari Ptah-El" and "I
can't answer anything under Mr. **Martini.** I need
from you a delegation of authority order, your li-
cense to practice law, and I need you to establish
status in this case before you."The judge informed
**Martini** if he did not stop arguing "right now" that
she would find him in contempt. **Martini** continued

arguing and responded that, among other things, "[f]or the record, I'm not Mr. **Martini**."The judge ordered **Martini** removed from the courtroom, found him in contempt, and **stated** that:

**\*2** I think I can go forward with the sentencing because I'm going to find him in violation irrespective [sic] because I can't expect him to act or behave any differently next time.

The probation officer told the judge that Martini had not submitted any documents indicating that he legally changed his name. The judge concluded:As far as this Court is concerned, he is Dale Martini, Jr. That's the way he was named at birth ... we can put [Kedar Anshari Ptah-El] as an a/k/a, but he still gets sentenced as the person that was standing before me. So I'm just going to revoke his probation....

The probation officer recommended that, if the judge found Martini in violation of his Level III probation, Martini should be sentenced to six years at Level V supervision, suspended after three years of imprisonment, followed by decreasing levels of supervision. The judge ultimately sentenced Martini to six years Level V incarceration. This appeal followed.

(4) Martini argues that the judge violated his due process rights by denying his opportunity to be heard, to present evidence, and to question witnesses after the judge excluded him from the VOP hearing. We review an alleged violation of constitutional rights *de novo*.[FN1]

> FN1.*See Bentley v. State,* 930 A.2d 866, 871 (Del.2007).

(5) Revocation of probation results in a loss of liberty and entitles the probationer to a hearing and certain "minimum requirements of due process." FN2Superior Court Criminal Rule 32.1(a) provides:

> FN2.*Gagnon v. Scarpelli,* 411 U.S. 778, 782 (1973).

Revocation of partial confinement or probation. Whenever a person is taken into or held in custody on grounds that the person has violated a condition of partial confinement or probation, the person ... shall be afforded a prompt hearing before a judge of Superior Court on the charge of violation. The person shall be given:

(A) Written notice of the alleged violation;

(B) Disclosure of the evidence against the person;

(C) An opportunity to appear and present evidence in the person's own behalf

(D)The opportunity to question adverse witnesses; and

(E) Notice of the person's right to retain counsel and, in cases in which fundamental fairness requires, to the assignment of counsel if the person is unable to obtain counsel.

(6) The record indicates that the judge held no hearing on the question of whether Martini violated his probation. The probation officer appeared on behalf of the State and set forth the allegations giving rise to the VOP. Martini never admitted violating probation. And the judge heard no testimony about Martini's alleged VOP. Instead, the judge summarily found that Martini violated probation. The judge stated that the reason for Martini's appearance was to sentence him for a violation of probation and not to conduct a hearing on the issue of whether Martini violated his probation and, if so, whether any mitigating circumstances existed.

(7) A defendant's due process rights at a VOP hearing are not unlimited. In *Illinois v. Allen,* the United States Supreme Court held that:

**\*3** [T]rial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant ... (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.[FN3]

Slip Copy                                                                                                          Page 3
Slip Copy, 2007 WL 4463586 (Del.Supr.)
**(Cite as: Slip Copy)**

FN3.397 U.S. 337, 337 (1970).

Here, the judge employed cumulatively two of the three remedies listed by the *Allen* court. The judge found Martini in contempt and ordered him removed from the courtroom. We conclude that these sanctions were not a reasonable response to Martini's conduct.

