IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

STEVEN W. KRAFCHICK,              §
Petitioner,                       §
                                  §
                                  §
v.                                §        Civil Action No. 07-284-GMS
                                  §
                                  §
ELIZABETH BURRIS, Acting Warden,  §
and JOSEPH R. BIDEN, III, Attorney §
General of the State of Delaware, §
Respondents.                      §

**FILED**

FEB – 6 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Bo scanned

## MOTION FOR EXPANSION OF RECORD

Petitioner, Steven W. Krafchick, brings forth this motion pursuant to Federal Civil

Procedures and Rules governing the filing of a 28 § 2254 petition and Rule 7 (b) governing civil

actions rules in accordance with Habeas Corpus proceedings.

This Court after accepting the petitioner's petition issued a mandated to the Defendants

and the State to supply the records of the lower court proceedings in accordance with Rule 5 (d)

(1)-(3) of the Federal Rules of Civil Procedures.

Wherefore, the Petitioner is sending the relevant document that was not included as part

of the order to forward all records to this Court.

I certify that the documents forwarded have been accepted and recorded in the lower

court proceedings.

Steven W. Krafchick (Pro-se)
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

**SUPERIOR COURT**
OF THE
**STATE OF DELAWARE**

**SHARON D. AGNEW**
PROTHONOTARY, NEW CASTLE COUNTY

NEW CASTLE COUNTY COURT HOUSE
500 N. KING STREET
LOWER LEVEL 1, SUITE 500
WILMINGTON, DE 19801-3746
(302) 255-0800

JUDGEMENT DEPARTMENT
500 N. KING STREET
1ST FLOOR, SUITE 1500
WILMINGTON, DE 19801-3704
(302) 255-0556

TO:     Maria Knoll
        Department of Justice

FROM:   Angela M. Hairston, Criminal Deputy

DATE:   May 13, 2004

RE:     State of Delaware v. Steven W. Krafchick
        Case I.D.# 0101010946
        Cr.A.    PN01-01-2351R1, 2352R1

The enclosed motion for postconviction relief was filed by the defendant in the above captioned case on May 7, 2004. The State is not required to file a response unless ordered, pursuant to Super.Ct.Crim.R 61(c)(4) and 61 (f)(1). Thank you very much.

cc:     file

*01010109 46*

*#58*

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE

      V.

Steven W. Krafchick
Name of Movant on Indictment

Steven W. Krafchick
Correct full name of Movant

Cr.A No. PN01012351 — *R1*
       IN01012352 — *R1*

FILED PROTHONOTARY
2004 MAY -7 PM 4:10

## MOTION FOR POSTCONVICTION RELIEF
### INSTRUCTIONS

(1)   This motion must be legibly handwritten or typewritten, and signed by the movant under penalty of perjury.

(2)   All grounds for relief and supporting facts must be included and all questions must be answered briefly in the proper space on the form.

(3)   Additional pages are not permitted. If more room is needed, use the reverse side of the sheet.

(4)   No citation of authorities is required. If legal arguments are submitted, this should be done in a separate memorandum.

(5)   Only conviction that were included in the same plea agreement or were tried together may be challenged in a single motion.

(6)   When the motion is completed, the original must be mailed to the Prothonotary in the county in which the judgment of conviction was entered. No fee is required.

(7)   The motion will be accepted if it conforms to these instructions. Otherwise, it will be returned with a notation as to the deficiency.

## MOTION

1.   County in which you were convicted <u>Superior Court (New Castle)</u>
2.   Judge who impose sentenced <u>Honorable Judge Charles H. Toliver IV</u>
3.   Date sentenced was imposed <u>February 13, 2002</u>

4.   Offence(s) for which you were sentenced and the length of sentence(s):

Murder 2nd degree to a period of 20 years level 5 and Possession of a deadly weapon during the commission of a felony to a period of 20 years level 5 with probation to follow level 5 incarceration period.

5.   Do you have any sentence(s) to serve other than the sentence(s) imposed because of the judgment(s) under attack in this motion? YES___ NO _X_.
     If your answer is "yes" give the following information:
     Name and location of court(s) which imposed the other sentence(s).

                                   N/A
     _____
     _____

     Date sentence(s) imposed:          N/A
     Length of sentence(s):             N/A

6.   What was the basis for the judgment/s of conviction? (check one)
           (X)    Plea of guilty
           ( )    Plea of guilty without admission of guilt (Robinson Plea)
           ( )    Plea of nolo contendere
           ( )    Verdict of jury
           ( )    Finding of judge (nonjury trial)

7.   Judge who accepted plea or presided at trial Honorable Charles H. Toliver IV

8.   Did you take the witness stand and testify? (check one)
           No trial ( ) Yes( )  No(X)

9.   Did you appeal from judgment of conviction? YES _X_ NO___.
     If your answer is "yes" give the following information:
           Case number of appeal          135, 2002
           Date of court's final order of opinion      May 8, 2003

10.  Other than a direct appeal from judgment(s) of conviction, have you filed any other motion/s or petition/s seeking relief from judgment/s in state or federal court?      Yes(X)      No( )      How many? (1)
     If your answer is "yes", give the following information as to each:
           Nature of proceeding/s Motion for Reduction/Modification of Sentence
           Grounds raised: Sentencing without a pre-sentence investigation and abuse of courts discretion on the criminal history with extraordinary circumstances.

|                                              |                    |
| -------------------------------------------- | ------------------ |
| Was there an evidentiary hearing?            | NO                 |
| Case number of proceeding/s                  | I.D. #PN01012351   |
|                                              | I.D. #IN01012352   |
| Date/s of court's final order/s or opinion/s | May 21, 2002       |
| Did you appeal the result/s?                 | NO                 |

11.    Give the name of each attorney who represented you at the following stages of the proceedings relating to the judgement/s under attack in this motion:

At plea of guilty or trial    Attorney's Edward C . Pankowski, Esq.

On appeal    Attorney's Edward C. Pankowski & Kathryn Lunger, Esq.

In any postconviction proceeding    (Pro-se)

12.    State every ground on which you claim that your rights were violated. If you fail to set forth all grounds in this motion, you may be barred from raising additional grounds at a later date. You must state facts in support of the ground/s which you claim. For your information, the following is a list of frequently raised grounds for relief (you may also raise grounds that are not listed here): Double jeopardy, illegal detention, arrest, or search and seizure, coerced confession or guilty plea; uniformed waiver of the right to counsel, to remain silent, or to speedy trial, denial of the right to confront witnesses, to subpoena witnesses, to testify, to ineffective assistance of counsel, suppression of favorable evidence, or unfulfilled plea agreement.

Ground One: Guilty plea was entered into under duress and coerced therefore was not a free cognitive act and is not knowingly and voluntarily made.
Supporting Facts: (state facts briefly, without citing cases)
The Ineffectiveness of counsel made it impossible for the defendant to have time for reflection and to understand the consequence of the initial plea offer.
Ground Two: Counsel's failure to investigate and develop mitigating evidence, which would of, supported the defense of extreme emotional distress.
Supporting Facts: (state facts briefly, without citing case)
Counsel fail to properly develop and pursue a plausible defense, that denied the defendant, a defense that is prejudicial and a violation to the rules of this court.
Ground Three: Denied: Ineffective assistance of counsel during pre-trial, trial & sentencing proceedings.
Supporting Facts: (state facts briefly, without citing cases)
Counsel's committed multiple acts and omissions which taking as a whole amounted to Ineffective assistance and denied the defendant his Sixth Amendment Right to the Effective assistance of counsel guaranteed under the United States Constitution.
If any grounds listed were not previously raised, state briefly what grounds were not raised, and give your reason/s for not doing so: Acceptance of plea, Ineffective assistance of counsel, and counsel's multiple acts and omissions.
Reason: First time for filing rule #61.
Wherefore, movant asks this court to grant him all relief to which he may be entitled in this proceeding.
I declare the truth of the above under penalty of perjury.
Date/May 4, 2004

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

Steven W. Krafchick,                    :
                                        :
             Movant,                    :
                                        : Case No.: No. PN 01012351
VS.                                     :                IN 01012352
                                        :
STATE OF DELAWARE,                      :
                                        :
             Respondent.                :
                                        :
                                        :
                                        :

MEMORANDUM OF LAW IN SUPPORT OF
RULE 61 MOTION FOR POST-CONVICTION RELIEF

The defendant, Steven W. Krafchick, Pro-se, moves this Honorable court pursuant to Superior Court Criminal Rule 61, to vacate his conviction on the charge of Murder 2nd degree, and Possession of a Deadly Weapon During the Commission of a Felony, based on the errors of law and constitutional violations as stated in the attached motion for post-conviction relief. This is the defendant's memorandum of law in support of his request for relief.

TABLE OF CONTENTS                                              Page

Table of Contents                                              (i)

Table of Case Law                                         (ii),(iii)

Table of Authorities                                           (iv)

Case History & Procedural Issues                             1,2,3

Ground One     Defendant argues that he was denied his right          4-13
               to effective assistance of counsel guaranteed by
               the Sixth Amendment of the United States Constitution
               during the critical stages of his plea negotiation.
               This questions the validity of his plea as to whether
               it was knowingly and voluntarily made.

Ground Two     Defendant argues that he was denied his right to effective    14-28
               assistance of counsel guaranteed by the Sixth Amendment
               and Due process guaranteed by the Fourteenth Amendment
               of the United States Constitution, due to counsel's failure
               to investigate and develop mitigating evidence that
               would have supported defendant's case during trial and his sentencing.

Ground Three   The defendant now brings forth this third ground for relief    29-44
               in this motion under Rule #61. This ground has many issues
               that stem ineffective assistance of counsel, to prosecutorial
               misconduct, and unbalanced sentencing due to the accused lack
               of criminal history, past criminal activity, and no prior felony
               convictions, and also the closed mind of judge during but not
               apart from the sentencing proceedings in this case. The defendant
               offers the following in support of his claim.

Conclusion                                                   45-47

| TABLE OF CASE LAW | Page |
|---|---|

Albury v. State, Del.Supr., 551 A.2d 53, 58 (1988)    4,11,13,14

Allen v. State, Del.Supr., A.2d 87, 88 (1986)    3

Bloom V. Calderon, 132 F.2d 1267 (9th Cir.1997)    37

Brown V. Myers, 137 F.3d 1154 (9th Cir. 1998)    17

Brown v. State, Del.Supr., 250 A.2d 503 (1969)    4,8

Butler V. Summer, 783 F.Supp. 519 (D.Nev.1991)    39

Chatom v. White, 858 F.2d 1479 (11th Cir. 1979)    5

Commonwealth V. McCusker, 488 Pa. 382,292 A.2d 286,290 (1972)    23

Conn- State V. Elliot, 411 A.2d 3,177 Conn.1    20,21

Cook V. Lynaugh, 821 F.2d. 1072 (5th Cir.1987)    10

Coss V. Lackawanna County District Attorney, 204 F.3d 453    17
(3rd Cir.2000)

Castellanos V. United States, 26 F.3d 717 (7th Cir.1994)    40

Delucca V. Lord, 77 F.3d 578 (2d Cir.1996)    19,20,34

Fullman v. State, Del.Supr., No 268, 1988, Christie,    4
C.J. (Feb. 22, 1989)(Order)

Harris v. State, Del.Supr., 292 A.2d 291, 292 (1972)    48

Harris V. Towers, 405 F.Supp 497 (D.Del. 1974)    10,28

Hill v. Lockart, 474 U.S. 52, 58, 106 S.Ct. 366,    4,11,13,14
370, 80 L.Ed 2d 203 (1985)

Hughes V. State, Del. Supr., 437 A.2d 599,573 (1981)    10

MacDonald V. State, Del.,.Supr. 2001    8,11

Marian F. Kalejta V. State, Del. Supr., 282 A.2d 622 (1971)    23

McCarthy v. United States, 394 U.S. 459 (1969)    4

Miller V. Wainwright, 798 F.2d 426 (11th Cir. 1986)    35

Moore v. State, Del. Supr., 456 A.2d 1223 (1983)    20,21,40

N.Y.- People V. Lyttle, 408 N.Y.S. 2d 578,95 misc.2d 879.    20

TABLE OF CASE LAW                                                    Page

N.Y.-People V. Patterson, 347 N.E. 2d 898,39 N.Y.S. 2d 573            21

Or- State V. Ott, 686. P.2d 1001,297 Or.375                         20,21

Osburn V. State, 224 A.2d 52 (Del.Supr.1966)                         39

Patterson V. State, Del. Supr., 684 A.2d 1234 (1996)                  3

People V. Berry, 18 Cal. 3d 509, P.2d 777,134 Cal Rptr.415 (1976)    22

People V. Borchers, 50 Cal .2d 321,325 P.2d 97 (1958)                22

People V. Wallace, 187 A.D.2d 998, 591 N.Y.S. 2d 129 (1992)         16,19

Riley V. State, Del. Supr., 585 A.2d 719,726 (1990)                 4,11

Rummell v. Estell, 590 F.2d 103, 104 (5th Cir. 1979)            26

Seehan V. Iowa, 37 F.3d 389 (8th Cir. 1994)                     35

Smith v. State, Del.Supr., 451 A2d. 837 (1982)                      3,39

State v. Insley, Del.Supr., 141 A.2d 619, 622 (1958)                  3

Strickland v. Washington 104 S.Ct. 2052                 4,11,13,14,26,28
          (Id. At 2060)                                          30,47,48

Tollet V. Henderson, 411 U.S. 258,266-67 (1973)                       8

U.S. ExRel. Foster V. Gilmore, 35 F.Supp.2d 626 (N.D. 111.1998)      37

U.S. V. Gordon 156 F.3d 376,380 (2d Cir. 1998)                       8,11

U.S. V. Gray, 878 F.2d 702 (3rd Cir.1989)                      17,30

United States V. Phillips, 210 F.3d 345 (5th Cir.2001)          40

United States V. Rumery, 698 F.2d 764 (5th Cir.1983.)            8

Well v. State, Del.Supr., 396 A.2d 161, 162-63 (1978)                 4

Williams V. Taylor, 529 U.S.___, 146 LEd.2d 389,                     39
          120 S.Ct.___ (2000).

W.LAFAVE & A. SCOTT, supra note 20, at 573)                          24

-iii-

Table of Authorities                                        Page


Superior Court Criminal Rule #11                            4,10
     (C) (d) (e)
Superior Court Criminal Rule #32                            2,3,8,39
     (d)
Superior Court Criminal Rule #61              2,3,8,10,13,28,48
     (i)(1), (i)(3)(a)(b), (i)(5),(h)


State of Delaware Constitution                       13,17,28,47


Sixth Amendment of the United States Constitution       4,12,13,14,17
                                                        26,28,29,45,47


Fourteenth Amendment of the United States Constitution
                                      13,14,17,28,29,30,31,45,47


Rules of Professional Conduct                        5,12,15,17,33
Rule 1.1, Rule 1.2, Rule 1.3, Rule 1.4, and Rule 2.1 (a), (b)


American Bar Association                                       6


Title 11 § 575. (a) (b)                                      23

Title 11 § 641.                                       15,19,21,40


Title 11 § 641. Amendment  (July 9,2001)                     23


Title 11 § 636.                                           31,32

Title 11 § 632.                                           41,42

Title 11 § 4204 (n)                                         -40


Corpus Juris Secundum  CJS Homicide § 78                  20,21


UCLA Law Review August 1986                          22,23,24,25
* Provoke Reason in Men and Women: Heat of Passion

## CASE HISTORY & PROCEDURAL ISSUES

The record in the defendant's case shows that he was arrested on 1/16/2001 and subsequently scheduled arraignment on 2/26/2001.

A bill of indictment was filed No.143 and scheduled arraignment held on 2/26/2001, and on 2/28/2001 counsel for the defendant made a Notice of Service for the Discovery Report.

Arraignment proceedings took place in front of the Honorable Judge Michael P. Reynolds on 3/13/2001.

On 5/8/2001 a hearing for scheduling was held in front of the Honorable Judge Charles H. Toliver setting the start of Jury selection, which was to begin on 2/5/2002.

Defendant's case shows he was initially indicted on 10 charges.

On 2/5/2002 went to trial (jury), and on 2/13/2002 defendant entered a guilty plea to two of the ten charges, which were: Murder 2nd & Possession of a Deadly Weapon During the Commission of a Felony.

Following the defendant's plea on 2/13/2002, the defendant was sentenced to a total period of 40 years of level 5 and 6 months of probation to follow.

Thereafter, counsel for the defendant filed a timely motion for reduction of sentence on 5/2/2002, which the court denied on 5/21/2002.

Defendant, (pro-se), filed Notice of Appeal on 3/15/2002 to the Delaware Supreme Court. Following the defendant's (pro-se) Notice of Appeal, on May 3, 2002 the Assistant Clerk to the Supreme Court sent a letter to Edward C. Pankowski, directing him to recognize his continuing obligation to represent Steven W. Krafchick, after accepting the defendant's Motion for Appeal. No.# 135,2002

The Supreme Court on 5/8/2003 "affirmed" the conviction on arguments made only by counsel for the defendant.

Wherefore, now comes the defendant (pro-se) pursuant to remedies of this State in a motion for post-conviction relief under Superior Court Rule 61 of the State of Delaware.

Superior Court Criminal Rule 61, it had been procedurally established that if a motion for withdrawal of plea is filed anytime after the imposition of sentence, a plea may be set aside only by a motion pursuant to Rule 61.

The standard under Rule 61 by which to judge a defendant's request to withdraw a guilty plea is whether the defendant has shown a "fair and just reason" Rule32 (d), or a "miscarriage of justice because of a constitutional violation." Rule 61(i)(5)

The procedural requirement of Rule 61(i)(1) demands that a Rule 61 motion must be filed within three years from the final judgment.

## GROUND ONE

Defendant argues that he was denied his right to effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution during the critical stages of his plea negotiation. This questions the validity of his plea as to whether it was knowingly and voluntarily made.

In order to prevail on a motion for withdrawal of a guilty plea, alleging ineffective assistance of counsel, defendant must establishing that (1) his counsel's representation fell below an objective standard of reasonableness, (2) and that there is a reasonable probability that, but for counsel's error, he would not have plead guilty. Hill v. Lockart, 474 U.S. 52, 58, 106 S.Ct. 356, 370, 80 L.Ed 2d 203 (1985); Albury v. State, Del.Supr., 551 A.2d 53, 58 (1988); citing Strickland v. Washington, 466 U.S. 668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Riley v. State Del. Supr., 585 A.2d 719, 726 (1990).