(8) First, the record shows that the judge found Martini in contempt. Under Superior Court Criminal Rule 42(a) and 11 *Del. C.* § § 1271 and 1272, direct criminal contempt, *i.e.* when the "judge saw or heard the conduct constituting the contempt [which] was committed in the actual presences of the court," may be punished summarily. The judge sanctioned Martini for contempt by removing him from the courtroom without the opportunity to return. Although "Delaware courts have the inherent power to impose criminal sanctions for contempt" (independent of contempt as a statutory crime),<sup>FN4</sup> these circumstances did not warrant that sanction. In analyzing the methods judges can use to maintain an appropriate courtroom atmosphere, the United States Supreme Court noted that the remedy of contempt, as opposed to removal, is appropriate where it would result in the defendant remaining in the courtroom but behaving in a civilized manner.FN5In Martini's case, the remedy of contempt resulted in his removal from the courtroom without warning that contempt might result in his *permanent* removal from the proceedings. The judge apparently found Martini in contempt because of Martini's insistence to be addressed as Kedar Anshari Ptah-El. However, this conduct may have been intimately related to Martini's new criminal charge of criminal impersonation and forgery. To admit that his name was not Kedar Anshari Ptah-El exposed Martini to potential criminal liability on the pending charges.<sup>FN6</sup>

FN4.*DiSabatino v. Salicete,* 671 A.2d 1344, 1348 (Del.1996).

FN5.*See Allen,* 397 U.S. at 345 (noting that citing or threatening to cite might be sufficient to punish the contumacious de-

fendant and allow the defendant to remain in the courtroom).

FN6. Martini was later found not guilty of these offenses.

(9) Second, the judge removed Martini from the courtroom. Superior Court Criminal Rule 43(b)(2) provides that "[t]he further progress of the trial ... shall not be prevented and the defendant shall be considered to have waived the right to be present whenever [the] defendant ... [a]fter being warned by the court that disruptive conduct will cause removal ... persists in conduct as to justify exclusion from the courtroom."In *Allen,* the United States Supreme Court upheld removal of a defendant and emphasized that that Allen had been "*repeatedly* warned by the trial judge that he would be removed from the courtroom if he persisted in his unruly conduct" and "*constantly* informed that he could return to the trial when he would agree to conduct himself in an orderly manner." <sup>FN7</sup>However, the judge employed none of these safeguards. The judge never warned Martini nor gave him an opportunity to return if he promised to conduct himself in an orderly manner. The judge prematurely determined that "I can't expect him to act or behave any differently the next."Because Martini did not receive "minimum requirements of due process" at his VOP hearing and because Martini did not waive those rights by his conduct, the judge violated Martini's right to due process.

FN7.397 U.S. at 346 (emphasis added).

**\*4** (10) Martini also argues that the judge improperly sentenced him. We review sentencing of a criminal defendant for abuse of discretion.<sup>FN8</sup>In general, our review ends once we determine that the sentence is within the statutory limits prescribed by the legislature. Here, **Martini's**December 5, 2006 VOP sentence fell within the statutory limits.<sup>FN9</sup>Even in these circumstances, we have appellate jurisdiction to review criminal sentences where the defendant alleges "unconstitutionality; factual predicates which are either false, impermissible, or lack minimum indicia of reliability; ju-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 4463586 (Del.Supr.)
(Cite as: Slip Copy)

Page 4

dicial vindictiveness, bias, or sentencing with a 'closed mind;' and any other illegality."[FN10]In this ease, the last two eategories-sentencing with a elosed mind and illegality-are at issue.

> FN8.See *Kurzmann v. State*, 903 A.2d 702, 704 (Del.2006).

> FN9. The Deeember 5, 2006 VOP sentence (six years at Level V supervision) is not greater than the previous VOP sentence (six years at Level V supervision, suspended after six years at Level IV VOP Center supervision, suspended after six months served at Level IV VOP Center supervision, followed by 2 years at Level III supervision).*See Pavulak v. State*, 880 A.2d 1044 (Del.2005) (holding that trial eourt is precluded from imposing a VOP sentence exceeding the total sentence originally imposed in prior VOP proceedings).

> FN10.*Siple v. State*, 701 A.2d 79, 83 (Del.1997).

(11) **Martini** claims that his sentence was "illegal" because the **Deeember** 2006 VOP order fails to give **Martini** credit towards his Level V incarceration for time previously served at Level IV VOP Center.[FN11]The record is unclear about how much time, if any, **Martini** served at Level IV VOP Center but the **State** concedes on appeal that "to the extent **Martini** was not given credit for time previously served in the VOP Center, he should be afforded credit."Because the presiding judge failed to account for time previously served by **Martini** at the VOP Center, a judge must consider **Martini's** time served should a judge find at a new VOP hearing that **Martini**, in fact, violated probation.