A defendant is bound by his signed statement on the guilty plea form absent clear and convincing evidence to the contrary. Fullman v. State, Del.Supr., No. 268, 1988, Christie, C.J. (Feb. 22, 1989)(Order). However, Superior Court Criminal Rule 11 sets out the procedures that must be followed before accepting a plea of guilty. See the present day Supr.Ct.Crim.R.11(c)(d)(e). Under Rule 11(d) the court has an affirmative duty to ascertain whether a plea of guilty has been entered knowingly and voluntarily. See Brown v. State, Del.Sup., 250 A.2d 503 (1969); Well V. State, Del.Supr., 398 A.2d 161, 162-63 (1978); See also McCarthy v. United States, 394 U.S. 459(1969).

Where the United States Supreme Court has made it quite clear that

a constitutional right does exist to assuring that a guilty plea is made knowingly and voluntarily.

Since defendant has a right to effective assistance of counsel at every stage of the proceeding, to the extent that defendant recognizes the duty vested in the court to comply with the provisions of Rule 11(d), defendant contends the thrust of his claim is based primarily on errors within the context of ineffective assistance of counsel. See and compare Chatom v. White, 858 F.2d 1479 (11th Cir. 1988), thus questions the validity of the acceptance of his plea offer to whether it was knowingly and voluntarily made.

Counsel personally negotiated the plea bargain agreement offered by the State with defendant; counsel communicated to defendant and advised him to accept the State's plea offer. Defendant asserts that his counsel violated the Rules of Professional Conduct by not providing effective assistance due to the following actions on his part. An attorney has an obligation to fully communicate to his or her client the terms and conditions of proffered plea bargains in criminal cases. See Prof. Cond. R. 1.2; see also Prof. Cond. R. 1.4 In this setting, attorneys are frequently called upon to advise the client in determining how best to proceed. See Prof. Cond. R. 1.2; see also Prof. Cond. R. 2.1. An attorney's role in this area of representation is critical and fulfilling that role requires the attorney to act with diligence.

See Prof. Cond. R. 1.3.

**6 [5][6][7]   The   American   Bar   Association   has   set   forth
standards that highlight the responsibilities of defense counsel in
connection with plea discussions and agreements.

Standard 14-3.2 of the ABA Standards for Criminal Justice
provides that:

(a) Defense counsel should keep the defendant advised of
developments arising out of plea discussions conducted with the
prosecuting attorney, and' should promptly communicate and explain to
the defendant all plea offers made by the prosecuting attorney.

(b) To aid the defendant in reaching a decision, defense counsel,
*after appropriate investigation*, should advise the defendant of the
alternatives available and address considerations deemed important by
defense counsel or the defendant in reaching a decision. *Defense
counsel should not recommend to a defendant acceptance of a plea
unless appropriate investigation and study of the case has been
completed.*

ABA, STANDARDS FOR CRIMINAL JUSTICE, PLEAS OF GUILTY, Standard
14-3.2 (3d ed.1999) (emphasis supplied). *As the Standard makes clear*,
the role of "defense counsel in the negotiation of guilty pleas" is
critical. While the decision to accept a plea offer is personal to·
the defendant, that decision must be an informed one, to be made only
after full consideration with counsel. Defense counsel is expected to
be an advocate for his client in any adversary proceeding, but must
function as a counselor as well.

In the area of plea negotiations, the advice of counsel is vital and that duty can be effectively discharged only after defense counsel has investigated the basis for any plea offer.

Counsel did not investigate the basis for the plea, nor did he keep the defendant reasonably informed. Between, 10:00am and 11:00am, the defendant had less then one hour with his counsel, page 3 at 15,16, (EXHIBIT SENTENCING-1), and at the meeting questions were asked by the defendant in which no answers were given by his defense counsel which made any options of going through with a trial or any other options that would have been a benefit to the defendant. Counsel advised the defendant that this plea was a "take it or leave it," offer defendant felt as though he had no choice at this point. Mr. Pankowski, offered the following options to the defendant with (emphasis added) to the lower part or the (minimum/ maximum) as the "Mandatory Sentence" (See exhibit-A1). "Co-counsel" Kathryn Lunger, as to explain to the defendant the terms of the plea, wrote this out.

1). Lose: Murder 1st + Weapon /    (Mandatory) Life without parole

2). Win: Manslaughter + Weapon / 2years (Mandatory)

3). Plea: Murder 2nd + Weapon / 10years (Mandatory) + 2years (Mandatory)

The way counsel explained the options confused the defendant and coupled with duress made any chance of an intelligent, knowingly, and voluntarily decision from the defendant questionable.    Defendant

believed he would not receive any more that 12 years Level 5 incarceration time.

Defense counsel also used two deceitful statements to the defendant to induce said plea, one in that if the defendant singed the plea he would make sure of a Pre-sentencing Investigation or (P.S.I.) was done to in counsel's words "bring in mitigating evidence that wasn't offered and that wasn't presented to the court to reduce the sentence". Two that he would make a motion for commutation of sentence; and he insured this was possible because counsel's girlfriend was the governor's personal driver. Counsel went as far as to write a name on his own personal business card stating this was indeed his girlfriend. (See exhibit-A2) 2001 WL849750 MacDonald V. State, Del., Supr. 2001 (unpublished opinion)

Defendant contends that counsel did not seek plea negotiations in this case and no effort was made to negotiate a more favorable plea with the State. Also, only after the defendant was sentenced to 40 years of level 5, did he realized that his counsel's advice was neither *clear nor professional* with the respect of *sound strategy* or was it offered to be a *benefit* to the defendant. Tollet V. Henderson, 411 U.S. 258; 266-67 (1973), U.S. V. Gordon 156 F.3d 376, 380 (2d Cir.1998), United States V. Rumery, 698 F.2d 764 (5th Cir.1983.). Defendant asserts the following for the setting aside his guilty plea as a "*fair and just reason*" and/or "*miscarriage of justice because of a constitutional violation*" In Brown V. State, 250 A.2d at 505.

The Supreme Court emphasized the need through "direct interrogation of the defendant", to establish a record of the factual basis for the plea of guilty, including an understanding of the consequences of his plea and that "he has discussed with his attorney fully the entry of his plea of guilty" (emphasis added). In this case on page 6 at 10,11, (EXHIBIT SENTENCING-2), of the sentencing transcripts the court was asking the defendant if he provided the information on the plea form, the defendant answers {yes}, however this form was pre-filled prior to the defendants signature. On page 8 at 6-15, (EXHIBIT SENTENCING-2) on sentencing transcripts, counsel was in fact instructing the defendant from the podium as to {yes or no} answers. When the court asked the defendant if in fact his was under any drugs or alcohol within the last 48 hours, defendant's answer should have been {yes}. Defendant had been taking (Synaquam) or known as (Doxepin) which is an antidepressant medication 250mg twice a day for depression.

When asked by the court if at any time if he had been under the care of a psychologist or psychiatrist, again the answer should have been {yes} because he had been under the care of (Dr. Coe) a Department of Corrections psychiatrist for Major Depression, which his counsel was aware of at that time. When the court asked the defendant if "in fact he understood the consequences of what he was doing?" The defendant under direction of counsel answered {yes}, but it should of {no}.

Counsel was in fact coaching the defendant's answers for him, so it cannot be said that the defendant's answers were made to be

knowingly, intelligently, and voluntarily made which violates Supr, Ct. Rule 11(d). Counsel should verify the same through his response to this filing or by virtue of his given testimony at a subsequently scheduled evidentiary hearing pursuant 61(h).

Counsel also did not inform the defendant that this plea would result in an enhanced penalty and/or a minimum mandatory penalty, which is indicated by the "Immediate Sentencing Form" which was never reviewed by the defendant. Cook V. Lynaugh, 821 F.2d. 1072 (5th Cir.1987)

Another discrepancy is on the "Plea Agreement" itself, where it states (Sentencing Recommendation/Agreement), as indicated the defendant in fact checked the {P.S.I} box, and counsel had a check mark in that box during the signing of this form, however it was scratched out sometime after he had signed it and it was ratified by the court. It wasn't in till after sentencing a copy of this form was sent to the defendant, two weeks from the sentencing date. (See Exhibits - A3 Truth In Sentencing Form - A4 Plea Agreement - A5 Immediate Sentencing Form.)

The cumulative impact of these deficiencies constitutes reversible error. Hughes v. State, Del. Supr. 437 A.2d 559, 573 (1981). Harris V. Towers, 405 F.Supp 497 (D.Del. 1974)

Where it is fair to say that counsel for the defendant neither acted in the best interest of his client or that his client received

any direct benefit from the "take it or leave it" plea offer.  2001 WL 849750, MacDonald V. State, (Del. Supr.2001)

The oft-stated test for evaluating the effectiveness of counsel requires the Court to engage in a two-pronged analysis: (i) whether "counsel's representation fell below an objective standard of reasonableness" (ii) whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Riley v. State, Del.Supr.,  585  A.2d  719,  726  (1990).    The  burden  of  proving ineffective assistance of counsel is on the party asserting it.  Where the claim arises in the context of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.26 203 (1985); U.S. V. Gordon, 156 F.36 376, 380 (2d Cir. 1998) see also Albury v. State, Del.Supr., 551 A.2d 53, 58 (1988).

In applying the reasonableness or competence prong, "the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case."

The defendant felt pressured to take a plea with no other options available to him, and when time had expired as to making an intelligent decision as to whether he had any other rights, his counsel told him "accept the plea and see it as a new beginning."

Rules of Professional Conduct reads in pertinent part:

Rule 1.1

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

Rule 1.4

a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Thus the defendant had a misinterpretation of the facts and misunderstanding of the law relevant to the plea offer by the State.

Hence violated defendant's Sixth Amendment right to effective assistance of counsel. Due to counsel's actions, defendant was deprived of the opportunity to be completely and fully apprised of his legal rights including the nature of the plea offer.

In light of the circumstances surrounding what occurred in defendant's case prior to the entry of his actual plea agreement, notwithstanding the fact that he signed the plea agreement form, which was ratified by the court.

Defendant maintains that he has sufficiently demonstrated that due to the deficient performance of his counsel, it was presumptively impossible for the decision to accept the plea offer to have been knowingly and voluntarily made by him, which is the central concern of his claim.

Therefore, defendant states that he has effectively established sufficient showing of actual and substantial prejudice resulting from counsel's acts which questions the validity of the acceptance, of the plea offer, as to whether it was knowingly and voluntarily made. Defendant further maintains that counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's error, he would not have plead guilty. See Hill, supra; Albury, supra; and Strickland, supra. The above mentioned satisfies the procedural requirement of 61(i)(3)(a)(b). Establishing ineffective assistance of counsel satisfies the "cause" requirement of 61(i)(3)(a) prejudicing petitioner and violating his Article I section 7 Del. Constitutional right of Due Process well as the Sixth and Fourteenth Amendments of the U.S. Constitution and satisfying the prejudice requirement of 61(i)(3)(b). Based upon the same, the petitioner's plea should be vacated and the petitioner should be given the fair opportunity to demonstrate whether to intelligently and knowingly waive his right to trial or to proceed therein.

## GROUND TWO

Defendant argues that he was denied his right to effective assistance of counsel guaranteed by the Sixth Amendment and Due process guaranteed by the Fourteenth Amendment of the United States Constitution, due to counsel's failure to investigate and develop mitigating evidence that would have supported defendant's case during trial and his sentencing.

As mentioned in Ground One, of defendant memorandum, specifically the discussion on page (11), defendant essentially acknowledges that in order to prevail on a motion for withdrawal of a guilty plea alleging ineffective assistance of counsel.

Defendant must establish that his counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's error he would not have plead guilty. Hill v. Lockhart, 474 U.S. 52, 58 108 S.Ct. 366, 370 88 L.Ed 2d 203 (1985); Albury v. State, Del.Supr. 551 A.2d 53, 58 (1988) Citing Strickland v. Washington, 1104 S.Ct.2052.

Defendant now advances a second claim of counsel's ineffectiveness based on counsel's inadequate performance due to his failure to investigate and develop mitigating evidence that would have supported his case during trial and sentencing proceedings. Accordingly, defendant states that this claim must be evaluated by the standard set forth in *Strickland, supra*, especially where, as in the case in hand, there is a reasonable probability, which is a probability sufficient to undermine confidence in the outcome in defendant's trial and sentencing, that, but for counsel's unprofessional error, the results of the defendant's trial and sentencing would have been different.

As mentioned in ground one, defense counsel must in the Rules of Professional Conduct; (Rule 1.1) "A lawyer shall provide competent representation to a client.    *Competent representation* requires the *legal knowledge*, skill, *thoroughness and preparation* reasonably necessary for the representation."

Counsel's "representation fell below an objective standard of reasonableness" in asserting the defendants's defense which in this case was: (Title 11 § 641. Extreme emotional distress), there are certain elements of the defense that must be proved by the preponderance of the evidence.

## Title 11 § 641. States:

"The fact that the accused intentionally caused the death of another person under the influence of extreme emotional distress is a mitigating circumstance, reducing the crime of murder in the first degree as defined by § 636 of this title to the crime of manslaughter as defined by § 632 of this title. The fact that the accused acted under the influence of extreme emotional distress must be proved by a preponderance of the evidence. The accused must further prove by a preponderance of the evidence that there is a reasonable explanation or excuse for the existence of the extreme emotional distress.

The reasonableness of the explanation or excuse shall be determined from the viewpoint of a reasonable person in the accused's situation under the circumstances as the accused believed them to be". (11 Del.C. 1953, § 641; 58 Del. Laws, c 497§ 1; 70 Del. Laws, c 186§1.

There has to be a reasonable explanation or excuse for the existence of the extreme emotional distress, which is the basis for

-13

the defendant's cause.   Counsel for the defendant has to present a basis for the reason or explanation of the mitigating fact and why they exist.

Mr. Pankowski, when on cross-examination of Renee Krafchick, the defendant's and victim's daughter, counsel did not present evidence in which he knew was relevant to the defendants defense in whole and was, therefore, prejudicial to the defendant for counsel not to explore. People V. Wallace, 187 A.D 2d. 998 591 N.Y.S. 2d 129 (1992) (failure to make use of discovery or hearing testimony on cross-examination) Here the defendant asserts that his lawyer's decision was prejudicial to his defense of the existence of "extreme emotional distress". On January 16, 2001, an interview of Renee Krafchick was conducted by: Detective Gary J. Cicchini of the Delaware State Police Homicide Unit, and a copy of this document was Transcribed by: Linda Jarell, of the Delaware State Police Homicide Unit and subsequently given to Mr. Pankowski as part of discovery. (See Exhibit - B1 Homicide Investigation)

In Homicide Investigation Interview on page#11 at the eight sentences Renee Krafchick had called the victim and defendant's apartment on/or about 11:30p.m. To talk with the victim, and at the fourteenth sentence, (Renee) is explaining to the detective what had happened the night before with her parents and Chuck Thompson at the Hollywood Motel that Sunday night before the incident on January 15th. Chuck Thompson had told Renee briefly what was going on, and the following is the answer from that interview, answer from Renee Krafchick:

"With my mom being over there and then my dad came over there and Paul told my mom to leave or if not Chuck had to go, and so did my mom or he was going to call the cops."

Question by: Detective Cicchini, who was Paul?    Not on the interview the "Paul" that Renee Krafchick is indicating is the owner of the Hollywood Motel, {Paul Patel}.

This witness was to be called as per request of the defendant to validate his explanation or excuse of the defendant's mitigating defense of "extreme emotional distress", the fact that the night in question is one day before the killing is highly relevant to establishing the defendant's defense.    The fact that defendant's counsel refused to call this witness is a violation to the defendant's Constitutional Rights under Six and Fourteenth Amendments of the United States Constitution denying the defendant his right to due process and equal protections of the law, also violating the defendants State Constitutional Right under Article #1 Section (7) of the State of Delaware's Constitution. Coss V. Lackawanna County District Attorney, 204 F.3d 453 (3rd Cir.2000), U.S. V. Gray, 878 F.2d 702 (3rd Cir.1989).    A violation of Rules of Professional Conduct, (Rule 1.3 Diligence) where in this case counsel did not act with diligence on the behalf of his clients interest, where counsel did not call a vital witness for the defense, where counsel did not present favorable evidence on the behalf of the defendants cause of defense. Brown V. Myers, 137 F.3d 1154 (9th Cir. 1998) Had this witness been called he would have been able to testify to the following facts: "Sunday night Jan 14,2001 the defendant showed up at the Hollywood

Motel looking for his wife, after an unsuccessful attempt to find her, the witness/ owner {Paul Patel} intervened for the defendant telling the defendant to wait by his car. Mr. Patel went to room #107 and knocked on the door, a voice from inside the room echoed out stating "She's not in here", Mr. Patel then told the occupants of the room that indeed he knew that the defendant's wife was in the room, and that if they did not open the door he would in fact call the police.

After a brief moment the occupant's of the room appeared. Mr. Thompson was wearing only a pair of pants and the defendant's wife had her coat zipped all the way up which was not normal. Mr. Patel stated: he knew what was going on but he did not want to know any more, he then told Mr. Thompson to return to his room and close the door, he then told the defendant and the defendant's wife that they were no longer welcome on his property and if they returned either one of them he would press charges on them." Which mirrors the statement the defendant had provided to his counsel on 3/29/04. (See exhibit - B2 Statement of Facts)

Where the defendant has been prejudiced by his own counsel for failing to bring forth highly relevant evidence, on page 73 at 14, (EXHIBIT TRIAL-13) Mr. Pankowski: Did he know about Chuck? At page 73 at 15, (EXHIBIT TRIAL-13), Renee Krafchick: (yes) however on page 9 of the homicide investigation report interview, third sentence question: Detective Cicchini "She hung up with him. Was she on the phone with Chuck?" Answer: (Renee): "Yeah. When we walked in, yeah. Then she said uh, she said she really didn't uh-she really didn't want a relationship yet, that she was trying to take it slow with Chuck

because of the situation with my father. She said she had not told my father yet about Chuck, but she was planning on soon telling him. Then we were just talking about how she just didn't want to be with him anymore and that she wanted to get her life together."