> FN11.*See Anderson v. State*, 2006 WL 3931460 (Del.2006) (holding that defendant should be given Level V credit for time spent at Level IV VOP Center).

(12) **Martini** also contends that the judge sentenced him with a "closed mind" because the judge deviated from both the probation officer's recommenda-

tion and from SENTAC sentencing guidelines.[FN12]The judge departed from the guidelines, without **stating** with particularity her reasons for the departure: (1) the court raised the supervision level from Level III to Level V; and (2) the court imposed a Level V supervision period of incarceration significantly higher than that recommended by the SENTAC guidelines.

> FN12.*See* Delaware SENTAC Handbook, at 104 (2006), Violation of Probation Sentencing Policy.

(13) Under the SENTAC sentencing guidelines, where a judge determines "that the offender is guilty of the violation and probation is to be revoked, it is presumed that the offender may move up only one SENTAC level from his/her current level" and "may have [the] level of supervision raised more than one level if ... aggravating eircumstances exist."[FN13]Here, Martini was serving Level III probation at the time of his VOP hearing. After the judge found that Martini violated his probation, the sentencing guidelines recommend Level IV probation. Yet, the judge gave Martini Level V incarceration without identifying any aggravating factors justifying that two level jump.

> FN13.*Id.* at 104.

(14) Second, under the SENTAC sentencing guidelines, whenever a judge imposes Level V ineareeration, the ineareeration period should be "in accordance with the current SENTAC standard presumptive sentence for the original crime for which the probation is being served."[FN14]Here, Martini's probation related to a fourth-degree rape conviction with a "standard presumptive sentence" of 30 months at Level V supervision. The judge, however, sentenced Martini to 6 years (72 months) at Level V supervision.

> FN14.*Id.* at 104.

*5 (15) Although the SENTAC sentencing guidelines are "voluntary" and "non binding," FN15 this Court's Administrative Directive No. 76 requires that judges "set forth with particularity the

reasons for the deviation" from the guidelines, in order to allow appellate review by this Court.[FN16] Here, the judge clearly departed from the guidelines but failed to state any reasons for her departure. Moreover, the judge exceeded the sentence recommended by the probation officer and failed to account for any time already served. Finally, the judge sentenced Martini moments after she found him in contempt. Because the judge ordered Martini removed from the courtroom, Martini had no opportunity to argue that he did not violate his probation, present evidence regarding his character, or present any other mitigation evidence. We have previously held that a judge "must have an open mind for receiving all information related to the question of mitigation," and that a judge exhibits a "closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant."[FN17] If, a judge determines at a new hearing that Martini did violate his probation, the judge must sentence Martini in accordance with this order.

> FN15.*See Mayes v. State,* 604 A.2d 839, 846 (Del.1992).

> FN16. Supreme Court Administrative Directive No. 76, dated September 15, 1987.

> FN17.*Weston v. State,* 832 A.2d 742, 746 (Del.2003).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **REVERSED** and **REMANDED.**

Del.Supr.,2007.
Martini v. State
Slip Copy, 2007 WL 4463586 (Del.Supr.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

Petitioner, Steven W. Krafchick, hereby certify that I have served a true and correct copy

(ies) of the attached Petitioner's Reply Brief upon the following parties/person:

To:  Office of the Clerk                          To:   Elizabeth R. McFarlan
     United States District Court                       Deputy Attorney General
     844 N. King Street, Lockbox 18                      820 N. French Street
     Wilmington, DE 19801-3570                            Wilmington, DE 19801
                                                          Del. Bar. ID No. 3759

BY PLACING SAME IN SEALED ENVELOPE, and placing same in the United States Mail

located at Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977

On this $3_{rd}$ day of the month of February, 2008

Steven W. Krafchick (Pro-se)
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977