This was on Saturday night January 13, 2001 so as of Saturday night Mr. Krafchick, the defendant did not know about Chuck Thompson, and counsel for the defense did know about Chuck Thompson and counsel did not bring this out on direct or redirect which deprived the defendant a chance to give his explanation or excuse for the existence of the extreme emotional distress. People V. Wallace, 187 A.D.2d 998, 591 N.Y.S. 2d 129 (1992). Delucca V. Lord, 77 F.3d 578 (2d Cir.1996)

Subsequently, later on the evening on Jan 14, 2001, Dawn Krafchick told the defendant about the relationship with her and Mr. Thompson, telling the defendant about her infidelity in their marriage and the fact that it had been going on for some time. (See exhibit − B2 Statement of Facts.) The defendant became *extremely depressed* and *very emotional*(See exhibit C-6). It was devastating to the defendant to suddenly find out that his wife of 17 years had in fact been unfaithful to him, and was having sexual relations with Mr. Thompson. The taunting meanings behind this confession were such to arouse and provoke emotions and feelings of the defendant. Therefore, the defendant could make no clam reflections in this situation.

The burden of persuasion is upon the party asserting the defense of "*extreme emotional distress*", so in order to make a showing of "*adequate provocation*" which is an element of extreme emotional distress, 11 Del. C. § 641 (*Substitute for common-law defense.*) ---The

term "*extreme emotional distress*", established as a mitigating circumstance by this section, is a substitute for the prior common law defense of "*provocation*". Moore V. State, Del. Supr., 456 A.2d 1223 (1983).

To reduce the crime from 1st degree murder to that of manslaughter, counsel for the defendant must show all relevant material of passionate emotions to be able to overcome the burden of adequate proof. Del'ucca V. Lord, 77 F.3d 578 (2d Cir.1996)

## Corpus Juris Secundum CJS HOMICIDE § 78

Extreme emotional disturbance is the emotional state of an individual who has no mental disease or defect that rises to the level established by statute to show a lack of criminal responsibility, is exposed to an extremely unusual and overwhelming stress, and has an extreme emotional reaction to it, as a result of which there is a loss of self-control and reason is overborne by intense feelings. (Or—State V. Ott, 686 P.2d 1001,297 Or.375) In this connection, self-control and reason are overborne by intense feelings such as *passion, anger, distress, grievance, excessive agitation, or other similar emotions.* (Conn— State V. Elliott, 411 A.2d 3, 177 Conn.1)

Since an extreme emotional disturbance need not be instantaneous with the act of killing, (N.Y.-People V. Lyttle, 408 N.Y.S.2d 578,95 Misc.2d 879.) a person who is put into a passion by brooding over an affront may be eligible for the mitigation of manslaughter, (N.Y.-People V. Lyttle, 408 N.Y.S.2d 578,95 Misc.2d 879.) as may a person whose mind has been affected for a substantial period of time by a

significant mental trauma, simmering in the unknown subconscious until it inexplicably comes to the fore. (N.Y. People V. Patterson, 347 N.E.2d 898,39 N.Y.S.2d 573).

In considering the reasonableness of an explanation for a killing it is necessary to determine what defendant's situation was and the circumstances that defendant reasonably believed existed and then to determine whether an ordinary person in that situation and those circumstances would have' experienced extreme emotional disturbance. (Conn- State V. Elliott, 411 A.2d 3, 177 Conn.1), (Or-State V. Ott, 686 P.2d 1001,297 Or.375.)

So it would seem that the external factor's including "provocation", within context of the meaning would be a reasonable explanation of the triggering event that brought about the extreme emotional distress.

DE.State Title 11 § 641

11 Del.C. § 641

"Implicit within concept of reasonable explanation the idea that the event which triggers the emotional disturbance must be something external from the accused and cannot have been brought about by the accused's own mental disturbance". (Moore V. State, Del. Supr., 456. A.2d 1223 (1983).

UCLA Law Review
August 1986
Comment
*1679 PROVOKED REASON IN MEN AND WOMEN: HEAT-OF-PASSION
MANSLAUGHTER AND IMPERFECT SELF-DEFENSE
Copyright 1986 by the Regents of the University of California; Laurie J. Taylor

In People V. Borchers, 50 Cal.2d 321,325 P.2d 97 (1958) the California Supreme Court in 1958 upheld the voluntary manslaughter conviction of a defendant who "was roused to a heat of 'passion' by a series of events over a considerable period of time..........and killing in wild desperation induced by the victim's long continued provocatory conduct. Id. At 328-29,325 P.2d at 102.    Borchers killed a much younger woman with whom he was sexually involved following her confession of infidelity and other verbal "Provocation". Id.328-29, 325 P.2d at 102.

In 1976, the California Supreme Court Followed Borchers in People V. Berry, 18 Cal.3d 509,P.2d 777, 134 Cal.Rptr.415 (1976). Ruling that the lower court erred by failing to give an instruction for heat-of-passion voluntary manslaughter when the defendant strangled his wife after waiting in their apartment for twenty hours. Despite this long "cooling period", the court found that the defendant killed in the heat of passion, a passion brought on by two weeks of enough provocatory conduct "to arouse a passion of jealousy, pain, and sexual rage in an ordinary man of average disposition." Id. At 515, 556 P.2d at 780-81,134 Cal.Rptr. at 418-19.   The defendant's wife had taunted him about her infidelity; he had chocked her twice before, once into unconsciousness.

The victim's only act of provocation immediately before the defendant killed her was screaming when she found him waiting for her in their apartment. This occurred after she had sworn out a warrant for his arrest for the last choking episode. Id. at 514, 556 P.2d at 779-80, 134 Cal.Rptr. at 417-18. In a 1972 case in which the defendant killed his wife following her threat to leave him, the Pennsylvania Supreme Court held that the "cumulative impact of series of related events" Commonwealth V. McCusker, 488 Pa. 382, 292 A.2d 286, 290 (1972). Should be considered in determining *1719 sufficiency of provocation.   In the case of, Marian F. KALEJTA V. State of Delaware, 282 A.2d 622. (1971) The Supreme Court held that there was adequate "*provocation*" when a wife found and killed her husband in the act of adultery, and acted in that provocation could reduce the crime to manslaughter under 11 Del. C. § 575(a, b).

What was the "Legislative Intent", when creating the amendment to Title 11 § 641 effective (July 9, 2001), that added the last two sentences, to eliminate the provocation from the present day law, or to separate was causes the connection of extreme emotional distress.

## Amendment to 11 § 641

" Extreme emotional distress is not reasonable explanation or excused when it is caused or occasioned by the accused's own mental disturbance for which the accused was culpably responsible, or by *any provocation*, event or situation for which the accused was culpably responsible, or when there is no *causal relationship between the provocation, event or situation which caused* the *extreme emotional distress* and the victim of the murder.

N.J.STAT. ANN. § 2C: 11-4(WEST 1982); N.Y. PENAL LAW §§ 125.20(2), 125.25(1)(a)(McKinney 1980); N.D. CENT. CODE § 12.1-16-02 (1976); OR. REV. STAT. §§ 163.118, 163.165(1983); UTAH CODE ANN.§ 76-5-205(1978). Eight specify that the defendant must react as a "reasonable" or "ordinary" person. ARK. STAT. ANN. § 41-1504(1977); COLO. REV. STAT. § 12.1-16-02(1978); DEL. CODE. ANN. Tit. 11. § 632(1979); GA. CODE ANN. § 26-1102(1981);LA. REV. STAT. § 14:31 (WEST1974); ME. REV.STAT. ANN tit. 17-A. § 203(1983); MINN. STAT. § 609.20(1980); NEV. REV. STAT. § 200.050(1973). Four states expressly disallow manslaughter when there has been a "reasonable" time to cool. ALA. CODE. § 13-A-6-3 (1982); GA. CODE ANN. § 206-1102(1981); IOWA CODE ANN. § 707.4 (WEST 1979); LA. REV. STAT. ANN. § 14:31 (WEST 1974). One state implies the same limitation. NEV. REV. STAT. §§ 200.040-.050 (1973). Reasonable provocation, the key element, is "provocation which causes a reasonable man to lose his normal self-control; and although a reasonable man who has thus lost control over himself would not kill, yet his homicidal response to the provocation is at least understandable."

Here, defendant contends that although counsel could have and should have investigated the law and certain mitigating evidence with regard to defendant's character and background, in order to counteract any influence the court may have had in light of the serious nature of defendant's case, counsel made virtually no investigation.

Had counsel done so, he would have discovered that there was psychological evidence available that resulted from psychiatric evaluation done by Mandel Much, and Dr. Carol Tavani, to whom the

defendant was seen by which was materially relevant in mitigation of defendant's sentence. (See exhibit - B3 Psycho-forensic Evaluation, and B4 Psychiatric Evaluation.)

Based on the above, defendant contends that it is clear that counsel had inadequately performed his duty, which constitutes a neglect of a legal obligation entrusted to him, due to his failure to substantially investigate and develop mitigating evidence regarding defendant's character and background. Defendant further contends that to the extent "no diagnosis had been firmly arrived at," had a decisive diagnosis been pursued by counsel, in order to fairly assess the potential strength of the mitigating evidence available to him and to integrate them in his evaluation, such documentation would have likely explained defendant's mental and emotional state, which may have influenced his behavior to commit the offenses charged, since he had no history of criminal activity as an adult, notwithstanding his juvenile record. "It is incumbent upon counsel to include an independent examination of the facts, circumstances, pleadings and law involved" in order to discharge the Sixth Amendment obligation. Strickland v. Washington, supra, citing Rummell v. Estell, 590 F.2d 103, 104 (5ᵗʰ Cir. 1979). In Strickland the court acknowledged that:

> . .The Sixth Amendment imposes on counsel a duty to investigate because reasonably effective assistance must be based on professional decisions and informed legal choices can be made only after investigation of options. Id. At 2060

The United States Supreme Court agreed that a defense attorney is required to conduct a " reasonably substantial investigation" into the line of defense since *there can be no strategic choice* that renders such an *investigation unnecessary*. These remarks were drawn in the context of where counsel has defended his performance on the basis that he exercised his strategic choice, and the court's comment was based on the premise that in order to exercise his strategic choice counsel must have sufficient data at hand.

Defendant acknowledges that his offenses were very serious and are deserving of a "*substantial*" period of incarceration, and that the court must consider the *deterrence factor* and *society's interest* in seeing that crimes are adequately sanctioned through the criminal justice process. However, due to his counsel's failure to investigate and develop the psychological examinations, counsel's deficient performance substantially prejudiced defendant's case, and deprived him of the opportunity to present said relevant documentation to the jury and court.

Under such circumstances, defendant maintains that had his psychological_ "examinations" been investigated and developed ـby counsel, there is a significant chance that after weighing the mitigating circumstances in his case would not have warranted such a severe sentence of 40 years that was imposed upon defendant. Therefore, defendant argues that counsel's representation fell below an objective standard of reasonableness, (Prong #1 Strickland standard), and there is a reasonable probability that, but for

counsel's error the results of defendant's sentence would have been different. (Prong #2 Strickland standard)

Fair & equal protection of the laws guaranteed by the Six and Fourteenth Amendment of the United States Constitution and the Delaware Constitution Article #1 Section (7) where by the defendant has shown prejudice amounting to a "miscarriage of justice and violations of Constitutional rights."

The question of ineffectiveness of counsel is an extremely complex factual determination, which in most cases require an evidentiary hearing. See Harris v. State, Del. Supr., 292 A.2d 291, 292 (1972). Also, pursuant to the provision of Rule 61(h), defendant maintains that an evidentiary hearing is appropriate in his case, in order to determine whether his claims can satisfy the Strickland standard.   The above also satisfies 61(i)(3)(a)(b) the "cause" and "prejudice" requirement to allow this motion to be granted.

## GROUND THREE

The defendant now brings forth this third ground for relief in this motion under Rule #61. This ground has many issues that stem ineffective assistance of counsel, to prosecutional misconduct, and unbalanced sentencing due to the accused lack of criminal history, past criminal activity, and no prior felony convictions, and also the closed mind of judge during but not apart from the sentencing proceedings in this case. The defendant offers the following in support of his claim.

A final ground in which he would ask this honorable court to consider before rendering a final decreed in this matter. Ineffective assistance of counsel is a violation of the defendants Six Amendment Rights; there is also a violation of the defendants Fourteenth Amendment Rights, the right to due process and equal protection of the laws.

The United States Congress enacted legislation to draft certain rights, which are guaranteed by the U.S. Constitution, which are offered to all citizens of the United States. These very rights are at the center point of this motion, Governments must create laws so that a person of ordinary intelligence need not guess at their meaning.

*Sixth Amendment*. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

*Fourteenth Amendment*. All persons born or naturalized in the Untied Stats, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Where the defendant will demonstrate that he has been deprived these rights by his counsels representation, that fell below the standard of reasonableness as set out by the standard of <u>Strickland V. Washington</u>, 1104 S.Ct.2052, during pre-trial, trial, and sentencing proceedings.

The defendant was deprived of assistance of counsel in the early stages of his trial; counsel did not investigate the defendant's history and/or his character, which denied the defendant a basis for his defense. Prior to trial, the defendant offered to Mr. Pankowski, his counsel that was appointed to him, names and addresses to friends and people who had known the defendant and his wife. Counsel did not investigate or provide any witnesses that would of given testimony in favor of the defendant, which denied the defendant the right to have *compulsory process for obtaining witnesses in his favor*, and to have *the assistance of counsel for his defense*. (<u>U.S. V. Gray</u>, 878 F.2d 702)

Counsel denied the defendant the right to have an impartial jury of his peers that would not be prejudice and influenced by the

prosecution tactics in the early stages of his trial. After the prosecution *nolle prosequi* on eight charges of the ten, after all ten charges were read to the prospective jury panel, which brought about prejudice and denied the defendant the right of having a trial by an impartial jury of his peers which is very prejudicial to the defendants cause in his case and denied him the right to have it heard in the state and district wherein the crime shall have been committed. In the trial transcripts at page 12 at 16, 17, (EXHIBIT TRIAL-1), the court made known the options to the defense counsel in asking for a mistrial, however counsel made up his mind for the defendant, when asked by the court what he wanted to do as far as requesting a new jury panel, counsel indicated that, "*I don't think that is what my client wants*".

Mr. Pankowski never asked the defendant what he wanted to do, which violates his Fourteenth Amendment right to due process of the law.

Then counsel for the defendant misstated the law as to Title 11 § 636. Murder in the first degree when he stated premeditation is required to find a person guilty of this charge. The prosecutor for the State objected, and a sidebar conference was held.

Title 11 § 636 states:

(a)    A person is guilty of murder in the first degree when:

(1)    The person intentionally causes the death of another person;

(2)    In the course of and in the furtherance of the commission or attempted commission of a felony or immediate flight therefrom, the person recklessly causes the death of another person;

(3)    The person intentionally causes another person to commit suicide by force or duress;

(4)    The person recklessly causes the death of a law- enforcement officer, corrections employee or fire fighter while such officer is in the lawful performance of duties;

(5)    The person causes the death of another person by the use of or detonation of any bomb or similar destructive device;

(6)    The person, with criminal negligence, causes the death of another person in the course of and in the furtherance of the commission or attempted commission of any degree of rape, unlawful sexual intercourse in the first or second degree, kidnapping, arson in the first degree, robbery in the first degree, burglary in the first degree, or immediate flight therfrom;

(7)    The person causes the death of another person in order to avoid or prevent the lawful arrest of any person, or in the course of and in the furtherance of the commission or attempted commission of escape in the second degree or escape after conviction.

(b)    Murder in the first degree is a class A felony and shall be punished as provided in § 4209 of this title.

This happen in the defense opening statement to the jury, when Mr. Pankowski stated on page 61 at 4-7 (EXHIBIT TRIAL-3), quote: "Let me decide how I am going to get away with it. Ladies and gentlemen that defines intentional first-degree murder, premeditation -" unquote.

This goes back to the rules of professional conduct as mentioned in ground one, and ground two defense counsel must in the Rules of Professional Conduct; (Rule 1.1) "A lawyer shall provide competent representation to a client.

*Competent representation* requires the *legal knowledge*, skill, *thoroughness and preparation* reasonably necessary for the representation."

· The Prosecutor Ms. Marsha Epstein, in her opening arguments stated that the defendant said: "Yeah, I will Fucking leave." Which is not supported by live testimony from State witnesses Elisabeth Keffala, page 101 from 7 through 17, (EXHIBIT TRIAL-4), and Patricia Walters, page 156 at 13,14, (EXHIBIT TRIAL-7), also she stated to the jury in her opening that the defendant stated, " Today you are going to die, bitch." page 46 at 18, (EXHIBIT TRIAL-2). By the testimony of the other witnesses there is a dispute if this statement was made, only one of three people heard it, which brings a reasonable doubt to the question if this statement was made at all?

   During direct testimony offered by the State witnesses, certain descriptions were given to describe the defendant actions and demeanor just moments before the stabbing of the victim.

   Witnesses Elisabeth Keffala, describe the defendant as: Quote, "*he was at frenzy*", page 140 at 16,17, (EXHIBIT TRIAL-6),. Patricia Walters, describe the defendant at one point as: "*he just looked like terror*" page 162 at 10, (EXHIBIT TRIAL-8) in another part of Patricia Walters, testimony she states that the defendant: " *a look of a maniac to me*" unquote, page 25 at 20, (EXHIBIT TRIAL-9).

Also State witnesses Brian Butcher and James Morris, Mr. Butcher stated that: "*the defendant paced in front of the doors to the kitchen before entering*", page 58 at 1,2, (EXHIBIT TRIAL-10), and page 68 at7, 19,20, (EXHIBIT TRIAL-11), which coincides with the description that Mr. Morris gave on page 100 at 11,12,13, (EXHIBIT TRIAL-12), where he states: "*He was walking around like a zombie*", in the witnesses own words "the defendant looked like a zombie", also Mr. Morris states "*Weird*" page 100 at 15-20, (EXHIBIT TRIAL-12). Which brings some credible evidence of the defendant's state of mind to the strong existence of (Extreme Emotional Distress) at the exact moments before the commission of this homicidal act by the defendant, which was neither normal or can said to be from a person with all his faculties in proper and working order. (See exhibit-C4 & C5) Delucca V. Lord, 77 F.3d 578 (2d Cir.1996)

There are enormous times when defense counsel Mr. Pankowski, should have objected to opinions of State witnesses, as well as defense witnesses, as to challenge statements made by those witnesses as to their opinions and facts of their testimony.

The defendant asserts the following parts of the trial transcripts as evidence: on direct examination of witnesses Elisabeth Keffala, she stated on page 112. at 12 through 16, (EXHIBIT TRIAL-5) that "question: Did he known that you were there?" "Answer: I am sure he did." "Question: Well, did he look at you?" "Answer: He didn't look at me because he was too intent on what he was doing." Here Mr. Pankowski doesn't challenge this statement that is the observer's

opinion as to the defendants state of mind. Seehan V. Iowa, 37 F.3d 389 (8th Cir. 1994)

Also on direct examination of Patricia Walters, Mr. Pankowski, doesn't object to the observer's opinion of, "if in fact the defendant knew that she was there or that she was on the phone with the police at that time of the incident" page 162 from 2 through 16 (EXHIBIT TRIAL-8), is very prejudice to the defendant's rights of effective assistance of counsel. In fact the Court on page 59 and 60; at 22 of page 59, to 4 of page 60, on (EXHIBIT TRIAL-10), is given directions to the jury about: "what a particular witness thinks or tries to ascertain as to what is in another person's mind", this statement was made after State witness Mr. Brian Butcher said in his testimony on page 59 at 18-20 (EXHIBIT TRIAL-10), quote " And he was just, like meditating. To me personally I think it was like trying to finish her. He was trying to kill her".

Defense counsel, should of objected to this statement made by the states witness, and brought this up as an argument but through his lack of concern for his client, let the court do his job for him.

The court also had to reprimand Mr. Pankowski, as to counsel not objecting to the States questions of Dr.Danyo, Plastic Surgeon, as to his expert opinion to a reasonable degree of medical certainty, as to his expression of the psychological impact of drugs on the defendant's unresponsiveness. Miller V. Wainwright, 798 F.2d 426 (11th Cir. 1986) (trial counsel failure to secure expert on drug use)

The court called counsel to a side bar conference and the following is from that conversation: The Court: Somebody ought to

explain to this witness what is a reasonable degree of medical certainty. I don't think you asked the question on direct.

Secondly, you're asking him to speculate. *You're not objecting. We're going to end up with a 61 if this guy is convicted. Because that's currently wrong.*

You didn't provide—he wasn't called to deal with that. And all he's talking about is the life and death risk. And if we keep going on this line we're going to end up with a record, which shows this guy opinion on essentially psychiatric matters.

Yeah, Trust me. Medical stuff I've done. And I know that is far a field of what you called on him. And it doesn't make any sense, if they haven't figured it out; if they want to believe whatever they believe, the jury, it doesn't make any difference from their perspective.

You can't ask those questions of a guy, of a plastic surgeon exactly what would cause his unresponsiveness. I'm not sure he didn't examine him for that. He isn't called as a general expert witness. He's not a treating physician. We're going to record that. We're going to end up doing this again.

Both of you are trying to get to the same point—well, trying to get to different points from the same angle. Page 112, at 11 through 23, (EXHIBIT TRIAL-14), from 1 through 23 on

Page 113. (EXHIBIT TRIAL-15).

The sidebar conference continues to page 116 of (EXHIBIT TRIAL-15), there would be even from a laymen's perspective, that the court had a valid concern that the defense counsel was not performing his

obligation to defend his client interest. Which emerge ineffective assistance of counsel and a violation of the defendant's rights under the United States Constitution.

Also the defendant offer's that, defense counsel did not prepare for the (Voir Dire Examination), of Mandel Much, Psychologist, to his report that was to be introduced into evidence before this court, and to evaluate his testimony. Which shocked the confidence of the defendant in his lawyer's ability to represent the defendant through the rest of trial. Mr. Pankowski, through years of experience should have been fairly prepared for this examination of this particular witness, however this only provides the ground that counsel was in fact ineffective during this proceeding. U.S. ExRel. Foster V. Gilmore, 35 F.Supp.2d 626 (N.D. 111.1998), Bloom V. Calderon, 132 F.2d 1267 (9th Cir.1997)

There was confusion on both the witness statements, the interpretations, the view on how the State understood the meanings, and how the court and the defense understood the meanings of his expert opinion of the defendant's state of mind at the time of the homicide.

This transpired from pages 153 through 198, (EXHIBIT TRIAL-16), of trial transcripts, then the conversation from pages 198, (EXHIBIT TRIAL-27). This undermined the confidence of the defendant to trust his lawyer's decision on any relevant testimony or exhibits to the court.

It is forthcoming that the defendant was indeed damaged by his counsel representation that fell below the standard of what is

considered normal. Which the defendant offers that the presiding judge did not have all the right or existing evidence to make a valid decision as to the proper sentencing.

The defendant offer's the following in support of his claim that, the presiding judge may have had closed his mind to the weight of the mitigating factors of this case, here Honorable Judge Charles Toliver makes certain statement that does not sound professional or represents that he indeed had an open mind during the proceedings. Page 206 at 9-10, (EXHIBIT TRIAL-28): quote "I'm not acting in the interest of justice", page 208 at 16-17, (EXHIBIT TRIAL-28): "So what makes sense to me may not make sense to you when you're doing it."

Page 208 at 19-20, (EXHIBIT TRIAL-28), " And, you know, whether I'm right or whether I'm wrong, somebody has to make the decision. And today it's me."

This in itself is not proof that the judge had a closed mind, however just as the judge instructed the jury not to ascertain "what a particular witness thinks or tries to ascertain as to what is in another person's mind".

The defendant here is not trying to come to any conclusion as to what the judge was thinking or not, he does however makes an observation that the judge did not have the proper and relevant information due to defense counsel's unpredictability of the facts in this particular case.

Mr. Pankowski, on page 10 from 2 through 14, (EXHIBIT SENTENCING-3)of the sentencing proceedings is urging the court to allow him to

prepare a pre-sentencing report because of mitigating statements made by civilian witnesses and other documentation at a later date. Also is upon the defendant's believe that, in this particular case the sentencing judge had already came to some conclusion as to what he thought as a proper sentence on the defendant. Failure to investigate and prepare for sentencing did not fulfill the obligation to conduct a thorough investigation of the accused background violating the standards of Strickland. Williams ·V. Taylor, 529 U.S.___, 146 LEd.2d 389, 120 S.Ct.___(2000)., Butler V. Summer, 783 F.Supp. 519 (D.Nev.1991)

And Delaware law states that a sentencing judge must keep his mind open to the degree as to receive all mitigating factors before rendering a verdict as to a proper sentence, also it's the defendant's belief that Judge Toliver wanted to use this particular case as a sounding board which is a violation of Rule #32 of the Superior Court, when he stated on page 32 at 5, (EXHIBIT SENTENCING-8): "So It's a message." A guilty plea may not be used as testing device respecting the severity of a sentence imposed thereunder. Smith v. State, Del. Supr., 451 A.2d 837 (1982). 224 A.2d 52 Osburn V. State, (Del.Supr.1966)                                        :

As stated earlier in this motion Extreme Emotional Distress is not viewed from the person who is asserting it, it must therefore be view with an open mind. " There must be a reasonable explanation for the existence of the extreme emotional disturbance or distress. It is not the person who must be reasonable at the time because a reasonable man would not intentionally kill another person; it is the *frenzy of*

*mind* based upon a reasonable explanation which is basic to the jury's determination." American Law Institute Model Penal Code And Commentaries, Part II § 210.3 at 63-65 (aff. Draft and Revised Comments 1980). The Model Code was basis for the concept of reasonable explanation in § 641. See Del. Commentary § 641 at 196-98. In discussing the National Commission on Reform of Federal Criminal Laws version of extreme emotional distress which explicitly states that the defendant cannot have been culpably responsible for the provocation in order for it to be excused, the commentators to the Model Code state that this notion is implicit in their version of extreme emotional distress. Moore V. State, Del. Supr., 456 A.2d 1223 (1983).

How could this not effect the Judges final decision, not only did counsel for the defendant not represent his clients interest in this matter, but did not bring up on the defendant's argument on Direct Appeal in Supreme Court that the judge sentence the defendant in violation to Del 11 § 4204 (n), which states that:

Whenever a court imposes a sentence inconsistent with the presumptive sentence adopted by the Sentencing Accountability Commission, such court shall set forth on the record its reasons for imposing such penalty. Amendments. (m), for (n), after May 1,2003. See United States V. Phillips, 210 F.3d 345 (5th Cir.2001), Castellanos V. United States, 26 F.3d 717 (7th Cir.1994)

On order of (Response to Order of Remand), Judge Toliver stated: that he relied on information that was before the court relevant to sentencing was: "Testimony and other evidence presented during the course of the trial prior to the entry of the defendant's plea

graphically depicted the tumultuous nature the relationship between the defendant and his wife ending in the violent nature of her death and the defendant's apparent attempt to harm himself immediately thereafter." Page 3-4, of (Response to Order of Remand) (SEE EXHIBIT C-7)

What Judge Toliver failed to realize that the very description of the language and information he relied on is found in Title 11 § 632. Which is the Title on manslaughter, and is more on the line of the evidence in the defendant's case, if the defendant's counsel would of presented the relevant evidence to the Judge and Jury for their consideration.

Title 11 § 632

A person is guilty of manslaughter when:

(1)   The person recklessly causes the death of another person; or

(2)   With intent to cause serious physical injury to anther person
      the person causes the death of such person, employing means
      which would to a reasonable person in the defendant's
      situation, knowing the facts known to the defendant, seem
      likely to cause death; or

(3)   The person intentionally causes the death of another person
      under circumstances which do not constitute murder because the
      person acts under the influence of extreme emotional
      disturbance; or

(4)   The person commits upon a female an abortion which causes her
      death, unless such abortion is a therapeutic abortion and the
      death is not the result of reckless conduct; or

(5)   The person intentionally causes another person to commit
      suicide.

Manslaughter is a class B felony.


Judge Toliver, states on page 7 of (Response to Order of Remand)(SEE EXHIBIT C-7) that the reason for imposing the maximum sentence: " I impose the maximum, Mr. Krafchick, because it was a serious felony. It was a violent felony. And I think in the area of domestic violence we have to make it clear, one person does not own another person.

One person cannot tell another person to come or go or to stay once they reach the age of majority, anyway. And while, again, this was an unfortunate situation, I think I have an obligation, not only to your children and your family, but to the families of other people who may find themselves in that particular position. So it's a message. I'm not sure how effective it is. But I think we have no choice but to try." In response to Judge's reason for sentence, it is not the Judge's duty to sentence in hopes of deterring future similar incidents, but is legislator's duty to do such when writing statutes. Therefore, Judge's sentencing reasoning was erroneous as a matter of law.

Judge Toliver, relied on evidence presented by the State and the Defense, however on the claim of ineffectiveness of counsel in one area would have a reasonable doubt as to what information the defense provided if in fact counsel was ineffective.


The Aggravating Factors that Judge Toliver cited are:


(1)  Prior violent criminal conduct involving the victim.

(2)  Prior abuse of the victim to the extent it did not constitute a violation of the criminal laws of this state.

(3)  The nature and circumstances of the crime given the opportunities the defendant had to leave before committing it as well as the particularly violent and public nature.

-45-

(4)   The long term use of illicit drugs as well as their usage
      leading up to the commission of the offense.


      The Mitigating Factors that Judge Toliver cited are:

(1)   Physical and/or mental impairment based upon the evaluations
      of Mandel Much, Dr. Tavani and Raskin and the information upon
      which they relied.

(2)   Victim   involvement   in   light   of   the   dynamics   of   the
      relationship between the defendant and Mrs. Krafchick.

(3)   Remorse of the defendant, including his abortive attempt at
      suicide.

(4)   The effect a lengthy sentence would have on the couples
      children given the death of their mother. However, the impact
      of this factor is significantly reduced by the fact that it
      was their father that brought about their mother's death.

    Could the fact that defense counsel performance had such a
negative impact on the very right to adequate legal representation
in that the very essences denied this defendant the very rights
guaranteed under the United States Constitution. The fact that the
sentencing judge in this case relied on the very weight of what was
presented to the court could of and under strong belief by the
defendant closed the mind of the judge in this case to disregard
any mitigating evidence that did not support the States sentencing
recommendation.

CONCLUSION

The defendant asserts that he was deprived the very essence of effective assistance of counsel which is guaranteed by the United States Constitution under the Six Amendment, and subsequently depraved the defendant his Due Process of the Law under the Fourteenth Amendment.

The defendant, Mr. Krafchick, in this case loved his wife Dawn very much, the fact that they were overwhelm by years of emotional, financial, and disabling drug addiction for most of their lives together is a testimony of their willingness to be with each other. Their life together during those years had its ups and downs like in any relationship, however coupled with the hardship they brought about by not recognizing their own needs for professional help to overcome the enormities of their problems, and years of living the only way that they knew how, is what lead up to this tragic but possible avoidable event. The State prosecutor in this case would have the court to believe that the defendant was controlling & abusive to the victim, but direct testimony never supported such a claim. The very fact that the defendant and the victim were paying bills together, and were just hired together to work at {Bugaboo Creak Restaurants} was not even presented to the court for its consideration of mitigating facts.

The defendant asserts that he had an unconditional love for his wife, not only is the defendant remorseful for this tragic event, but offers that this was not only his wife, but his best friend, his

lover, and mother to their children. The defendant lives with the enormous pain everyday, he could never replace what is irreplaceable to his children, the victims family, or his own family, not to mention himself also, their were no winners in this case. But the fact remains that the defendant was not in his right state of mind, and if his reasoning was working that day, would this tragic event took place at all?

The defendant believes that he has successfully shown prejudices resulting in the inadequate representation that was provided to him during his trial and sentencing that he was denied those very rights, which are garuateed by the laws of this land.

The fundamental right is to have a competent counsel at every stage of a defendant's trial and sentencing is at the heart of concern of this motion, and when a lawyer is admonished by the same court for not objecting to the prosecutions questions and allowing any and all evidence in to the defendant's trial, brings in a procedurally prejudicial situation that the defendant cannot overcome. At the plea colloquy, the State recommended that the court impose a sentence of 40 year's minimum/mandatory incarceration, with the understanding that such a recommendation was not binding upon the court.

Thereafter, on February 13,2003, defendant was sentenced by this court to a total period of 40 years incarceration suspended after 40years with 6 months probation to follow, which was more severe than what defense counsel had expected. And still the question comes to mind what was the presiding judge telling both the State and Defense teams when he stated: "Secondly, you're asking him to speculate.

You're not objecting. We're going to end up with a 61 if this guy is convicted. Because that's currently wrong." Which goes to the presumption that the court found deficiencies in both actions of the State and the Defense, which prompted their eagerness to hide the inadequacies of their performance in this case.

Fair & equal protection of the laws guaranteed by the Six and Fourteenth Amendment of the United States Constitution and the Delaware Constitution Article #1 Section (7) where by the defendant has shown prejudice, Amounting to a "miscarriage of justice and violations of Constitutional rights." Strickland V. Washington

Wherefore, the defendant believes that the adversarial process failed him in providing a defense attorney to mitigate for him and to be diligent on providing the only line of defense that was afforded to him.

The question of ineffectiveness of counsel is an extremely complex factual determination, which in most cases require an evidentiary hearing.

See Harris v. State, Del.Supr., 292 A.2d 291, 292 (1972). Also, pursuant to the provision of Rule 61(h), defendant maintains that an evidentiary hearing is appropriate in his case, in order to determine whether his claims can satisfy the Strickland standard.

WHEREFORE, for any or all of the reasons advanced herein, defendant respectfully prays that his motion for withdrawal of his guilty plea be granted, and/or further relief as may be just.

Respectfully submitted,

Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware
19977

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | : | |
| | : | |
| v. | : | I.D. No. 0101010946 |
| | : | |
| STEVEN W. KRAFCHICK, | : | |
| Defendant | : | |

## STATE'S RESPONSE TO DEFENDANT'S MOTION FOR POST-CONVICTION RELIEF PURSUANT TO SUPERIOR COURT CRIMINAL RULE 61

On February 13, 2002, Steven Krafchick (hereinafter "Defendant") pled guilty mid-trial to one count Murder Second Degree and one count Possession of a Deadly Weapon During the Commission of a Felony. On that same date, Defendant was sentenced to a total of 40 years incarceration at Level V followed by probation. Defendant appealed his conviction to the Supreme Court. On December 16, 2002, the Supreme Court remanded the case to the Superior Court for the trial judge to state with particularity the reasons for imposing a sentence that exceeded the Delaware Sentencing Guidelines in accordance with the Supreme Court's Administrative Directive Number Seventy-six and *Siple v. State*. On February 28, 2003, Judge Toliver responded to the Supreme Court's mandate stating the reasons for sentence with particularity. Defendant's conviction was thereafter affirmed on May 29, 2003.

Defendant now challenges his plea and sentence by post-conviction motion pursuant to Superior Court Rule 61. For the reasons stated herein, the State respectfully requests Defendant's motion be denied.

### ARGUMENT

#### I.    Defendant's Claims

Defendant, in his pleading specifically raises three challenges to his plea acceptance and sentence. In summary Defendant's challenges are as follows:

1. Due primarily to defendant's ineffective assistance of counsel, Defendant was coerced and under duress at the time he entered his guilty plea and as such, he did not knowingly and voluntarily enter the plea;
2. Defendant's counsel failed to investigate the case and develop mitigating evidence supporting his extreme emotional distress argument;
3. Ineffective assistance of counsel through the entire proceedings with respect to Defendant's case.

It appears that Defendant is requesting the Court's permission to withdraw his guilty plea that was entered over two years ago. However, he couches this request by claiming ineffectiveness assistance of counsel. By doing so, Defendant claims that the standard that should be employed by the Court is set forth in Delaware Superior Court Rule 32(d) and that he should be allowed to withdraw his guilty plea for any "fair and just reason". See De.Super.Ct.R.

32(d). However, Rule 32(d) clearly states the "fair and just reason" standard applies only to motions to withdraw guilty plea prior to sentencing. Defendant was sentenced in excess of two years ago and can now only avail himself of the Rule 61 "ineffective assistance of counsel" standard which requires Defendant to show that defense counsel's conduct fell below an objective standard of reasonableness and there was a reasonable probability that the result of the proceeding would have been different. As set forth below, Defendant is unable to make this showing and his claims pursuant to Rule 61 should be denied.

**II    Defendant has failed to establish, for purposes of his "ineffective assistance" of counsel claims, that defense counsel's conduct fell below an objective standard of reasonableness and that there was a reasonable probability that the result of the proceeding would have been different.**

Defendant asserts that defense counsel was ineffective as his conduct fell below an objective standard of reasonableness. To the contrary, the State submits that counsel's representation of Defendant was well within the realm of professional conduct required of this Court.[1] *See generally*, Affidavit of Edward Pankowski, Esquire ("Affidavit"); *Strickland v. Washington*, 466 U.S. 668 (1984). In assessing Defendant's claim, it is important to note that "[t]his was not a close case. The State's evidence was strong." *Taylor v. State*, Del.Supr., 690 A.2d 933, 935 (1997). The State submits that defense counsel thoroughly and effectively defended his client. Indeed, a plea was offered by the State mid-trial due, in part, to defense counsel's effective representation of his client with respect to his claim of extreme emotional distress.

The "ineffective assistance of counsel contention must be evaluated pursuant to the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Flamer*, 585 A.2d at 753. To succeed, Defendant "'must show that counsel's representation fell below an objective standard of reasonableness,' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result to the proceeding would have been different.'" *Id.* (citing *Albury v. State*, Del.Supr., 551 A.2d 53, 58 (1988)).

"[R]eview of counsel's representation is subject to a strong presumption that the representation was professionally reasonable." *Flamer*, 585 A.2d 753. Even if it is found that counsel acted outside the scope of professionally reasonable representation, the deviation must be of such a nature that there is a reasonable probability that the results would have been different. *Id.*

To survive the first prong of the *Strickland* inquiry - whether counsel's performance falls

---

[1]Attached hereto as Exhibit A is the affidavit of Edward Pankowski, Esquire, one of the members of Defendant's trial counsel team ("Affidavit"). This document is prepared to assist this Court in addressing Defendant's allegation of ineffective assistance of counsel. Pursuant to Superior Court Criminal Rule 61(g)(2), the State respectfully requests that this submission be considered part of the record in this case.

outside the wide range of professionally reasonable conduct - "[Defendant] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound ... strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 100-101 (1955)); *Wright v. State*, Del.Supr., 671 A.2d 1353, 1356 (1996); *Flamer*, 585 A.2d at 753-54. While not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Wright*, 671 A.2d at 1356; *Flamer*, 585 A.2d at 753-54. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689-90. Moreover, evidence of "[i]solated poor strategy, inexperience or bad tactics do[es] not necessarily amount to ineffectiveness of counsel. *Bellmore v. State*, 602 N.E.2d 111, 123 (Ind. 1992) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Further, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute" ineffective performance. *Murray v. Carrier*, 477 U.S. 478, 486-87 (1986).

In evaluating trial counsel's performance, this Court should "eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective at the time." *Wright*, 671 A.2d at 1356-57; *Strickland*, 466 U.S. at 689. A post-conviction court simply "cannot require defense counsel to choose one particular defense strategy over any other strategy that falls within the 'wide range of professional competent assistance.'" *Oliver v. Wainwright*, 795 F.2d 1524, 1531 (11th Cir., 1987) (quoting *Strickland*, 466 U.S. at 688-89). "Choices of trial strategies and tactics are insufficient to establish ineffective representation even though others might have made different choices and such choices may be subject to criticism." *Tyra v. State*, 574 N.E.2d 918, 924 (Ind.Ct.App. 1991) (quoting *Cochran v. State*, 445 N.E. 2d 974 (Ind. 1983)). The "effectiveness evaluation" is set forth as follows:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in the light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690.

Furthermore, in the effective assistance analysis it is not always necessary to look at the reasonableness of counsel's actions first. As the defendant must prove all factors in the

*Strickland* inquiry, the Court may dispose of a claim by first determining whether there was sufficient prejudice demonstrated even if counsel's actions were deficient." *Whitley v. Bair*, 802 F.2d 1487, 1494 (4th Cir., 1986), *cert. denied*, 480 U.S. 951 (1987). The "prejudice" analysis "requires more than a showing of theoretical possibility that the outcome was affected." *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992). The defendant must actually show a reasonable probability of a different result but for trial counsel's alleged errors. *Strickland*, 466 U.S. at 694; *Reese v. Fulcomer*, 946 F.2d 247, 256-57 (3d cir. 1991).

Defendant sets forth a total of three grounds in support of his Motion for Postconviction Relief. The State responds to each in turn and submits that counsel, at a minimum, acted "within the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Moreover, Defendant was not prejudiced by the claimed deficiencies.

### 1.    Defendant Claim #1: Defendant did not knowingly and voluntarily enter the plea to Murder Second Degree and Possession of a Deadly Weapon During the Commission of a Felony

In his first claim, Defendant claims that due primarily to defense counsel's ineffectiveness, Defendant was coerced and under duress at the time he entered his plea and consequently, his plea was not knowingly and voluntarily entered.

Defense counsel denies this contention. Defense counsel states that Defendant knowingly and voluntarily, after consultation with and support from his family, entered the reduced guilty plea mid-trial. Defense counsel takes exception to Defendant's apparent claim that plea negotiations were entered without Defendant's knowledge or consent. Indeed, the State recalls Defendant being present for many conversations regarding the potential for plea and recalls defense counsel discussing plea negotiations with his client. Furthermore, as stated by defense counsel, the State recalls Defendant receiving the plea offer the day before its acceptance and Defendant being afforded the opportunity to "sleep on it" as well as being apprized of possible sentencing ramifications prior to making his final decision. Defendant's assertions to the contrary are inaccurate, self-serving and contradicted *in toto* by the facts.

Defendant suggests that defense counsel did not communicate with him throughout the plea negotiations. The State recalls defense counsel being quite diligent from the beginning to keep Defendant fully informed of all negotiations and their implications. The fact that the plea was entered mid-trial, after the presentation of the State's case, is a credit to defense counsel as they were able to evaluate first hand the implications of pleading or completing the trial and facing a possible conviction of Murder First Degree and a life sentence. Indeed, this case was not a "whodunnit". Defendant killed his wife by stabbing her multiple times, while she was working in a crowded restaurant. The actual stabbing was witnessed by a number of people, many of whom testified at trial. The brutality of his act was not in dispute. Defendant, in his arguments, to this court, fails to take adequate responsibility for his actions and fails to appreciate the weight of the evidence against him. Defendant contends that defense counsel did not seek plea negotiations or attempt to negotiate a more favorable plea. That was simply not the case. The State, exercising its discretion, did not offer a more favorable plea despite numerous requests

-4-

by defense counsel.

Defendant next attacks his plea colloquy. Defendant now contends that despite his responses, he should have answered differently and did not mean to state that he understood the colloquy. Defendant offers nothing to support these assertions except for his own statements now that he didn't understand the proceedings despite the fact that he indicated at the time of the proceedings, that he did indeed, understand, everything. It is clear from Defendant's Rule 61 filing that he is not an unintelligent man who is unable to understand clear language presented to him. Rather, he has presented himself through this petition as quite cunning and manipulative in his statements. An example of this would be Defendant's claim that he didn't review his plea paperwork, which was clearly written, despite his signatures on the documents and his recitation to the Court that he did read, understand and agree with the paperwork. (Plea paperwork attached as Exhibit B).

Defendant has made no credible showing that there was "... a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Indeed, all the facts that can be ascertained from the record as well as the State and defense counsel recollection point to the fact that Defendant, from the start, wanted to accept a plea offer in this case. Defendant, indeed, always had the option to continue with his trial. It was never suggested to Defendant that the trial would not continue if he refused to plead. The fact that Defendant states he felt as if he had no other option but to plead is apparently due to his own fear that he would get convicted of Murder First Degree at the completion of his trial. Defendant's choice to plead was completely his own and there is no credible evidence to the contrary.

Given the foregoing, Defendant is unable to sustain an allegation of ineffective assistance of counsel with respect to his plea negotiations and subsequent entrance of the plea.

## 2. Defendant Claim #2: Defense counsel was ineffective in failing to investigate and develop mitigating evidence regarding his defense

Defendant next claims that defense counsel failed to investigate his case and develop mitigating evidence to support his defense. This allegation is denied by defense counsel and further, with respect to this issue, Defendant completely misses the mark. Defendant did not present its case at trial because Defendant, after weighing his options, freely chose to plead guilty prior to the presentation of his case. It should be noted that at the time of Defendant's plea, Dr. Mandel Much (defense expert) had already testified outside the presence of the jury and had been thoroughly questioned. Further, Dr. Carole Tavani's (second expert for the defense) report had already been supplied for review by the Court.

Defendant, now, seems to be complaining that he wished he had continued with trial and presented his witnesses. He indicates defense counsel refused to call these witnesses. Such an accusation is simply not true. These witnesses were not called because Defendant entered a plea, prior to the presentation of his case, with full knowledge, as stated by him, that by doing so, he would forfeit his right to complete the trial. Further, it is not clear, at this point, whether Defendant would have even been allowed to present the testimony of the claimed "witnesses" to

-5-

support his claim of "extreme emotional distress" nor is it clear that they would have testified as Defendant expected. Defendant, also, seemingly states that he was deprived of his right to testify and had he been able to testify, he would have convinced the jury that he killed his wife while suffering from "extreme emotional distress". That is mere conjecture and assumption on Defendant's part with no basis in fact. Regardless, this issue is moot as the reason that the defense of extreme emotional distress was not fully developed through a complete trial lies with the Defendant who pled prior to the start of the defense case. It is too late for Defendant to argue the merits of his "extreme emotional distress" claim at this juncture.

Lastly, there is no merit to Defendant's claim that his "psychological examinations" had not been investigated by his counsel and developed at trial. Indeed, defense counsel was meticulous with regard to providing the State with information regarding Defendant's mental health and hired its own expert for evaluation. As the Court is aware, these evaluations were thoroughly reviewed and considered by the Court.

Given the foregoing, Defendant has failed to show that defense counsel failed to thoroughly investigate his case and is therefore, unable to establish that defense counsel's performance fell outside the wide range of professionally reasonable conduct and that there was a reasonable probability that the result of the proceedings would have been different.

## 3. Defendant Claim #3: Defense counsel was ineffective throughout the entire proceedings, specifically by allowing prosecutorial misconduct and an unbalanced sentence

Defendant claims now, as he has throughout his motion, that his counsel was ineffective throughout the entire proceedings in violation of his Sixth and Fourteenth Amendment rights. This allegation by Defendant is denied by his counsel and is further not reasonably supported by any evidence.

Firstly, Defendant states that defense counsel did not contact Defendant's friends for favorable character references. In making that statement, Defendant keeps forgetting that he stood accused of killing his wife, the mother of his children, by stabbing her numerous times in front of a number of innocent bystanders in a crowded restaurant. The State, Court and defense were well aware that the couple had a domestic violence history. Further, charges were already pending against Defendant for assaulting and threatening his wife, all while there existed a no contact order. Defendant had a long standing history of not caring for his children and opting instead for a lifestyle of substance abuse and violence. Even if defense counsel contacted all of Defendant's friends, it would not have changed the verifiable and unbiased facts before the Court at the time of sentencing.

Next, Defendant claims prosecutorial and defense misconduct in opening statements. This issue, which is specious at best, is moot since Defendant accepted a plea prior to the case being submitted to the jury. Defendant, therefore, suffered no identifiable prejudice in any statements by counsel in opening statements or during jury selection.

Defendant expands his untenable claim to include his belief that defense counsel should

-6-

have made objections throughout the State's presentation of its case. Again, this issue is moot as Defendant pled prior to jury deliberations. Further, Defendant's claims that defense counsel should have objected to statements made by State witnesses are without merit. Simply because a Defendant does not like what the witness has to say, through their first hand observations, is not a credible reason for an objection.

Defendant further complains that defense counsel was not prepared in his examination of Dr. Mandel Much and as such, denied Defendant effective representation. This allegation is specifically denied by defense counsel and is not supported by the record. It is apparent from the record in this case and from the plea that transpired just after the expert testimony regarding extreme emotional distress, that defense counsel was satisfactorily prepared with regard to this aspect of the case. Indeed, defense counsel solicited the opinion of more than one expert in their effort to bolster Defendant's claim. Again, simply because Defendant is now dissatisfied with the outcome of the proceedings is not nearly reason enough to succeed on a claim of ineffective assistance of counsel.

Lastly, Defendant claims that the Court's mind was closed to Defendant's favorable attributes when making its sentencing determination. Defendant, again, gives too much credence to his perceived "mitigating" factors. Indeed, the Delaware Supreme Court remanded Defendant's case to the trial court in order to "set forth with particularity the reasons for imposing a sentence exceed the Delaware Sentencing Guidelines..." (See Response to Order of Remand, dated February 28, 2003, attached as Exhibit C). After receipt of the Court's Response to Order of Remand, the judgement of the Superior Court was affirmed by the Delaware Supreme Court. (See Order, dated May 8, 2003, attached as Exhibit D).

Defendant's latest submission, dated June 30, 2004, is not helpful to his claim. Defendant basically claims that the sentencing court sentenced him outside of non-binding sentencing guidelines and as such, under *Blakely v. Washington*, 124 S. Ct. 2531 (2004), his sentence should be vacated and/or his Motion for Postconviction Relief should be granted. Defendant misplaces his reliance on *Blakely.* It is well-settled under Delaware law that a sentence within the statutory limits prescribed by the General Assembly does not give rise to a legal or constitutional right of appeal. *Mayes v. State*, Del.Supr., 604 A.2d 839, 845 (1992); *Gaines v. State*, Del.Supr., 571 A.2d 765, 766-67 (1990). This is unlike the Washington guidelines that were at issue in *Blakely. Blakely*, 124 S.Ct. At 2535. Unlike the more rigid and formal Washington system, the sentencing standards established by the Sentencing Accountability Commission ("SENTAC") under the Truth in Sentencing Act of 1989, 67 Del.Laws, c. 130, are considered voluntary and non-binding. *Mayes*, 604 A.2d at 845-46. Thus, when courts apply SENTAC, no party to a criminal case has any right to appeal to any court a statutorily authorized sentence because it does not conform to sentencing guidelines. In Defendant's case, this Court sentenced him within the statutory range authorized by the legislature. This sentence was upheld by the Delaware Supreme Court. *Blakely* is inapposite to Defendant's claim and as such, he has no basis to argue his sentence now by way of a Rule 61 motion.

Defendant further blames defense counsels' claimed inadequate performance as causing what he considers the trial court's "closed mind" with regard to sentencing. There is no support

-7-

for that accusation in the record. Defendant should finally place the blame where it properly belongs, with himself. It is time for Defendant to realize that no mitigating evidence provided would have excused his violent conduct in the murder of his wife. This is supported by the Delaware Supreme Court's affirmation of the judgement.

Defendant counsels' actions were appropriate and within the wide range of professionally reasonable conduct. Moreover, despite his assertions, Defendant has suffered no prejudice. As such Defendant has failed to establish his claim of establish ineffective assistance of counsel.

## II    **Conclusion**

As Defendant has failed to demonstrate ineffective assistance of counsel as to any of his claims and there is no reasonable basis to believe that further expansion of the record will support these claims, the State respectfully requests that this Court deny Defendant's Motion for Postconviction Relief based upon the submission of the parties.

Respectfully submitted,

Marsha J. White, Esq.

Maria T. Knoll, Esq.
Deputy Attorneys General
Carvel State Office Building
820 N. French Street, 7th Floor
Wilmington, Delaware 19801

cc:    Steven Krafchick, pro se

-8-

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| STATE OF DELAWARE | : | CR. NO. PN 01012351 |
| | : | IN0102352 |
| v. | : | |
| | : | |
| STEVEN W.KRAFCHICK | : | |
| Name of Movant on Indictment | : | |
| | : | |
| STEVEN W. KRAFCHICK | : | |
| Correct full name of Movant | : | |

### AFFIDAVIT OF DEFENSE COUNSEL IN RESPONSE
### TO RULE 61 MOTION FOR POSTCONVICTION RELIEF

1. Defendant was charged with Murder First Degree and numerous weapons charges for

   allegedly killing his wife at knifepoint in a crowded restaurant. He proceeded to trial in

   February, 2002, and in the midst of trial on February 14, 2002, the Defendant accepted

   the State's plea offer and signed a plea agreement on the record to the charge of Murder

   Second Degree and Possession of a Deadly Weapon During the Commission of a

   Felony. Despite defense efforts to schedule a pre-sentence investigation, and at the

   State's insistence for an immediate sentencing, the Trial Court sentenced the Defendant

   after a short recess on February 13, 2002. He was given a period of twenty (20) years

   incarceration at Level 5 for Murder Second Degree and twenty (20) years Level 5 for

   Possession of Deadly Weapons During the Commission of a Felony. The Defendant,

   through counsel of record, filed an Appeal for the Delaware Supreme Court, Appeal No.

   135, 2002.

1

Exhibit A -

2.  The Supreme Court of Delaware, in an opinion dated May 8, 2003, affirmed the

    conviction of the Defendant Below. This is the response of Trial Counsel to the

    Defendant's Motion for Post-Conviction Relief Pursuant to Rule 61.

3.  This Affidavit will respond to the three grounds listed in the Motion for Post-Conviction

    Relief, mainly grounds,

    1.  The guilty plea was entered under duress.

    2.  Ineffective assistance of defense counsel.

    3.  Ineffective assistance during pretrial and sentencing proceedings.

### A.    COUNT I

Ground One                 Defendant argues that he was denied his right
                           to effective assistance of counsel guaranteed
                           by the Sixth Amendment of the United States
                           Constitution, during the critical stages of his
                           Plea negotiation. This questions the validity
                           of his plea as to whether it was knowingly,
                           intelligently, and voluntarily made.

               In reviewing the Defendant's Motion, counsel for the Defendant at trial

asserts that Mr. Krafchick was not denied his constitutional rights to effective assistance of

counsel. He knowingly and voluntarily, supported by his family after consultation, entered a

guilty plea to a lesser offense during the middle of his trial.

               (a) There exists no clear and convincing evidence to the contrary that the

Defendant entered his guilty plea on February 13, 2002, other than circumstances that evidenced

a voluntary, knowing, and intelligent waiver of his trial rights midway through trial.

               (b) Defendant states on page 5 of his motion, that counsel personally

negotiated the plea bargain agreement offered by the State with the Defendant. It is true to the

extent that the Defendant requested that defense counsel approach the State about a plea

2

agreement to a lesser included defense. That offer was extended by the State on February 12,

2003, the day before the guilty plea was entered and the Defendant had time to think this over

with counsel and family. Counsel did not violate any rules of professional conduct and did

provide effective assistance of counsel by discussing with the Defendant the possible penalties

involved, (the 20 years on each charge), and the sentencing guidelines under the Truth and

Sentencing Statute.

Ground Two                     Defendant argues that he was denied his right to
                               effective assistance of counsel guaranteed by the
                               Sixth Amendment and Due process guaranteed by
                               the Fourteenth Amendment of the United States
                               Constitution, due to counsel's failure to investigate
                               and develop mitigating evidence that would have
                               supported his case during trial and sentencing.

(a)     On page seven (7), Mr. Krafchick asserts that "counsel did not

investigate the basis for the Plea." This is denied since counsel and Defendant were in the

middle of his trial for First Degree Murder, which carried a life sentence without the possibility

of a probation or parole. The State decided to offer the plea for the lesser offense and defense

counsel had adequate time to discuss this with their client. Please note that many months pre-

trial the Defendant actively pursued a plea offer but none was forthcoming. The Defendant knew

the penalties for both Murder in First Degree, Manslaughter, which would have been the only

possible verdict if the extreme emotional distress defense was accepted by the jury, and the

charge of Murder Second Degree. Despite Defendant's assertions on page 7, defense counsel did

not "confuse" the Defendant. Mr. Krafchick had the choice whether to proceed to the trial's

conclusion and run the risk of a verdict carrying life in prison or accept the "common ground," a

Exhibit A-12

3

plea to Murder Second Degree. After deliberation and consultation, Mr. Krafchick chose to

voluntarily, knowingly and intelligently accept the State's plea offer in the middle of trial.

Ground Three          Defendant now brings forth this third
                      ground for relief in his motion under Rule
                      61. This ground has many issues that range from
                      ineffective assistance of counsel, to prosecutorial
                      misconduct and unbalanced sentencing due to
                      the accused lack of criminal history, past
                      criminal activity, and no prior felony convictions,
                      and also the closed mind of judge during but not
                      apart from the sentencing proceedings in this case.

On page eight (8) of Defendant's motion, he alleges "deceitful statements

by counsel" prior to the plea being entered. The first, according to the Defendant, dealt

with the fact that a pre-sentence investigation would be launched and the second dealt with

a commutation of sentence. It was clearly pointed out to Mr. Krafchick that the Court

could sentence him immediately and that was the State's request. Defense counsel

informed the Defendant that we would be asking for a pre-sentence investigation in which the

mitigating evidence that was ready to be presented to the jury, be presented via a pre-sentence

investigation report.

With regard to the "Governor's personal driver" being involved in a

Motion for Commutation of Sentence down the road, is untrue and has no basis. In fact, defense

counsel questions whether Mr. Krafchick has reviewed alleged Exhibit "A-2" which supposedly

deals with the "Governor's driver", as that Exhibit has no mention of the Governor's driver.

The Defendant's contention that counsel did not seek plea negotiations in

this case is completely untrue. As the Deputy Attorneys General can verify, we sought long and

hard, at least six months before trial for a plea offer but none was forthcoming from the State.

4

Additionally, the Defendant on page nine (9) raises for the first time that he "should have been" on medication, which is clearly contrary to what the Defendant answered during the plea colloquy with the answer "no," when asked about any drugs or other medication. Further, it is denied that anyone "coached" the Defendant's answers on the plea colloquy.

On page eleven (11) of his Motion, the Defendant stated that he felt "pressured" to take the plea with no other options available to him. The Defendant clearly understood that he could proceed to the conclusion of the trial or he could accept the State's plea offer. Counsel did not pressure, deceive, nor otherwise force him to accept a plea he was unwilling to accept.

It was with the advice of counsel that Steven W. Krafchick accepted the State's plea offer to Murder in Second Degree and the weapons charge. It must be pointed out the Defendant stabbed his estranged wife approximately thirty six times in a crowded restaurant in full view of many witnesses. Although the defense had an adequate basis in fact for extreme emotional distress, it is unknown whether that defense would have been accepted by this particular jury and would have resulted in a verdict of manslaughter and possession of deadly weapons during the commission of a felony. Defense counsel and Mr. Krafchick, both agreed that the lesser included offense was acceptable and the best way to proceed, rather than the likelihood of a natural life sentence. Counsel and the Defendant were unanimous on this decision before the plea was entered on the record before Judge Toliver.

## B. COUNT II

The first allegation contained in Ground 2 concerns the cross-examination of Defendant's daughter, Renee Krafchick. The defense had full discovery

5

including Detective Gary J. Cicchini's report dealing with this interview. The Defendant
had, under subpoena, witness Chuck Thompson, who was known to the Defendant himself.
Obviously, Chuck Thompson never testified in this trial because of the guilty plea in this
case. Mr. Paul Patel clearly testified about Mr. Thompson's involvement in this case and
his appearance at the motel in question.

The Defendant, in pages eighteen (18) and nineteen (19) of his motion,
continuously brings up the failure of the testimony of Mr. Thompson to be brought out in front of
the jury. As mentioned, the defense had Mr. Thompson, under subpoena, and the strategy of the
defense counsel was to introduce his testimony either through Mr. Thompson, if he
responded to the subpoena (he expressed an unwillingness to appear), or through the
Defendant himself when he testified. In fact, on several occasions, defense counsel went
over the testimony of Defendant on this issue of Mr. Thompson's role in his "extreme
emotional distress." It was certainly important and was to be raised through the
Defendant, that discovering your wife had a sexual liaison with Mr. Thompson at a motel
was an important issue dealing with extreme emotional distress.

### C.    COUNT III

The trial strategy of the defense was to get as much testimony on the
issue of extreme emotional distress through the State's witnesses, then proceed with the
Defendant, defense witnesses, and the two medical experts. All this was not needed by the
Defendant's guilty plea in the middle of the trial.

### D.    COUNT IV

6

Again, Ground 3 is ineffective assistance of counsel and prosecutorial misconduct at the sentencing phase. Interestingly enough, the Defendant raises that the State's dismissal of eight charges at the beginning of the trial was prejudicial to him. So, Defendant complains about comments of the prosecutor and the defense counsel in their opening statements. Please note that since the matter did not proceed to jury verdict and deliberation, these comments were of no import to the sentencing Judge who obviously remained impartial throughout the trial.

As to the defense counsel not being prepared for voir dire examination of their own psychologist, Dr. Mandel Munch, this is without basis in fact. Dr. Much had submitted numerous reports, had been interviewed by both defense counsel on several occasions, and testified as to the extreme emotional distress which was the defense plan. Defense counsel was adequately prepared and ready for trial in this case, and had a plausible extreme emotional distress defense about to unfold before the Defendant's guilty plea.

It is submitted that the Mr. Krafchick's guilty plea was knowingly, voluntarily and intelligently rendered under the circumstances to avoid a life sentence.

Respectfully submitted,

Edward C. Pankowski, Esquire

Kathryn B. Lunger, Esquire

DATED: July 29, 2004

7

SWORN TO AND SUBSCRIBED before me this 29

day of _July_____, 2004.


STATE OF DELAWARE :

NEW CASTLE COUNTY :

        BE IT REMEMBERED this 29 day of _July_____,

2004, that personally appeared before me, the subscriber, a Notary Public for the State and

County aforesaid, EDWARD C. PANKOWSKI, JR., ESQUIRE, and did attest that the

Information contained in the Affidavit of Defense Counsel in Response to Rule 61 Motion

For Post-conviction Relief, is true and correct.


        _____ Bar # 3941

        NOTARY PUBLIC

        Print Name:

        My Commission Expires:


STATE OF DELAWARE :

NEW CASTLE COUNTY :

        BE IT REMEMBERED this 3 day of _July_____,

2004, that personally appeared before me, the subscriber, a Notary Public for the State and

County aforesaid, KATHRYN B. LUNGER, ESQUIRE, and did attest that the

Information contained in the Affidavit of Defense Counsel in Response to Rule 61 Motion

For Post-conviction Relief, is true and correct.

_(signature)_                    $Bar # 3941$

NOTARY PUBLIC

$W.T. DEELY$

Print Name:

My Commission Expires:

Superior Court of the State of Delaware, ___*NC*___ County

## PLEA AGREEMENT

State of Delaware v. _Steven    Knafchick_

Case No(s): _0101010946_ Cr.A.#s: _1N01-01-2351; 2352; 2517; 2540_
_2519, 2520, 2521, 2522, 2523_

☐ Title 11HAB. OFFENDER _____    ☐ BOOT CAMP ELIGIBLE    ☐ INELIGIBLE
☐ RULE 11(e)(1)(C) — If out of guideline, reason is as follows: _____
☐ Title 11, §4336, sex offender notification required    ☐ Title 11, §9019(e), forensic fine ☐ $100(F). ☐ $50(M)

Defendant will plead guilty to:

| Count | Cr.A.# | Charge | [LIO if applicable] |
|---|---|---|---|
| I | 1N01-01-2351 | Murder 2d: [LIO 11 § 635 |
| II | 1N01-01-2352 | PDWDCF |
| | | |
| | | |

Upon the sentencing of the defendant, a **nolle prosequi** is entered on ☐ the following charges/☒ all remaining charges on this indictment:

| Count | Cr.A# | Charge |
|---|---|---|
| | | |
| | | |

Sentence Recommendation/Agreement: ☒ PSI    ☒ Immediate Sentencing

State and Defendant agree to the following:
☐ Restitution: _____
☐ No _____ contact w/ _____
☐ Other Conditions: _____

DAG: _MARSHA EPSTEIN_
PRINT NAME

_Maiska Gostein_
SIGNATURE

_____
Date.

DEF. COUNSEL: _EC Barrister_
PRINT NAME

_EC Barrister_
SIGNATURE

DEFENDANT: _____

LANION A4

## TRUTH IN SENTENCING GUILTY PLEA FORM
### IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR _____ *NEW CASTLE* _____ COUNTY

STATE OF DELAWARE )
             V. ) DEF. ID. NO _____ *0101010746* _____
_____ *STEVEN KRALONICK* _____ , ) CR.A. NO. _____

*The defendant must answer the following questions in his or her own handwriting.*

Date of Birth _____ *1/6/65* _____ Last grade in school completed _____ *8th* _____

| | |
|---|---|
| Have you ever been a patient in a mental hospital? | ☒ Yes ☐ No |
| Are you under the influence of alcohol or drugs at this time? | ☐ Yes ☒ No |
| Have you freely and voluntarily decided to plead guilty to the charges listed in your written plea agreement? | ☒ Yes ☐ No |
| Have you been promised anything not stated in your written plea agreement? | ☐ Yes ☒ No |
| Has your attorney, the State or anyone threatened or forced you to enter this plea? | ☐ Yes ☒ No |

Do you understand that because you are pleading guilty you will not have a trial and you therefore waive (give up) your constitutional right:

    (1)    to be presumed innocent until the State can prove each and every part of the charge(s) against you beyond a reasonable doubt;
    (2)    to a speedy and public trial;
    (3)    to trial by jury;
    (4)    to hear and question the witnesses against you;
    (5)    to present evidence in your defense;
    (6)    to testify or not testify yourself; and,
    (7)    to appeal to a higher court?                ☐ Yes ☐ No

| | OFFENSE | STATUTORY PENALTY | TIS GUIDELINE |
|---|---|---|---|
| 1. | *Murder 2nd* | *10 - 20* | *10 yrs Min - Man* |
| 2. | *PFDCF* | *2 - 20* | *2 - 5 yrs* |
| 3. | | | |

TOTAL CONSECUTIVE MAXIMUM PENALTY: _____ *40 yrs* _____

*If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.*

Do you understand that, if incarcerated, you will not be eligible for parole and the amount of early release credits which you may earn will be limited to a maximum of ninety (90) days per year?     ☒ Yes ☐ No

Is there a mandatory minimum penalty?     ☒ Yes ☐ No;   If so, what is it? _____ *10 yrs*    *2 yrs PFDCF* _____

Has anyone promised you what your sentence will be?     ☐ Yes ☒ No

Are you on probation or parole? (A guilty plea may constitute a violation.)     ☐ Yes ☒ No

Do you understand that a guilty plea to a felony will cause you to lose your right to vote, to be a juror, to hold public office, to own or possess a deadly weapon and other civil rights?     ☒ Yes ☐ No

Are you satisfied with your lawyer's representation of you and that your lawyer has fully advised you of your rights and of your guilty plea?     ☒ Yes ☐ No

_____ *signature* _____      / /      EVUIDIT 1 A    3 11

| Defense Counsel | Date | Defendant |
|---|---|---|
| Print name: *F C KRAKOWSKI* | / / | Print name: *STEVEN B KRALONICK* |

IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| STEVEN KRAFCHICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 135, 2002 |
| v. | ) |
| | ) Superior Court I.D. No.0101010946 |
| | ) Cr. A. Nos. IN01-01-2351 &  2352 |
| | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Defendant. | ) |

## RESPONSE TO ORDER OF REMAND

This 28th day of February 2003, upon review of the

record in this action as above-captioned, it appears that

this matter stems from an appeal by the Defendant of the

sentence imposed by this Court on February 13, 2002.  On

December 11, 2002, the Delaware Supreme Court remanded the

case and directed this Court:

. . . set forth with particularity the

- Exhibit C -

offense of Count One of the indicted charge, Murder First Degree, and Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"). Over the objection of the Defendant, the Court proceeded to impose sentence and sentenced the Defendant to a total of forty years in prison followed by six months of probation. Of the forty years, thirty years were a period of mandatory incarceration.[1] The Defendant's motion to reduce or otherwise modify the sentence imposed was denied by this Court on May 24, 2002, which prompted this appeal.

## Information Before the Court Relevant to Sentencing

Testimony and other evidence presented during the course of the trial prior to the entry of the Defendant's plea

---

[1]
The Sentencing Accountability Commission ("Sentac") guidelines recommended ten years for the conviction of Murder Second Degree and two to five years on the PDWDCF conviction. See Del. Sent'g Accountability Comm. 2002 Benchbook 19-20. The minimum sentences to be served by statute were and are ten and two years respectively on those offenses. See 11 Del. C. §s 635 & 4205(b)(2).

3

Defendant's social, educational and emotional history up to and including the time of the evaluation.  They described an individual classified as "special education" student that went no further than the eighth grade in school.  His family background was punctuated by the death of his father and stepfather, and abuse by his father and brother after his father died when he was at an early age.  Finally, the evaluations addressed the impact of the abuse, drug usage and the other factors bearing on the Defendant on the day he killed Mrs. Krafchick.

Prior to the imposition of sentence the Defendant expressed remorse for his crimes and apologized to all those so affected.  His attorney argued for the imposition of no more than the statutorily mandated minimum sentences on those charges for a total of twelve to fifteen years.  That argument was premised upon the Defendant's mental state at the time of the offense, the impact of drug usage, lack of a significant

5

is the severity of the offense, because I can't bring her back.

Two, the nature of the way the offense was committed, I believe; three, the benefit or sizeable objectives a sentence would impose.

And I do think that we have to make it clear, this sentence won't stop anything, I don't think. What it will do and it will tell people and tell people working in the field, you know, society does care; the system does care. If you do this you will go to jail.

. . .

I impose the maximum, Mr. Krafchick, because it was a serious felony. It was a violent felony. And I think in the area of domestic violence we have to make it clear, one person does not own another person. One person cannot tell another person to come or go or to stay once they reach the age of majority, anyway.

And while, again, this was an unfortunate situation, I think I have an obligation, not only to your children and your family, but to the families of other people who may find themselves in that particular position.

. . .

So it's a message. I'm not sure how effective it is. But I think we have no choice but to try.[2]

---

[2]  Tr. at 27-33 (February 13, 2002)

7

1.  Physical and/or mental impairment based upon the evaluations of Drs. Much, Tavani and Raskin and the information upon which they relied.

2.  Victim involvement in light of the dynamics of the relationship between the Defendant and Mrs. Krafchick.

3.  Remorse of the Defendant, including his abortive attempt at suicide.

4.  The effect a lengthy sentence would have on the couple children given the death of their mother. However, the impact of this factor is significantly reduced by the fact that it was their father that brought about their mother's death.

After weighing and balancing the aggravating factors versus the mitigating factors, it appeared to the Court that the maximum sentence provided for was appropriate. The context in which the offenses were committed had a considerable effect in the deliberative process of the Court. The fact that the SENTAC guidelines generally recommended a lesser sentence was considered, but was not deemed to be

9

persuasive, given the sum totality of the circumstances involved.

If the submission of any additional information is deemed appropriate, a further response shall be submitted immediately.

Respectfully submitted,

Charles H. Toliver, IV
Judge, Superior Court


cc:   Edward C. Pankowski, Esquire
      Timothy J. Donovan, Esquire
      Prothonotary

10

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEVEN KRAFCHICK, | § | |
| | § | No. 135, 2002 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below:  Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | in and for New Castle County |
| | § | Cr. I.D. No. 0101010946 |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 6, 2003
Decided:  May 8, 2003

Before **HOLLAND, BERGER** and **STEELE**, Justices.

### O R D E R

This   8th  day of May, 2003, the Court, having considered this matter on

the briefs of the parties, and having concluded that the same should be affirmed on the

basis of the trial court's Response to Order of Remand dated February 28, 2003;

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of

the Superior Court be, and the same hereby is

AFFIRMED.

BY THE COURT:

*Carolyn Berger*
Justice

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | | |
|---|---|---|---|
| STEVEN W. KRAFCHICK, | : | | |
| Respondent / Appellant, | : | Crim. A. No. | PN01-01-2351R1 |
| Below, | : | | IN01-01-2352R1 |
| V. | : | I.D. No. | 0101010946 |
| STATE OF DELAWARE, | : | | |
| Plantiff / Appellee, | : | No. # | 58 |
| Below. | : | | |

---

## RESPONSE TO STATE'S ANSWER
## IN POST-CONVICTION RELIEF

---

NOW COMES, Steven W. Krafchick, Pro Se, responding to the state's answer in the defendant's motion for post-conviction relief pursuant to Superior Court Rule 61 (f) (3). In accordance with Superior Court Rule 61 (f) (3), Movant's reply. The movant may file a reply to the state's response within 30 days of service of state's response upon the movant.

NOW COMES, Steven W. Krafchick, Pro Se, movant and respondent to
the State's response to Defendant's motion for post-conviction relief
pursuant to Superior Court Rule 61 (f) (3).

## STATE'S ARGUMENT

The State's argument is that the defendant has failed to establi
-sh that his trial counsel's conduct fell below an objective standard
of reasonableness and that there was a reasonable probability that
the result's of the proceedings would have been different.

As mention in the "movant's memorandum of law in support" on page
# 11, the oft-stated test for evaluating the effectiveness of counsel
requires the Court to engage in a two pronged analysis: (1) whether
counsel's representation fell below an objective standard of reasonab
-leness. (2) whether there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would
have been different.

The standard in Strickland V. Washington, 466 U.S. 668 104 S. Ct.
2052, 2064-74, 80 L.Ed. 2d 674 (1984) makes it clear that "counsel
must conduct a "reasonably substantial investigation" into that line
of defense, since there can be no strategic choices that renders such
an investigation unnecessary.

In furtherance of this response, the defendant would like to res
-pond to both the State's and Defense Counsel's (Mr. Pankowski)
Affidavit in support of their views and opinions in opposition of
movant's relief pursuant to Superior Court Rule 61 Post--Conviction
Motion.

Respectfully, the movant in this case would like to answer both
the State's and Defense Counsel's response, to enlighten the Court
to the many "Perfunctory" statements made by both the State and Edwa
-rd C. Pankowski, and to futher the grounds why his case should "in
the interest of justice" have an "Expansion of Record" in accordance
with Superior Court Rule 61 (g), and also in the "interest of justice"
be afforded an "Evidentiary Hearing" in accordance with Superior
Court Rule 61 (h) (1).

The movant in this case would like to bring fourth the objective
of standard set out in Strickland V. Washington, 466 U.S. 668 (1984)
@ [5] pg. 14

> [5] A convicted defendant's claim that
> counsel's assistance was so defective
> as to require reversal of a conviction
> or death sentence has two components.

First, the defendant must show that counsel's performance
was deficient. This requires showing that counsel made errors
so serious that counsel was not functioning as the "counsel"
guaranteed the defendant by the Sixth Amendment.

Second, the defendant must show that the deficient performance
prejudiced the defense. This requires showing that counsel's
errors were so serious as to deprive the defendant of a fair trial,
a trial whose result is reliable.

In assessing Defendant's claim the Court should reveiw the
entire record including the trial transcripts as well as the
sentencing transcripts to evaluate the defendant's "cause" as well
as "establishing his purposes of ineffective assistance of counsel".

The State in it's argument has insisted that the defendant has not established his claim of "ineffective assistance of counsel" claim. To the contrary, the defendant believes that he has brought to light the "Cumulative Errors" in counsel's unprofessional assistance and omissions that taken (in toto) the movant has met the requirements set out in Strickland V. Washington, 466 U.S. 668, 104 S Ct. 2052, 2064-74, 80 L.Ed.2d 674 (1984).

.    The respondent will futher in this response strengthen his "cause" for relief in his motion by a showing of "Prejudice from violation of the movant's rights" in accordance with Superior Court Rule 61 (i) (3) (B).

On page #2 of the State's response, the State assert's that evidence was strong, however under the given testimony of their own witness -es there also lied the likelihood of "Reasonable Doubt" of conviction of first degree murder would of been found by the jury.

.    The State's witnesses gave description of the defendant "state of mind" just moments before this tragic event unfolded, this is why the State wanted to have an ensurence to a conviction of murder in the second degree with the State insistence of the "Maximum" penalty being imposed upon the defendant in this case.

It is also note worthy to rely on the State & Defense Counsel's. silence, that must be considered an omission to the fact's of the Defendant's "state of mind" in regards to the State's witnesses own accounts as "frenzy of mind, terror, manic, and zombie to be a true given account of the defendant just moments before this event unfolded.

The State relying on the case of <u>State of Delaware V. Flamer,</u> 585,
A.2d at 753, for it's analysis of standard to be applied in this case,
states that "even if it is found that counsel acted outside the scope
of professionally reasonable representation, the deviation must be of
such a nature that there is a reasonable probability that the results
would have different".


With "reasonable representation" as the standard to be applied,
it goes back to the"Rules of Professional Conduct".

Rule 1.1
A lawyer shall provide compentent representation to a client.
Compentent representation requires the legal knowledge, skill.
thoroughness and preparation reasonably neccessary for the representation.


Rule 1.4
(a)   A lawyer shall keep a client reasonably informed about the
status of a matter and promptly comply with reasonable requests for
information.
    (b)   A lawyer shall expain a matter to the extent reasonably
necessary to permit the client to make informed decisions regarding
the representation.

The State relies in part to the "Sworn Affidavit" of Edward C.

Pankowski Esq. As their reasons of counsel's effective representation.


The Defendant would like to draw the Court's attention to page#3
of counsel's affidavit where it states: quote "That offer was extented
by the State on February 12,2003, the day before the guilty plea was
entered and the Defendant had time to think this over with counsel
and family" unquote. Not with standing that the year is wrong, couns
el now omits that the plea was offered to the Defendant on the 12th
of February 2002; on page 4 of the State's response in (Defendant's
Claim #1 )  second paragraph beginning at the six sentence quoting
"Furthermore, as stated by defense counsel, the State recalls defendant
receiving the plea offer the day before it's acceptance and Defendant.

being afforded the opportunity to "sleep on it" as well as being apprized of possible sentencing ramification prior to making his final decision. Defendant's assertions to the contrary are inacc -urate, self-serving and contradicted in toto by the facts.

It is interesting that the State would maliciously attack the Defendant in these proceedings as to his statements of fact as being inaccurate, self-serving and contradicted in whole by the facts.

In the case of State of Delaware V. Steven W. Krafchick, I.D. # 0101010946 THERE is a transcript to the trial and more importan -tly February 13,2002 the day of the plea. The record being trans -cribed by Official Court Reporter Domenic M. Verechia,and futher -more on the last page of each of the transcripts he certifies to the accuracy of each of the dates & record as reported by himself in the Superior Court of the State of Delaware.

The State and Defense Counsel's should not have any promblæs with the record, since "Court Reports" are an essential part of the Court proceedings, however, anytime a Defendat insist that he has been wronged by his counsel, the State will defend the decisions of Defense Counsel so that their own intrest will be protected and that the Defendat will not be afforded the proper relief he seeks.

On page # 3 of the sentencing transcripts the Defendant would like to draw the Court's attention to lines 3 through 17 where counsel for the Defendant is addressing the Court.

5

Starting at line # 3 it states:

3  We had the opportunity to speak to him today.
4  This plea offer was tenderd by the State of Delaware
5  this morning. It, in fact, was tenderd by the defense
6  several weeks ago. He was willing to enter this plea to
7  the exact same charges, murder second degree as a lesser
8  offense and possession of a deadly weapon during the
9  commission of a felony.
10 He's been advised by myself, co-counsel
11 Ms. lunger, and Marilyn Munson. And his mother got
12 word, although not direct contact wiy ı Steven, that she
13 would advise him to enter this plea  ıder the
14 circumstances.
15 I had an opportunity for almost an hour to
16 discuss the matter with him in the jury room. He signed
17 the plea documents in my presence.

It is clear and on record that:

1) The plea was offered that morning.
2) That the defense tried to ask the State for a plea
   to murder second degree and possession of a deadly
   weapon during the commission of a felony several weeks
   earlier wiyh a sentence to 10 years on second degree
   murder and 2-5 years on the weapon, inwhich the State
   declined.
3) That the defendat's mother got word to him that morning.
4) Defense counsel had "approximately" one hour to discuss
   the plea with the Defendant.
5) The Defendant didn't " fill out " the plea documents,
   however just signed them in front of counsel.

Relief should not be denied to the Defendant on this ground

alone. Under Rules of Professional Conduct 3.3

(a) A lawyer shall not knowingly:
(1) Make a false statement of material fact or
   law to a tribunal or fail correct a false statement of
   material fact or law previously made to the tribunal by
   the lawyer.

A prosecutor, like any other attorney has a duty of candor

toward the tribunal which precludes it from making a false

statement of material fact or law to such tribunal.

So the State and Defense counsel(s) have given false
statements and material facts to this Court. This should of been
the end of this matter, but the movant will provide more evidence
in support of his "relief" and "cause" that should support this
Court in finding that the Defendant's request for relief should
be granted under the circumstances.

6

As. to (Defendant's Claim #2) the State would have this court believe that Defense Counsel was effective and did develop mitigating evidence regarding his client's defense.

As set out in movant's post-conviction motion on page-26- " It's incumbent upon counsel to include an independent examination. of the facts, circumstances, pleadings and law involved" in order to discharge the Sixth Amendment obligation. Strickland V. Washington, supra, citing Rummell V. Estell, 590 F.2d 103, 104 (5th Cir. 1979)

On page #7 of Defense Counsel's (Affidavit) it states in part: "As to the defense not being prepared for it's Voir Dire examination of their own psychologist, Dr. Mandal Much, this is without basis in fact," and futher down the page that: " Defense Counsel was adequatly prepared and ready for trial in this case, and had a plausible extreme emotional distress defense about to unfold before the Defendant's guilty plea".

On page 131 Trial Transcripts from lines 15 through 21 the court's is instructing Defense Counsel why Mandal Much psychologist report cannot be accepted by this Court, and that it runs afoul with Rules of Evidence 403, and blantatly prejudicial. So how could it be said that counsel was prepared for the Voir Dire Examination of Mandel Much?

If there is only one plausible line of defense, the Court concluded, counsel must conduct a "reasonable substantial investigation" into that line of defense, since there can be no strategic choice that renders such an investigation unnecessary. Id., at 1252 Strickland V. Washington, supra.

Here Mr. Pankowski insist that in his own words that he had " a plausible extreme emotional distress defense", but the Court and State in trial transcripts at page 199 from lines 11 through 23 in part, the State insist that Mandell Much is stating three defenses of guilty but mentally ill, not guilty by reason of insanity, or extreme emotional discretion.

The Court on page 202 Trial Transcripts (sheet 51 of 54) from lines 12 through 22 in part is given the Defense Counsel the legal concept's of testimony of an expert and why Mandel Much souldn't be allowed to testify as an expert.

Which goes back to the movant's motion for post-conviction relief, that in fact Mr. Pankowski did not perform his Sixth Amendment obligation to investigate        , because reasonably effective assistance msut be based on professional decisions and informed legal choices can be made only after investigations of options be made independent       examination of facts, circumstances, pleadings and law involved.

As to (Defendant's Claim #3)

Here the State insist that the Defendant gives no support by any evidence that his counsel violated his Sixth Amendment & Fourteenth Amendment rights.

The State in part of it's argument states that the Defendant keeps forgetting that he stood accused of killing his wife, the mother of his children, by stabbing her numerous times in front of a number of innocent bystanders in a crowed restaurant, the State, Court, and Defense Counsel were aware that the couple had a domestic violence history.

This statement alone is the reason why the Defense Counsel should of called favorable character reference, the defendant has not forgotten why he was in Court, but under the Sixth Amendment there is a Constitu -tional Right to have favorable witnesses called on the behalf of the accused.

On page #6 of Counsel's (Affidavit), Mr. Pankowski states that: "Mr. Paul Patel clearly testified about Mr. Thompson's involvement in this case and his appearanoe at the motel in question".

It seems that Mr. Pankowski does not know the meaning of given of testimony.

Superior Court Rule 26 Taking of testimony.

In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by law or by these rules, the Delaware Uniform Rules of Evidence, or the rules of the Supreme Court.

There is no mention or given of testimony by a Mr. Paul Patel
or any other person with this name in either the trial transcripts or
the sentencing transcripts from February 5th through February 13th, 2002.

As for Mr. Pankowski's statement that the Defendant knew about Mr.
Chuck Thompson, and if Mr. Thompson would not appear before this Court,
that the Defendant would give testimony to the issue of Mr. Thompson's
role in his "Extreme Emotional Distress", is categorically denied by
this Defendant.

It was the advise of Counsel that the Defendant not take the stand
as to give the State the opportunity to seek any additional information
that would support a finding of first degree murder.

It should be pointed out to this court that the Defense Counsel has
thus so far deceived this Court in two pior statements that have been
proven by the Defendant to be false.

The Defendant would respectfully request that this Court order an
"Expansion of Record", Superior Court Rule 61 (g) would be deemed
appropriate given the statement's made by both the State & Defense
Counsel's answer's in this matter.

As to page # 4 of Mr. Pankowski's (Affidavit) , the Defendant only
offer's the following in support of his claim.

Mr. Pankowski, will ultimatly have to live with the "deceitful statements." that he had made to the Defendant to ensure the plea agree -ment with the State. It would be out of character for the Defendant to make such a statement, if he did not believe that his Counsel advise him to a (P.S.I) and (Commutation) of his sentence down the road was possible, if it was offered to assist him in his decision making process.

What the Defendant has offered in this particular matter of "deceit -ful statement's.", is the only thing he can offer. That is the fact that, he has presented the facts of all matters and has shown to this Court who has been "cunning & manipulative" in this case, and it has not been the Defendant.

As to the other argument's that the State makes with Defense Counsel coinciding, is that the statement's made in front of the jury in regards to eight charges being dismissed at the beginning of trial, and comments made by the prosecution and defense was not prejudial to the Defendant.

The Defendant would like to Thank the State Prosecutor for making his argument for him and for futhering his grounds for relief. On page 170 (sheet 43-54) the State during it's Voir Dire examination of Mandel Much by Ms. Epstein, from lines 12 through 19.

On page 170 (sheet 43-54)

" The Witness: Well, you can't separate it from the mrmory bank, it was in the memory bank."

" Ms. Epstein: That's my point. That's my point, Doctor, you know about it. It's in your memory bank. It was a part of your final evaluat -ion. You relied upon this information. Just taking it out literaaly of the report doesn't take it out of your brain."

As Ms. Epstein has eloquently pointed out to the Court, that once a thought gets into a person's mind they will recall that information upon making an informed decision.

The Jury would not have been free to decide the Defendant's fate, knowing about the other eight charges and omissions and statement's made by both the Defense & State Counsel's. Under this argument the Jury would have been influence by the statement's made and could of been bias toward the defendant, violating the Defendant's right to have an impart -ial jury of his peers. Violating the Sixth Amendment of the United States Constitution.

"JUST TAKING IT OUT, DOESN'T TAKE IT OUT OF YOUR BRAIN"

The last argument from the State it that, Blakely V. Washington, 124 S. Ct. 2531 (2004) doesn't apply to the Defendant's cause for relief through his Post--Conviction motion. The State would have this Court believe that this Defendant does not have the right to argue a Sixth Amendment Violation to any Court in this state or any other Court in this country.

The Defendant's argument goes to the case's of Apprendi V. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed.2d 435 (2000) and Blakely V. Washington, 124 S. Ct. 2531 (2004) respectively.

Mr. Blakely argued, just as now Mr. Krafchick argue's that, the decision in Apprendi V. New Jersey, provides that the factual basis for an excepti -onal sentence upward must be submitted to a jury and proved beyond a reasonable doubt.

The State would have this Court under the belief that the State Legislation gave the power to judges to impose a sentence outside of the guidelines for any reason what so ever. However, under Blakely V. Washington, " Finally, the State tries to distinguish Apprendi and Ring by pointing out that the enumerated grounds for departure in its regime are illustrative rather than exhaustive. This distinction is immaterial. Whether the judge's authority to impose an enhanced sentence depends on

11

finding a specified fact (as in Apprendi), one of several specified facts (as in Ring), or any aggravating fact (as here), it remains the case that jury's verdict alone does not authorize the sentence. the judge acquires that authority only upon finding some additional fact.

In the instant case it is clear to the defendant that prior convictions were not presented nor were they made part of any court proceedings to the defendants knowledge or that he was made aware of.

If they were used in computing the sentence range of the underlining crime, which in this case was murder in the second degree, and possession of a deadly weapon during the commission of a felony, the court by state law would have to follow Title 11:4215, and to allow the defendant to either admit or deny such previous conviction or convictions.

### CONCLUSION

The Defendant has made the facts in this case speak for them self and brought fourth the many Constitutional Violations that should be address by this Court.

WHEREFORE, the defendant in this case would respectfully request that this Court will order an "Expansion of Record" & "Evidentual Hearing" to take place in accordance with Superior Court Rule's 61(g), (h), and should be allowed to withdraw his guilty plea and/or any other relief as this Court deems appropriate.

Respectfully submitted,

Dated: 10/14/2004

12

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STEVEN W. KRAFCHICK,                        :
Respondent / Appellant,                     :    Crim. A. No.    PN01-01-2351R1
Below,                                      :                    IN01-01-2352R1
V.                                          :    I.D. No.        0101010946
STATE OF DELAWARE,                          :
Plantiff / Appellee,                        :    No.  #          58
Below.                                      :

AMENDMENT TO

## RESPONSE TO STATE'S ANSWER
## IN POST-CONVICTION RELIEF

NOW COMES, Steven W. Krafchick, Pro Se, responding to the state's answer in the defendant's motion for post-conviction relief pursuant to Superior Court Rule 61 (f) (3). In accordance with Superior Court Rule 61 (f) (3), Movant's reply. The movant may file a reply to the state's response within 30 days of service of state's response upon the movant.

This Motion is being presented to this Honorable Court in accordance with Rule 61 (f) (3), and is an amendment to the original motion presented to this Court on October 14, 2004.

The movant brings this ground for relieve under the State's argument of Blakely V. Washington,124 S. Ct. 2531 (2004), and Apprendi V. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed. 2d 435 (2000).

The State argues that the Defendant has no right to argue a sentence that is outside the ("SENTAC") guidelines, nor has a right to appeal to any court a sentence that is statutorily authorized because it does not conform to the sentence guidelines. The State relies on the case's of Mayes, 604 A.2d at 845-46, and Gaines V. State, Del.Supr., 571 A.2d 765, 766-67(1990), however under Title 11:6581 Sentencing guidelines. under NOTES, REFERENCES, AND ANNOTATIONS, it states: Failure of Sentencing Accountability Commission to recommend process for appellate review.-- The General Assembly, rather than the Supreme Court, is the Appropriate forum to seek redress from the Sentencing Accountability Commission's apparent failure to carry out its legislative mandate to recommend a process for appellate review of deviations from its guidelines. Siple V. State. Del.supr., 701 A.2d 79 (1997).

So it's evident that the Sentencing Accountability Commission, failed to carry out its legislative mandate, which was carried out in the case of Siple V. State, under Siple, [1] [2] Delaware Sentence Review. This Court's Administrative Directive Number (Seventy-six) requires that reasons be given for deviations from SENTAC's sentencing guidelines because this Court does have appellate jurisdiction to review criminal sentences on the basis of alleged: unconstitutionality; factual predicates which are either false, impermissible, or lack minimum indicia of reliability; judicial vindictiveness, bias, or sentencing with a "closed mind"; and any other illegality. See Morales V. State, Del.Supr., 696 A.2d 390, 394 (1997); Mayes V. State, Del.Supr., 604 A.2d 839,842-43 (1992); Hall V. State, Del.Supr., 473 A.2d 352, 357 (1984); Baily V. State, Del.Supr., 450 A.2d 400, 406 (1982)(quoting Osburn V. State, Del.Supr., 473 A.2d 224 A.2d 52,53 (1966); Tramill V.

V. State, Del.Supr., 425 A.2d 142, 145 (1980); Jacobs V. State, Del.Supr., 358 A.2d 725,729-30 (1976).

The Defendant in this case has insisted that his sentence is outside of the Sentencing Accountability Commission's guidelines and the Supreme Court of Delaware has agreed with the Defendant, in that his sentence was outside of the Delaware Sentencing Guidelines with its order to remand the case back to this Court being the Superior Court of the State of Delaware with its order dated December 11,2002, under the Court's Administrative Directive Number (Seventy-Six) requiring that reasons be given for the Superior Court's sentence deviations from SENTAC's sentencing guidelines.

On page eight of the; "RESPONSE TO ORDER OF REMAND", this honorable Court agreed with the Supreme Court in that the Superior Court did exceed the SENTAC guidelines. Quote "The sentence recommended by SENTAC was clearly exceeded by this court" unquote.

As the Supreme Court stated in Tally,134 Wash.2d at 183,949 P.2d 358, the prosecutor need not make the agreed sentencing recommendation enthusiastically, but must not appear to advocate for an exceptional sentence. The State's mere participation in evidentiary hearing -- presented relevant evidence to the court and responding to its inquiries -- will not constitute a breach of the plea bargain, while advocacy for an exceptional sentence by placing emphasis on aggravating factors will.

In the case of State of Delaware V. Krafchick, Pn01-01-2351, and IN01-01-2352, the State Prosecutor did become an advocate for an exceptional sentence, in that they arguably advocated "aggravating factors" for an exceptional sentence based on the grounds of "Domestic Violence" and"Prior Conduct" of the Defendant in which he was not on trial for.

This Defendant had only two charges at the time of the plea which were Murder in the Second degree, which carries 10 years under SENTAC's guidelines.

Possession of deadly weapon during the commission of a
felony which carries 2-5 years under SENTAC's guidlines, under
the standard in Apprendi V. New Jersey, 530 U.S. 466, 120 S. Ct.
2348, 147 L.Ed.2d 435 (2000), and now Blakely V. Washington, 124
S. Ct. 2531 (2004), it makes the interpretation clear that,
"Other than the fact of a prior conviction, any fact that increas-
es the penalty for a crime beyond the prescrbed statutory maximum
must be submitted to a jury, and proved beyond a reasonable doubt."

This rule reflects two longstanding tenets of common-law juri-
sprudence: that the "truth of every accusation" against a defendant
"should afterwards be confirmed by the unanimous suffrage of twelve
of his equals and neighbours, 4 W. Blackstone, Commentaries on the
Laws of England 343 (1769), and that "an accusation which lacks any
particular fact which the law makes essential to the punishment is..
. no accusation within the requirements of the common law, and it
is no accusation in reason, "1 J. Bishop, Criminal Procedure Section
:87, p.55 (2d ed. 1872). These principles have been acknowledged by
the courts and treatises since the earliest days of graduated sente-
ncing; we compiled the relevant authorities in Apprendi, see 530 U.S.
, at 476-483,489-490, n. 15;id., at 501-518 (Thomas, J., concurring),
and need not repeated here. citing: Blakely V. Washington, 124 S.Ct.
2531 (2004).

Under this ruling in Blakely V. Wsahington,124 S. Ct. 2531(2004),
and Apprendi V. New Jersey, 530 U.S· 466, 120 S. Ct. 2348, 147 L.Ed.
2d 435 (2000), this court should recognize that, the two longstanding
tenets apply to the defendant's case.

The State at the sentencing proceeding'ss of(February 13, 2002) on
page(s) 26-27 is stating for the court and advocating for exceptional
sentence with pointing to the court and others sitting in the court-
room the following statements:

"Your Honor, it's the State's position, and I want to highlight
to the Court, 'cause it's something that, although I know Your Honor
is aware of, perhaps others sitting in the courtroom are not, the
three weeks before this offense on December 20th, he kept Dawn locked
in a motel room for four and a half hours, during which time he
threatened to kill her. And, in fact, said to her, I am going to kill

3

you; I don't care if I go to jail. This is the mindset of some-
body who saw his life slip away because Dawn was becoming independ-
ent. She was saying to him, no, I'm not going along wiyh your plans
anymore; I want my own apartment; I want my own life; I can see who
I want; I can talk to who I want; and you cant't tell me what to do
anymore. And this is a man who couldn't take that. This is a man
who thought he was losing it all, his control. And he lost control.
And he killed her. And for that he deserves the maximum penalty un-
der the law".

## ARGUMENT

To"reiterate",the Defendant was charged at the time of the plea,
Murder in the second degree and Possession of deadly weapon during
the commission of a felony. (see exhibit-A)

That the Defendant's sentence,was"outside the Sentencing Accou-
ntability Commission's guidelines", and the Delaware Supreme Court is
in agreement with that, when they remanded the case to be returned
to the Superior Court. (see Exhibit-B)

That the"State"did become an advocate at sentencing, bringing up
"aggravating factors" for an exceptional sentence,"which were never
proved beyond a reasonable doubt", and are only accusations at best.
(see exhibit-C)

That the facts used at the time of sentencing is in clear viol-
ation of Apprendi V. New Jersey, & Blakely V. Washington,and there-
fore should not be used in computing the Defendant's sentence.

Therefore, this Court should consider the attachments that are
in support of the Defendant being resentenced and/or be permitted
to have his plea vacated.

WHEREFORE, this Defendant would pray that this Court excepts this(Amendment to)"Response to State's Answer In Post- Conviction", and orders an expansion of record in accordance to 61 (g), and also order an evidentiary hearing in accordance to 61 (h), and allow the Defendant, State, and Defense Counsel be heard through oral arguments.

The Defendant has presented to this court the many deviations that need to be properly addressed through this Court and should be taken in their entirety.

Therefore, the Defendant has submitted this motion before this Honorable Court, in hopes that he has presented his contentions and his ground's for releif with clarity.

Respectfully submitted,

Steven W. Krafchick

Dated: November 12, 2004

## CERTIFICATE OF SERVICE

I, __Steven W. Krafchick__ , hereby certify that I have served a true and correct cop(ies) of the attached: __Amendment to Response to State's Answer in Post- Conviction Releif__ upon the following parties/person(s):

TO: __Prothonotary office__        TO: _____
New Castle County Courthouse       _____

__500 King Street/ suite 500__     _____

__Wilmington, Delaware,__          _____

__19801__                          _____


TO: _____        TO: _____

_____            _____

_____            _____

_____            _____

_____            _____

BY PLACING SAME IN A SEALED ENVELOPE and depositing same in the United States Mail at the Delaware Correctional Center, Smyrna, DE 19977,

On this __12__ day of __November__ , 200__4__ .

Steven W. Krafchick
SBI# 00178856
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE. 19977

Westlaw.

C
DELAWARE CODE ANNOTATED
TITLE 11. CRIMES AND CRIMINAL PROCEDURE
PART IV. PRISONS AND PRISONERS
CHAPTER 65. DEPARTMENT OF CORRECTION
SUBCHAPTER X. SENTENCING ACCOUNTABILITY COMMISSION
        § 6581  Sentencing guidelines.

(a) A computer-driven model of proposed sentencing criteria shall be created by March 1,
1985, which will be able to project the effect of alternative policy decisions on the
Department of Correction resources. Sentencing guidelines will be drafted with nonbinding
pilot testing by July 1, 1985.

The Commission shall submit to the Supreme Court on or before March 1, 1986, sentencing
guidelines developed in accordance with § 6580(c) of this title for adoption by Court
rule. Such guidelines shall have no force or effect unless so adopted, and shall not in
any event authorize or be construed as authorizing the exercise of any power or duty
exceeding or conflicting with those heretofore or hereafter granted by act of the General
Assembly or pursuant to inherent authority granted under the Delaware Constitution.

(b) The Commission, on or before July 1, 1987, shall recommend to the Governor and the
General Assembly legislation necessary for the implementation of the sentencing
guidelines.

(c) Consistent with the goals of this subchapter, the sentencing guidelines recommended by
the Commission shall:

    (1) Formulate a series of sanctions ranging from nonincarcerative to incarcerative.
    These sanctions may include, but not be limited to, fines, costs, restitution,
    unsupervised and/or supervised probation, community service, work release and
    community-based residential and nonresidential programs, work camps and electronic
    monitoring. These sanctions shall be placed in one or more accountability levels;

    (2) Establish detailed objective criteria to be utilized in determining which
    offenders shall be assigned to each of the various accountability levels, such
    criteria to combine factors relating to the nature of the offense, the background and
    criminal history of the offender and the availability of resources;

    (3) Define under what conditions of **aggravation** or **mitigation** and in what manner a
    sentencing judge may impose a sentence outside of the sentencing guidelines and
    recommend such **mitigating** and/or **aggravating** circumstances; and

    (4) Define under what circumstances, by what process, and by whom offenders may be
    moved from 1 accountability level to another, subject to any law regulating such
    movement.

(d) The Commission shall estimate to what extent public and private resources are
appropriate and available to meet the specifications and supervision standards
necessitated by the population of offenders to be assigned to each level.

(e) The Commission shall define the roles of the various criminal justice agencies in the
implementation of the proposed guidelines.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

(f) The Commission shall recommend, as appropriate, mechanisms to insure that offenders are assessed a reasonable fee for their supervision and/or treatment.

(g) The Commission shall also recommend a procedure or a tribunal for appellate review by either the defendant or the State when sentences are imposed outside of the guidelines.

(h) The Commission shall have the authority to collect from any state or local governmental entity information, data, reports, statistics or such other material which is necessary to carry out the Commission's functions.

(i) The executive department shall provide staff services for the Commission which shall, for administrative purposes, be placed within that office.

(j) The Commission shall carry out such other duties consistent with its mandate as the General Assembly or the executive department shall from time to time direct.

(64 Del. Laws, c. 402, § 1; 65 Del. Laws, c. 206, § 1.)

<General Materials (GM) - References, Annotations, or Tables>

NOTES, REFERENCES, AND ANNOTATIONS

**Failure of Sentencing Accountability Commission to recommend process for appellate review.** -- The General Assembly, rather than the Supreme Court, is the appropriate forum to seek redress from the Sentencing Accountability Commission's apparent failure to carry out its legislative mandate to recommend a process for appellate review of deviations from its guidelines. Siple v. State, Del. Supr., 701 A.2d 79 (1997).

11 Del.C. § 6581, DE ST TI 11 § 6581

Current through 2003 Regular Session of the 142nd General Assembly

Copyright © 1975-2003 by The State of Delaware. All rights reserved.

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

The sentence recommended by SENTAC was clearly exceeded by this Court. The transcript of the sentencing and the entire record evidenced the factors presented by the State and the Defense and upon which the Court relied in imposing that sentence. The reasons which are to be distilled from the comments made by the Court quoted in substantial part above as well as the record in its entirety, are:

## Aggravating Factors

1. Prior violent criminal conduct involving the victim.

2. Prior abuse of the victim to the extent it did not constitute a violation of the criminal laws of this state.

3. The nature and circumstances of the crime given the opportunities the Defendant had to leave before committing it as well as the particularly violent and public nature.

4. The long term use of illicit drugs as well as their usage leading up to the commission of the offense.

## Mitigating Factors

8

Superior Court of the State of Delaware, _____ *N C* _____ County

# PLEA AGREEMENT

State of Delaware v. _*Steven   Kraxchick*_

Case No(s): _010 1010 946_ Cr.A.#s: _1N01 -01- 2351 ; 2352; 2517 2540_
_2519, 2520, 2521; 2522; 2523_

☐ Title 11HAB. OFFENDER _____    ☐ BOOT CAMP ELIGIBLE    ☐ INELIGIBLE
☐ RULE 11(e)(1)(C) — If out of guideline, reason is as follows: _____
☐ Title 11, §4336, sex offender notification required    ☐ Title 11, §9019(e), forensic fine ☐ $100(F), ☐ $50(M)

**Defendant will plead guilty to:**

| Count | Cr.A.# | Charge | [LIO if applicable] |
|---|---|---|---|
| I | 1N01-01-2351 | Murder 2d: [LIO 11 § 635 |
| II | 1N01-01-2352 | PDWIDCF | |

Upon the sentencing of the defendant, a nolle prosequi is entered on ☐ the following charges/☒ all remaining charges on this indictment:

| Count | Cr.A.# | Charge |
|---|---|---|

Sentence Recommendation/Agreement: ☒ PSI    ☒ Immediate Sentencing

**State and Defendant agree to the following:**
☐ Restitution: _____
☐ No _____ contact w/ _____
☐ Other Conditions: _____

DAG: _MARSHA ERSTEIN_
PRINT NAME
_Maisha Erstein_
SIGNATURE

Date: _____

DEF. COUNSEL: _EC ___ SKI ___
PRINT NAME
_EC ___
SIGNATURE

DEFENDANT: _____

LAINDIT A-4

IN THE SUPREME COURT OF THE STATE OF DELAWARE

STEVEN W. KRAFCHICK,                    )
                                        ) No. 135, 2002
        Defendant Below,                )
        Appellant,                      ) Court Below: Superior Court
                                        ) of the State of Delaware in
v.                                      ) and for New Castle County
                                        )
STATE OF DELAWARE,                      ) Cr. A. No. IN01-01-2351
                                        ) ID No. 0101010946
        Plaintiff Below,                )
        Appellee.                       )

Submitted: November 26, 2002
Decided: December 11, 2002

Before **HOLLAND, BERGER** and **STEELE**, Justices.

## *ORDER*

This 11th day of December, 2002, upon consideration of the briefs on appeal
and the record below, it appears to the Court that this matter must be REMANDED
to the Superior Court in order for the trial judge to set forth with particularity the
reasons for imposing a sentence that exceeded the Delaware Sentencing Guidelines
in accordance with this Court's Administrative Directive Number Seventy-Six and
*Siple v. State.*[1]

BY THE COURT:

Justice

_____

[1] 701 A.2d 79, 82 (Del. 1997).

(Exhibit-B)

**25**

putting emotional scars on the lives of my children and
the families that it involves.

If there was any way I could take back that
day, I would.

There was a love that me and my wife had, which
in society's standards may not been right, but we tried
to deal with it the best we could and involving feelings
and emotions that I couldn't deal with.

So addressing both the families, I ask for
forgiveness and mercy from the Court and families.

THE COURT: Thank you, sir.

Ms. Epstein, briefly.

MS. EPSTEIN: Yes, Your Honor, briefly.

I think it needs to be pointed out to the Court
that this is not an isolated incident of domestic
violence. And I think it's very important to note that,
unfortunately, this couple, not only was caught in a
cycle of addiction, but this couple was caught in the
cycle of domestic violence. And it went on through the
whole entirety of their marriage, at least certainly for
the last ten years of their marriage.

I agree wholeheartedly with Dr. Much's
evaluation that Steven Krafchick was a very dependent

**26**

person. He was dependent upon Dawn. And this was his
first love and really frankly probably only love and
certainly a long-lasting relationship since the earlier
teens.

Unfortunately, with people who have domestic
violation issues, there's issue of power and control.
And repeatedly Steven Krafchick controlled Dawn, her
behavior, who she could go and see, where she could go,
what she could do unless he was with her. And he used
that control over and over and over again.

Your Honor, it's the State's position, and I
want to highlight to the Court, 'cause it's something
that, although I know Your Honor is aware of, perhaps
others sitting in the courtroom are not, the three weeks
before this offense on December 20th, he kept Dawn
locked in a motel room for four and a half hours, during
which time he threatened to kill her. And, in fact,
said to her, I am going to kill you; I don't care if I
go to jail.

This is the mindset of somebody who saw his
life slip away because Dawn was becoming independent.
She was saying to him, no, I'm not going along with your
plans anymore; I want my own apartment; I want my own

**27**

life; I can see who I want; I can talk to who I want;
and you can't tell me what to do anymore.

And this is a man who couldn't take that. This
is a man who thought he was losing it all, his control.
And he lost control. And he killed her. And for that
he deserves the maximum penalty under the law.

MR. PANKOWSKI: Your Honor, I think the control
person the State wants you to believe is possibly
incorrect here. In fact, the day before the event, the
deceased was caught by him directly with this person
Chuck, which was a major impact on his decision-making
process.

THE COURT: Mr. Pankowski, Ms. Epstein, I'm not
trying the victim. And I'm not even trying
Mr. Krafchick anymore. I'm sentencing him.

You know, the world is not a perfect place.
And I don't know of too many saints walking around on
the streets of Wilmington, Delaware, male or female,
married or single. It's a real world, and I have to
deal with it. I don't judge her social life or his.

Yes, there was domestic violence. Yes, there
was some issue of control. But also there was a taking
back, a jockeying of PFAs, reinstituting PFAs.

**28**

You know, Mr. Krafchick has pled guilty to an
offense. He did it. How it got this way and if I had
to weigh it on the scales of justice as to who was
culpable for the demise of their relationship and the
damage to their children, I don't know. I'm not a
family court judge. I'm not sure I'm capable of making
those kinds of assessments.

But it's not, you know, good or evil. It's
about somebody who did something they weren't supposed
to do. And there's a law. And the law says I have to
consider several factors. One of which is the severity
of the offense, because I can't bring her back.

Two, the nature of the way the offense was
committed, I believe; three, the benefit or sizeable
objectives a sentence would impose.

And I do think that we have to make it clear,
this sentence won't stop anything, I don't think. What
it will do and it will tell people and tell people
working in the field, you know, society does care; the
system does care. If you do this you will go to jail.

It's not saying Mr. Krafchick is a horrible
person or Mrs. Krafchick was a saint or a sinner. I'm
not making that judgment. And I want that to be clearly

## CERTIFICATE OF SERVICE

Petitioner, Steven W. Krafchick, hereby certify that I have served a true and correct copy

(ies) of the attached Motion for Expansion of the Record upon the following parties/person:

To:   Office of the Clerk
      United States District Court
      844 N. King Street, Lockbox 18
      Wilmington, DE 19801-3570

To:   Elizabeth R. McFarlan
      Deputy Attorney General
      820 N. French Street
      Wilmington, DE 19801
      Del. Bar. ID No. 3759

BY PLACING SAME IN SEALED ENVELOPE, and placing same in the United States Mail

located at Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977

On this _3rd_ day of the month of February, 2008

                                    Steven W. Krafchick (Pro-se)
                                    Delaware Correctional Center
                                    1181 Paddock Road
                                    Smyrna, DE 19977

I/M: Steven W. Kraedrick

SBI# 178856 ____ UNIT V

DELAWARE CORRECTIONAL CENTER

1181 PADDOCK ROAD

SMYRNA, DELAWARE 19977





Office of the Clerk /Civil Case. 07-284-GMS

United States District Court

844 N. King Street, Lockbox 18

Wilmington, Delaware

19801-3570

*Legal Mail